# 21-911

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

CHRISTOPHER T. SLATTERY, a New York resident, and THE EVERGREEN ASSOCIATION, INC., a New York nonprofit corporation, doing business as Expectant Mother Care and EMC FrontLine Pregnancy Centers,

*Plaintiffs-Appellants,*

v.

ANDREW M. CUOMO, in his official capacity as the Governor of the State of New York; ROBERTA REARDON, in her official capacity as the Commissioner of the Labor Department of the State of New York; and LETITIA JAMES, in her official capacity as the Attorney General of the State of New York,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of New York
Civil Case No. 1:20-CV-0112 (TJM/DJS) (Hon. Thomas J. McAvoy)

## OPENING BRIEF OF APPELLANTS

Stephen M. Crampton, Esq.
   *Counsel of Record*
Mary Catherine Hodes, Esq., *pending admission*
THOMAS MORE SOCIETY
309 West Washington Street, Suite 1250
Chicago, IL 60606
Phone: (662) 255-9439
Fax: (312) 782-1887
scrampton@thomasmoresociety.org

Timothy Belz, Esq.
J. Matthew Belz, Esq.
CLAYTON PLAZA LAW GROUP
112 South Hanley, Second Floor
St. Louis, MO 63105
Phone: (314) 726-2800
Fax: (314) 863-3821
tbelz@olblaw.com
jmbelz@olblaw.com

*Counsel for Appellants*

**Appellants Request Oral Argument**

## CORPORATE DISCLOSURE STATEMENT

The Evergreen Association, Inc., is a nonprofit corporation in New York with no parent corporation and no stockholders.

*/s/ J. Matthew Belz*
J. Matthew Belz, Esq.
*Counsel for Christopher Slattery and*
*The Evergreen Association, Inc.*

Dated: June 14, 2021

# TABLE OF CONTENTS

Corporate Disclosure Statement ............................................................. ii

Table of Authorities .......................................................................... vi

Statement of Jurisdiction ..................................................................... 1

Statement of the Issues Presented for Review ...................................... 2

Statement of the Case ........................................................................ 3

    Nature of the Dispute ...................................................................... 3

    Christopher Slattery and The Evergreen Association, Inc. ............................ 6

    Defendants/Appellees ...................................................................... 9

    New York's Non-Discrimination Laws Prior to 2019 .................................... 9

    Section 203-E, The "Boss Bill" ....................................................... 10

    Section 203-E's Enforcement Mechanisms ..................................... 11

    Section 203-E's Legislative Sponsors Could Cite No Examples of
the Type of Discrimination Addressed by the Law and Admitted that
the Law was Passed to Prevent Religious Employers From Asserting
Their Rights in Court. ................................................................. 12

    Evergreen Files Suit, Which the District Court Dismisses ............................ 14

Summary of the Argument ................................................................. 16

Argument ....................................................................................... 19

    I.    Standard of Review ................................................................. 19

    II.   Evergreen adequately pled that Section 203-E burdens its First
Amendment right to expressive association by forcing it to hire

and retain those who have or support abortions. .................................... 20

A.  As the District Court held, Evergreen engages in
    expressive association. .................................................... 22

B.  Section 203-E significantly impairs Evergreen's expressive
    association. ................................................................ 24

    1.  Evergreen adequately pled significant burdens on its
        expressive association. ........................................... 24

    2.  The District Court wrongly discredited Evergreen's
        factual allegations and drew inferences against
        Plaintiffs. ............................................................. 26

    3.  Supreme Court and Court of Appeals precedent
        supports Evergreen's expressive association claim. ........... 29

    4.  The Eastern District of Missouri resolved nearly these
        precise facts in favor of expressive association in the
        *Our Lady's Inn* case. .............................................. 31

III.  Evergreen adequately pled that Section 203-E illegally burdens its
      First Amendment right to free speech. ...................................... 34

    A.  The First Amendment protects Evergreen's speech. ..................... 34

    B.  Section 203-E burdens Evergreen's speech. .............................. 35

    C.  Section 203-E is a content-based regulation of speech. ................ 37

    D.  Section 203-E is a viewpoint-based regulation of speech. ............. 39

IV.  Evergreen adequately pled that Section 203-E illegally burdens its
     First Amendment right to free exercise of its religion. ........................ 41

    A.  Forcing Evergreen to hire those who have, promote, or support
        abortions violates the Free Exercise Clause. ................................ 42

B.    Evergreen adequately alleged that the regulation is not generally applicable. ........................................................................... 45

C.    Evergreen also adequately alleged that the regulation is not neutral toward religion. .................................................................. 47

V.    Evergreen adequately pled that Section 203-E is so vague that it violates its Fourteenth Amendment right to due process of law. .............. 52

VI.    Particularly at the motion-to-dismiss stage, the State cannot meet its burden to establish that the regulation survives strict scrutiny. ................ 56

A.    The State can show no compelling interest. ................................... 58

B.    Section 203-E is not narrowly tailored. ......................................... 61

Conclusion ....................................................................................... 63

Certificate of Compliance ...................................................................... 64

Certificate of Service ............................................................................ 65

Addendum ........................................................................................ 66

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Agran v. City of New York*,
   1997 WL 354705 (S.D.N.Y. June 25, 1997) ................................................. 57, 58

*Arizona Life Coal. Inc. v. Stanton*,
   515 F.3d 956 (9th Cir. 2008)................................................................. 39

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................... 20, 51

*Bailey v. New York State Div. of Hum. Rts.*,
   959 N.Y.S.2d 833 (Sup. Ct. 2012) ............................................... 39, 40

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................... 20

*Boy Scouts of Am. v. Dale*,
   530 U.S. 640 (2000) .................................................................... Passim

*Brown v. Entm't Merch. Ass'n*,
   564 U.S. 786 (2011) .......................................................................... 52

*Burson v. Freeman*,
   504 U.S. 191 (1992) .......................................................................... 58

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) ............................................................. 13, 49, 62

*Cent. Rabbinical Cong. of U.S. & Canada v. New York City Dep't of Health*,
   763 F.3d 183 (2d Cir. 2014)......................................................... 45, 47

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) .................................................................... Passim

*City of Boerne v. Flores*,
  521 U.S. 507 (1997) ........................................................... 56

*City of Chicago v. Morales*,
  527 U.S. 41 (1999) ............................................................. 55

*Claybrooks v. Am. Broad. Cos., Inc.*,
  898 F. Supp. 2d 986 (M.D. Tenn. 2012) ............................ 34

*Connick v. Myers*,
  461 U.S. 138 (1983) ........................................................... 35

*Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 530 (1980) ........................................................... 59

*Democratic Party of United States v. Wisconsin ex rel. La Follette*,
  450 U.S. 107 (1981) ........................................................... 24

*Employment Division v. Smith*,
  494 U.S. 872 (1990) ........................................................... 42

*Finch v. Peterson*,
  622 F.3d 725 (7th Cir. 2010) ............................................. 57

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*,
  170 F.3d 359 (3d Cir. 1999) ........................................ 45, 47

*Free Speech Coal., Inc. v. Attorney Gen. of U.S.*,
  677 F.3d 519 (3d Cir. 2012) ............................................... 58

*Frisby v. Schultz*,
  487 U.S. 474 (1988) ........................................................... 61

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006) ........................................................... 60

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ............................................. 52, 53, 56

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010)................................................................. 51

*Hobbs v. County of Westchester*,
    397 F.3d 133 (2d Cir. 2005)................................................................. 38

*Hosanna-Tabor Evangelical Lutheran Church & Sch.* v. *EEOC*,
    565 U.S. 171 (2012) ........................................................ 27, 42, 43, 44

*Hunter v. Underwood*,
    471 U.S. 222 (1985) ............................................................................ 51

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995) ............................................................................ 30

*Krause v. Lancer & Loader Grp.*, LLC,
    965 N.Y.S.2d 312 (Sup. Ct. 2013) ...................................................... 39

*MacFarlane v. Grasso*,
    696 F.2d 217 (2d Cir. 1982)................................................................. 61

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*,
    138 S. Ct. 1719 (2018) ............................................................ 43, 44, 48

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ............................................................................ 35

*McDermott v. Ampersand Publ'g., LLC*,
    593 F.3d 950 (9th Cir. 2010)............................................................... 34

*NAACP v. Ala. ex rel. Patterson*,
    357 U.S. 449 (1958) ............................................................................ 21

*New Hope Family Services v. Poole*,
    966 F.3d 145 (2d Cir. 2020)........................................................Passim

*Nielsen v. Rabin*,
    746 F.3d 58 (2d Cir. 2014)........................................................... 20, 61

*Our Lady's Inn v. City of St. Louis*,
349 F. Supp. 3d 805 (E.D. Mo. 2018)................................................. 31, 32, 33, 54

*Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*,
847 F.3d 92 (2d Cir. 2017)................................................................... 19

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015).............................................................. 37, 38, 60

*Ridley v. Massachusetts Bay Transp. Auth.*,
390 F.3d 65 (1st Cir. 2004).................................................. 39, 40, 41

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
487 U.S. 781 (1988)...................................................................... 61, 62

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984)................................................................. 21, 25, 56

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995).............................................................. 38, 39

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
547 U.S. 47 (2006).............................................................. 24, 28

*Rust v. Sullivan*,
500 U.S. 173 (1991)............................................................... 35

*Sable Commc'ns of California, Inc. v. F.C.C.*,
492 U.S. 115 (1989)............................................................... 59

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
467 U.S. 947 (1984)............................................................... 35

*Sung Cho v. City of New York*,
910 F.3d 639 (2d Cir. 2018).................................................... 20

*Texas v. Johnson*,
491 U.S. 397 (1989)............................................................... 36

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
   137 S. Ct. 2012 (2017) ........................................................................ 42

*Turner Broad. Sys., Inc. v. F.C.C.*,
   512 U.S. 622 (1994) ................................................................... 59, 60

*United States v. Playboy Entm't Grp., Inc.*,
   529 U.S. 803 (2000) ........................................................ 56, 59, 60, 61

*Wilmoth v. Sec'y of New Jersey*,
   731 F. App'x 97 (3d Cir. 2018) ............................................... 57, 58

## Statutes

28 U.S.C. 1291 ............................................................................... 1

28 U.S.C. 1331 ............................................................................... 1

28 U.S.C. 1343 ............................................................................... 1

28 U.S.C. 2201 and 2202 .............................................................. 1

42 U.S.C. 1983 ............................................................................... 1

42 U.S.C. 1988 ............................................................................... 1

N.Y. Const. art. IV, § 3 ................................................................. 9

N.Y. Exec. Law § 63 ..................................................................... 12

N.Y. Exec. Law § 290 ................................................................... 9

N.Y. Exec. Law § 292 ................................................................... 10

N.Y. Exec. Law § 296 ................................................... 10, 46, 50

N.Y. Exec. Law § 310 ................................................................... 46

N.Y. Lab. Law § 2 ......................................................................... 54

N.Y. Lab. Law § 21...................................................................... 12

N.Y. Lab. Law § 203-E........................................................Passim

N.Y. Lab. Law § 214.................................................................... 12

## **Other Authorities**

Douglas Laycock & Steven T. Collis, *Generally Applicable Law and the Free
  Exercise of Religion*,
  95 Neb. L. Rev. 1 (2016)........................................................ 45

# STATEMENT OF JURISDICTION

Plaintiffs Christopher T. Slattery and The Evergreen Association, Inc. (together, "Evergreen"), brought suit in the United States District Court for the Northern District of New York under 42 U.S.C. 1983 to vindicate their rights under the First and Fourteenth Amendments to the United States Constitution. The District Court exercised federal question jurisdiction under 28 U.S.C. 1331. The Court had authority to grant the requested injunctive relief under 28 U.S.C. 1343 and the requested declaratory relief under 28 U.S.C. 2201 and 2202, and to award costs and attorney fees under 42 U.S.C. 1988.

Defendants, in their official capacities as Governor, Commissioner of the Labor Department, and Attorney General for the State of New York, moved to dismiss all claims. The District Court entered final judgment granting that motion on March 31, 2021.

Plaintiffs timely filed their notice of appeal on April 8, 2021, within the 30-day time limit allowed by Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure. This Court has appellate jurisdiction under 28 U.S.C. 1291.

1

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

When ruling on a motion to dismiss for failure to state a claim, a district court must accept as true every factual allegation in the complaint and draw every reasonable inference in the plaintiff's favor. Here, the District Court repeatedly weighed the evidence and resolved factual disputes against Evergreen before ultimately dismissing. This appeal from the District Court's dismissal of Evergreen's Complaint thus raises five issues:

1. Whether Evergreen adequately pled that, by limiting the conditions Evergreen may place on those they employ, the Boss Bill unconstitutionally burdens its First Amendment right to expressive association;

2. Whether Evergreen adequately pled that the Boss Bill effects a content-based and viewpoint-based burden on its free speech in violation of the First Amendment;

3. Whether, by demonstrating that the Bill was passed specifically to prevent religious employers from exercising their religious beliefs in hiring decisions, Evergreen adequately pled that the Boss Bill illegally burdens its First Amendment right to free exercise of religion;

4. Whether Evergreen adequately pled that, because the Boss Bill lacks definitions for several key elements of liability, it is too vague to be enforced under the Due Process Clause of the Fourteenth Amendment; and

5. Whether the District Court should have considered whether the Boss Bill survives strict scrutiny, which places the burden on Defendants to establish a compelling state interest that is narrowly tailored, and, if it were appropriate to consider strict scrutiny, whether the District Court or the Court of Appeals could at this stage lawfully rule that Defendants had met their burden.

## STATEMENT OF THE CASE

The Evergreen Association, Inc., and its founder and President Christopher T. Slattery (together, "Evergreen") appeal the Hon. Thomas J. McAvoy's decision granting Defendants' motion to dismiss Evergreen's Complaint. *Slattery v. Cuomo*, No. 1:20-CV-112 (TJM/TWD), 2021 WL 1224008 (N.D.N.Y. Mar. 31, 2021).

**Nature of the Dispute**

In late 2019, the New York State legislature passed its so-called "Boss Bill." *See* N.Y. LABOR LAW § 203-E ("Section 203-E"). In so doing, New York has abandoned the United States Constitution in order to advance a legislative agenda preferencing abortion. The State's action runs roughshod over the constitutional rights of Evergreen and similarly situated religious and pro-life employers. Absent relief, they can no longer make employment decisions consistent with their religious beliefs and missions. Alternatively, if they refuse to cede their religious autonomy, they could be saddled with lethal monetary penalties and civil and criminal liability.

Section 203-E provides, in pertinent part, that "[a]n employer shall not . . . discriminate . . . against an employee . . . because of or on the basis of the employee's . . . reproductive health decision making."[1] JA52-53 ¶ 51. Although the bill was sold as necessary to prevent unfair discrimination, the legislative record

---

[1] The entirety of Section 203-E is attached hereto in the Addendum.

3

reveals not one instance of employment discrimination based upon reproductive health decisions ever having taken place in New York. Instead, the legislative history shows that lawmakers were concerned with counteracting the constitutionally protected and religiously motivated attempts of employers throughout the country to protect themselves from having to pay for abortifacient drugs under the federal Affordable Care Act's contraceptive mandate. Enshrined in the legislative history, it is public record that Section 203-E was not promulgated to remedy any existing problem, but instead to compel religious and pro-life employers to bow to the State's adopted orthodoxy on abortion, contraception, and sexual morality.

Everything Evergreen does—from counseling pregnant women, to providing women with nursing services, to speaking in defense of the unborn, to communicating expectations to its employees—aims at bringing about an abortion-free culture. This mission of conversion of culture requires Evergreen to hire, train, and retain only employees who support its mission, personally and professionally, including in areas related to abortion and abortifacient drugs. Anything less would compromise Evergreen's message by requiring it to employ as its representatives people who actively dissent from the worldview it exists to communicate to clients and the world.

Aimed at undermining the pro-life message, Section 203-E compels Evergreen to hire and retain people to represent it without regard to whether they support or have had abortions or use abortifacient drugs, which are the very decisions Evergreen is trying to support its clients in rejecting. If Evergreen should so much as inquire whether an applicant leads a life consistent with its core mission, it faces a threat of costly litigation and even criminal sanctions should she not be hired. Similarly, if it should become publicly known that a representative of Evergreen has had an abortion or uses abortifacient birth control, Evergreen could not remove such a person from a role advising clients against both of those things without exposing itself to litigation and possible criminal sanctions. Adding insult to injury, this abridgement of Evergreen's First Amendment rights of speech, religion and association is not justified by any serious governmental purpose.

Accordingly, the overarching question presented in this case is whether the State of New York can make a law, the Boss Bill, that places a bubble of protection around the decisions to have an abortion and use abortifacient forms of birth control that is so strong it deflects even the First Amendment rights of religious employers. For the reasons presented in Evergreen's Complaint and this brief, the answer must ultimately be a resounding "No."

The more specific question presented in this appeal is a threshold one: whether Mr. Slattery and Evergreen adequately pled their case that New York's

5

new law infringes on their constitutional rights. Because Evergreen clearly pled the straightforward facts described above and below, and because the District Court and this Court must credit Evergreen's factual allegations at this preliminary stage, this Court should answer with a resounding "Yes."

**Christopher Slattery and The Evergreen Association, Inc.**

Plaintiff Christopher T. Slattery is President and founder of Plaintiff The Evergreen Association, Inc., a New York nonprofit corporation doing business as Expectant Mother Care and EMC FrontLine Pregnancy Centers. JA44 ¶ 1. The Evergreen Association was formed in October of 1985 and has operated continuously since then. JA49 ¶ 26. Its registered office is located in the City of Yonkers. *Id.* ¶ 27.

Evergreen operates crisis pregnancy centers throughout New York City with the morally and religiously motivated mission of saving children from abortion and supporting mothers who decide against abortion, including by providing alternatives to abortion. JA44 ¶ 2. Evergreen primarily serves women in New York, but it also provides some services in neighboring states. It operates in Brooklyn (Kings County), The Bronx, Queens and White Plains. Evergreen employs in its mission typically five to seven employees (currently five) as well as interns and volunteers. JA49 ¶¶ 28, 29. All Evergreen's employees, interns, and volunteers represent Evergreen in supporting women in difficult situations.

6

Through its employees and services, Evergreen professes and promotes the moral and religious belief that all human life is equally valuable and deserving of protection, from fertilization to natural death. *Id.* ¶ 30. They believe that every abortion claims an innocent life. *Id*. They also profess and promote the belief that sexual relationships outside of marriage and associated cohabitation are immoral, cannot be condoned, and are a primary factor leading to the intrinsic evil of abortion. *Id.* ¶ 31.

Evergreen operates and/or heads pregnancy care centers, which exist to serve women considering abortion along with their unborn children. *Id.* ¶ 32. It strives to provide the compassion, concern, and support necessary to enable women to carry their unborn children to term. *Id.* Its mission particularly focuses on aiding poor, low-income, and working pregnant women in distressed conditions, many of whom are contemplating abortion. JA49-50 ¶ 33. Through its employees, interns, and volunteers, Evergreen provides counseling, education, ultrasounds and information to women while they are discerning about an untimely pregnancy. *Id*. Counseling by Evergreen employees, interns, and volunteers comes from a life-affirming, abstinence-promoting perspective only. *Id*.

Evergreen believes that abortion compounds actual and perceived problems and difficulties for a woman, rather than resolving them. JA50 ¶ 34. It believes the purpose of medical care is to heal and maintain the health of the individual, and

that abortion serves healing and health in neither the mother nor the baby. *Id*. ¶ 35. As a result, Evergreen's pregnancy care centers do not recommend, provide, or refer for abortions, contraceptives, birth control, or abortifacient drugs or devices. *Id*. ¶ 36.

To effectively represent and convey their mission, Mr. Slattery vets and Evergreen hires or retains only personnel who adhere to Evergreen's mission and position regarding "reproductive health decisions." *Id*. ¶ 37. This position includes, but is not limited to, opposition to abortion and to sexual relationships outside of marriage and related use of potentially abortifacient contraception. *Id*. Evergreen personnel are expected to agree with and abide by Evergreen's position on abortion and sexual relationships outside of marriage in both their work and private life. *Id*. ¶ 38. Evergreen specifically asks prospective personnel if they are pro-choice or pro-life, and pro-choice candidates are not considered for employment. *Id*. ¶ 39.

Evergreen advertises and otherwise makes known publicly its openings for employment as nurses, counselors, technicians, interns and volunteers, specifically stating that it is seeking only pro-life candidates. *Id*. ¶ 40. Evergreen will not hire or retain personnel who refuse to act in accordance with Evergreen's position on abortion and sexual relations outside of marriage and Evergreen's corresponding religiously and morally motivated employment policy. JA50-51 ¶ 41.

**Defendants/Appellees**

Andrew Cuomo, sued in his official capacity, is the Governor and chief executive of the State of New York, and must "take care that the laws are faithfully executed." N.Y. Const. art. IV, § 3; JA47 ¶ 19. Governor Cuomo has final decision-making authority over the law challenged herein. JA47 ¶ 19.

Defendant Letitia James, sued in her official capacity, is the Attorney General of New York, whose office oversees the Labor Bureau and criminally enforces New York's Labor Law, including Section 203-E. JA48 ¶ 20.

Defendant Roberta Reardon, sued in her official capacity, is the Commissioner of the State's Department of Labor. Commissioner Reardon is required and empowered by Section 21 of the State's Labor Law to enforce Section 203-E, which is part of the Labor Law. *Id*. ¶ 23.

**New York's Non-Discrimination Laws Prior to 2019**

Article 15 of the Human Rights Law addresses civil rights in the State and creates a Division of Human Rights to, *inter alia*, "eliminate and prevent discrimination in employment, in places of public accommodation, resort or amusement, in educational institutions, in public services, in housing accommodations, in commercial space and in credit transactions and to take other actions against discrimination as herein provided; . . ." N.Y. EXEC. LAW § 290(3) (2018); JA51 ¶ 42.

9

Prior to the Boss Bill, the State prohibited discrimination based on the following characteristics: age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status. N.Y. EXEC. LAW § 296(1)(a); JA51 ¶ 43. Pregnancy-related conditions were and are protected as part of the State's definition of "disability." N.Y. EXEC. LAW § 292(21-e, 21-f); JA51 ¶ 44. Section 296, which bars discrimination in the workplace, makes it illegal, among other things, to make hiring or firing decisions, or compensation decisions, on the basis of one of the identified features. N.Y. EXEC. LAW § 296(1)(a); JA51 ¶ 45.

**Section 203-E, The "Boss Bill"**

On January 22, 2019—the forty-sixth anniversary of *Roe v. Wade*—a bill titled "A.584 Jaffee/S.660 Metzger," otherwise known as the "Boss Bill," passed the New York State Assembly and Senate. JA52 ¶ 46. The law, which became Section 203-E of the New York labor law, is currently in effect. N.Y. LAB. LAW § 203-E (attached as Addendum); JA52 ¶ 46. Section 203-E was passed alongside two other abortion-rights laws.[2] JA52 ¶ 47.

---

[2] The Reproductive Health Act (SB 240) legalized abortion until the birth of the child if the abortion is deemed necessary to protect the "patient's . . . health." JA52 ¶ 47. The Comprehensive Contraception Coverage Act (SB 659A) required health insurers to provide no-cost coverage for contraceptives, including abortifacient drugs, in their health plans. *Id*.

Although it, in effect, adds a category of prohibited discrimination, Section 203-E does not amend New York's Human Rights Law, but instead amends New York's Labor Law. *Id*. ¶ 48. Section 203-E prohibits discrimination or any retaliatory action by an employer against an employee on the basis of the employee's or his or her dependent's reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device or medical service. *Id*. ¶ 50. Specifically, an employer shall not:

> (a) discriminate nor take any retaliatory personnel action against an employee with respect to compensation, terms, conditions, or privileges of employment because of or on the basis of the employee's or dependent's reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device or medical service; or

> (b) require an employee to sign a waiver or other document which purports to deny an employee the right to make their own reproductive health care decisions, including use of a particular drug, device, or medical service.

JA52-53 ¶ 51. "Reproductive health decision making" is not defined, nor is "employee." JA53 ¶ 52. Section 203-E(6) provides that "[a]n employer that provides an employee handbook to its employees must include in the handbook notice of employee rights and remedies under this section." *Id*. ¶ 53.

**Section 203-E's Enforcement Mechanisms**

Section 203-E(3) provides employees a private right of action to enforce its requirements. *Id*. ¶ 57. Violators are liable for damages, including back pay and attorney fees, injunctive relief, reinstatement, and liquidated damages. *Id*. ¶ 58.

11

Further, Section 214 of New York's Labor Law makes a violation of any rule within the same chapter as Section 203-E a criminal offense that may be prosecuted by the State's Attorney General (currently Defendant James). N.Y. LAB. LAW § 214; JA53 ¶ 59. Section 21 of New York's Labor Law authorizes the Department of Labor Commissioner (currently Defendant Reardon) to issue orders "directing compliance" with Section 203-E, *inter alia*. N.Y. LAB. LAW § 21; JA54 ¶ 60. Further, the state Attorney General (currently Defendant James) is tasked with prosecuting criminal violations of Section 203-E, *inter alia*. N.Y. LAB. LAW § 214; N.Y. EXEC. LAW § 63(1); JA54 ¶¶ 61-62.

**Section 203-E's Legislative Sponsors Could Cite No Examples of the Type of Discrimination Addressed by the Law and Admitted that the Law was Passed to Prevent Religious Employers From Asserting Their Rights in Court.**

The legislative history of Section 203-E, like the text of the bill itself, offers no examples of adverse employment consequences to any New York employee as a result of reproductive health choices. JA54 ¶ 63. When directly questioned as to whether discrimination on the basis of reproductive health decisions was occurring in New York, Assemblywoman Ellen Jaffee, the main Assembly sponsor of the Boss Bill, could cite no examples. *Id*. ¶ 64.

On the Senate side, Section 203-E's main sponsor, Senator Jennifer Metzger, expressed the view on the Senate floor that the lawsuits filed by employers to protect themselves from having to provide abortifacient drugs under the federal

Affordable Care Act's contraceptive mandate were tantamount to a denial of reproductive health services. JA123-24.[3] Metzger lamented these lawsuits, and characterized them along with the United States Supreme Court's decision in *Burwell v. Hobby Lobby Stores*, *Inc.*, 573 U.S. 682 (2014) (which recognized that the ACA's contraceptive coverage requirement violated the Religious Freedom Restoration Act for certain religious employers) as a "dangerous, slippery slope." JA123-24.[4] Metzger declared that the Boss Bill was passed in response to employers "exercising religion" in *Hobby Lobby* and to keep employers' "personal and political beliefs" from "encroach[ing]" on the decisions of employees as to reproductive health services.[5] JA123-24.

Assemblywoman Jaffee acknowledged the "ministerial exception" to employment anti-discrimination laws but nevertheless made Section 203-E applicable to every employer in the state, leaving it to up to religious employers to raise the exemption as a defense in costly litigation. JA124-25.[6]

---

[3] *See* Senate Transcript at 433, available at https://www.nysenate.gov/transcripts/floor-transcript-012219txt.

[4] *See* Senate Transcript at 433.

[5] Senate Transcript at 433-434.

[6] Assembly Transcript at 124-127, 132, available at https://www2.assembly.state.ny.us/write/upload/transcripts/2019/1-22-19.html

**Evergreen Files Suit, Which the District Court Dismisses.**

On January 31, 2020, Evergreen filed a Complaint against defendants Cuomo, James, and Reardon in the United States District Court for the Northern District of New York, seeking declaratory and injunctive relief to remedy Section 203-E's infringement of its freedom of speech, freedom of religion, freedom of association and Fourteenth Amendment right to due process. JA44-67.

Defendants moved to dismiss the Complaint on April 17, 2020. JA68-103. Evergreen responded to the motion on June 17, 2020. JA104-34. Defendants filed their reply on July 1, 2020. JA135-49. On March 31, 2021, the Court granted Defendants' Motion to Dismiss and entered judgment against Evergreen. JA9-43.

Dismissing their free exercise claim, the District Court disregarded evidence that legislators targeted religious employers in passing the Boss Bill, holding that the Bill was neutral and of general applicability and that it survived rational basis review. JA16-21. The Court similarly rejected Plaintiffs' free speech claims, holding that the Bill is a content-neutral regulation of primarily conduct rather than speech, and applying only "intermediate scrutiny." JA22-28. The Court went on to hold that, despite limiting Evergreen's freedom to hire employees that support its mission, the Bill imposes only "incidental limitations on the Plaintiffs' associational rights," and therefore draws, and passes, rational basis scrutiny. JA28-33. Finally, the District Court admitted the absence of several important

14

definitions in the Boss Bill, but it rejected Evergreen's claims that the lack of

clarity deprived them of due process under the Fourteenth Amendment. JA33-39.

Evergreen filed its notice of appeal on April 8, 2021. JA7-8.

## SUMMARY OF THE ARGUMENT

New York State's "Boss Bill," N.Y. LAB. LAW § 203-E, is a direct attack on religious organizations such as Evergreen that are attempting to live out pro-life values in New York. Openly resentful of religious employers invoking their legal rights not to pay for abortifacient contraception under the Affordable Care Act's contraception mandate, pro-choice New York legislators attempted with the Boss Bill to bring religious employers in New York under State control. The lawmakers made their motivations clear by passing the Bill on the anniversary of the Supreme Court's decision in *Roe v. Wade* alongside two other bills expanding abortion rights.

Plaintiffs raised in the District Court four ways that Section 203-E infringes on their constitutional rights, prompting a Motion to Dismiss from the State Defendants. The District Court misapplied the standard to be applied at the Motion to Dismiss stage, failing to credit Evergreen's factual allegations or draw inferences in its favor. Consequently, the Court dismissed all four constitutional claims. Thus, Evergreen appeals to this Court to recognize the four ways in which Section 203-E unconstitutionally impedes its mission of bringing about a pro-life culture by supporting women in the decisions not to have an abortion or use abortifacient birth control.[7]

---

[7] In the period since the parties briefed the District Court on Defendants' Motion to

Specifically, the Court of Appeals should find that Evergreen adequately

pled that, by curtailing its right freely to hire and fire employees to represent it, the

Boss Bill infringes on Evergreen's First Amendment right of expressive

association. The United States Supreme Court, the Court of Appeals for the Second

Circuit, and, in a recent case almost identical to Evergreen's, the District Court for

the Eastern District of Missouri have all confirmed the rights of religious

expressive associations against incursion from anti-discrimination statutes such as

Section 203-E.

The Court of Appeals should further find that Evergreen adequately pled that

Section 203-E burdens its First Amendment right to free speech. Contrary to the

District Court's holding that the Boss Bill impacts Evergreen's conduct as opposed

to its speech, this Court held recently that every action of a religious nonprofit with

a communicative mission was "laden with speech." *New Hope Family Services v.*

*Poole*, 966 F.3d 145, 171 (2d Cir. 2020). Moreover, Evergreen sufficiently pled

---

Dismiss, the Court of Appeals for the Second Circuit entered a decision largely
ratifying Plaintiffs' constitutional claims. In *New Hope Family Services v. Poole*,
966 F.3d 145 (2d Cir. 2020), the Court of Appeals reinstated the prematurely
dismissed First Amendment claims of a religious adoption agency against a New
York statute that required it to contradict its mission and abandon its religious
beliefs by placing children with same sex and cohabiting couples. The Court of
Appeals should follow its own precedent in *New Hope* and similarly reinstate
Evergreen's constitutional claims before the District Court.

17

that the Bill's regulation of speech was both content-based and viewpoint-based, requiring the highest level of constitutional scrutiny.

The Court of Appeals should similarly find that Evergreen adequately pled that Section 203-E impairs its First Amendment right freely to exercise its religion. Evergreen presented the District Court with a sufficient pleading that its hiring decisions were core decisions of a religious organization and therefore constitutionally protected as "ministerial" actions. Alternatively, Evergreen adequately pled that Section 203-E is neither sufficiently generally applicable nor adequately neutral toward religion to avoid infringing on Evergreen's right to free exercise.

Finally, the Court of Appeals should find that Evergreen adequately pled that Section 203-E is too vague to be enforced without violating the Due Process Clause of the Fourteenth Amendment. By failing to define central terms, legislators left citizens uncertain as to the scope of actions prohibited by the statute and to whom its restrictions apply. Such vagueness invites inconsistent and arbitrary enforcement, contrary to due process of law.

Should the Court of Appeals recognize the validity of Evergreen's First Amendment claims, it should remand to the District Court for discovery and, ultimately, a determination that, not tailored to serve any legitimate governmental interest at all, Section 203-E cannot withstand strict scrutiny—a determination that

is almost always premature on appeal from a dismissal and is certainly premature in this case.

The District Court failed to apply the appropriate standard in ruling on Defendants' Motion to Dismiss. If the District Court had credited Evergreen's factual allegations and drawn inferences in Evergreen's favor, as the law requires, Evergreen's claims would have survived dismissal and proceeded to discovery. *New Hope*, 966 F.3d at 163, 165, 170, 176, 179-80 (reversing dismissal in case raising similar constitutional claims and emphasizing need for discovery). This Court should reverse the District Court's dismissal and remand for discovery.

## ARGUMENT

## I.    Standard of Review

This Court "review[s] *de novo* a District Court's dismissal of a complaint pursuant to Rule 12(b)(6)." *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 94 (2d Cir. 2017). "[A] court that rules on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint," so on appeal this Court will "describe the facts as alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and construing any ambiguities in the light most favorable to upholding the

19

plaintiff's claim." *Sung Cho v. City of New York*, 910 F.3d 639, 642 n.1 (2d Cir. 2018) (cleaned up).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). On the contrary, a "well-pleaded complaint may proceed even if it strikes a savvy judge that . . . recovery is very remote and unlikely." *Nielsen*, 746 F.3d at 62 (quoting *Twombly*, 550 U.S. at 556).

## II. Evergreen adequately pled that Section 203-E burdens its First Amendment right to expressive association by forcing it to hire and retain those who have or support abortions.

Evergreen exists to oppose, deter and otherwise prevent abortion through life-affirming counseling and financial support for women considering abortion. Even the District Court admits that Evergreen engages in expressive association. JA29-30. Yet Section 203-E forbids Evergreen from rejecting job applicants or

dismissing employees who have had abortions or otherwise fail to live out Evergreen's mission. These simple facts, clearly pled, demonstrate a violation of Evergreen's expressive association rights.

The fundamental right to expressive association was first articulated in *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958), where Justice Harlan recognized that "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking on the close nexus between the freedoms of speech and assembly." The First Amendment protects the right to "associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).

"Freedom of association . . . plainly presupposes a freedom not to associate." *Id.* at 623. "Forcing a group to accept certain members [that] impair the ability of the group to express [its] views, and only those views, . . . infringes the group's freedom of expressive association." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (also explaining that the right to expressive association "is crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas") (internal quotations and citations omitted). Only where a government shows that a law is narrowly tailored to serve a

21

compelling interest that is unrelated to the suppression of ideas may it abridge this freedom. *Id.*

Because Evergreen plausibly alleged (1) it "engages in expressive activity," (2) that Section 203-E "significantly affect[s] [its] ability to advocate public or private viewpoints," and (3) that the Boss Bill cannot survive strict scrutiny, *see infra* Section VI, its expressive association claim should not have been dismissed. *Id.* at 648, 650, 657-58.

### A. As the District Court held, Evergreen engages in expressive association.

As the Supreme Court held in the fundamental expressive association case, *Boy Scouts of America vs. Dale*, "[t]o determine whether a group is protected by the First Amendment's expressive associational right, [this Court] must determine whether the group engages in 'expressive association.'" *Dale*, 530 U.S. at 648. The Complaint alleges that Plaintiffs join together to "transmit . . . a system of values," *id.* at 650, namely their religiously informed, pro-life worldview. *See* JA45-46 ¶¶ 5-6; JA49 ¶¶ 30-31 (promoting beliefs as to value of human life and negative effects of sexual relationships outside of marriage); JA49-50 ¶ 33 (providing life-affirming, abstinence-promoting counseling); JA50 ¶ 37 (hiring representatives who "effectively convey Evergreen's mission and position regarding 'reproductive

22

health decisions'"); JA55 ¶ 67 (describing "associat[ion] with like-minded individuals"); JA56 ¶ 74; JA57 ¶ 90; JA58 ¶ 91.[8]

The State denied that Evergreen constitutes an expressive association, arguing that Plaintiffs "do not allege that employer and staff associate for the purpose of conveying a message." JA91. However, *Dale* makes clear that if a group "engage[s] in *some form* of expression, whether it be public or private," it is protected by the right to expressive association. 530 U.S. at 648 (emphasis added). "[A]ssociations do not have to associate for the 'purpose' of disseminating a certain message in order to be entitled to the protections of the First Amendment. An association must merely engage in expressive activity that could be impaired in order to be entitled to protection." *Id.* at 655.

The District Court agreed that Evergreen engages in expressive association, holding that "the allegations in the Complaint clearly indicate that Plaintiffs aim to share their pro-life message with the world," and finding that the State Defendants "misunderstand the law." JA29-30. Evergreen is an inherently communicative ministry, not an employer that accidentally communicates every so often, as

---

[8] Evergreen also has a website, https://emcfrontline.org, and a Facebook page, https://www.facebook.com/expectantmothercare/, that express the organization's pro-life mission and activities. These were noted in briefing on the State's motion to dismiss. JA111 n.4.

Defendants have argued. In any case, all that is required is that they "join together and speak." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc*., 547 U.S. 47, 68 (2006). That Plaintiffs do.

> **B.**   **Section 203-E significantly impairs Evergreen's expressive association.**
>
> > **1.**   **Evergreen adequately pled significant burdens on its expressive association.**

The Supreme Court also held in *Dale* that courts must "give deference to an association's view of what would impair its expression." *Dale*, 530 U.S. at 653 (citing *Democratic Party of United States v. Wisconsin ex rel. La Follette,* 450 U.S. 107, 123-24 (1981) (considering whether a Wisconsin law burdened the National Party's associational rights and stating that "a State, or a court, may not constitutionally substitute its own judgment for that of the Party")). The District Court neither noted the deference owed to Evergreen's views nor demonstrated any such deference.

The Complaint alleges that Section 203-E will significantly impair Evergreen's ability to associate with others to advance its pro-life viewpoint. JA55 ¶ 67 (law restricts Evergreen's "freedom to associate with like-minded individuals" and forbids it from "enforc[ing] employment standards of conduct" in accordance with beliefs); JA55 ¶ 68 (law punishes Evergreen for acting upon decision of employee that violates Evergreen's employment policies); JA56 ¶¶ 73-74

(compliance with law would "undermine and compromise Plaintiffs' pro-life mission, messages, and purpose, and compel Plaintiffs to associate with employees who do not share such mission, messages, and purpose"); JA56 ¶¶ 78-80 (enforcement and penalties of the law "would destroy Plaintiffs' ability to continue their pro-life mission" and constitute "a threat to Evergreen's existence"); JA56 ¶ 81 (law "coerces Plaintiffs to betray their moral and religious beliefs and their mission of preventing abortion and helping women in crisis pregnancies"); JA58 ¶¶ 93-94 (law denies Plaintiffs "the right to organize their staff, to communicate to the staff, to correct, discipline or terminate staff who reject Plaintiffs' moral and religious position;" "[f]orcing Plaintiffs to hire, retain, refrain from disciplining or terminating . . . personnel who do not share Plaintiffs' beliefs . . . would fatally compromise Plaintiffs' pro-life message and mission").

The Complaint further alleges that Section 203-E forces Evergreen to associate with and employ those who oppose their pro-life beliefs and mission. JA56 ¶¶ 74-75. This "forced inclusion," *Dale*, 530 U.S. at 648, necessarily dilutes Evergreen's beliefs and compromises its mission. JA58 ¶ 94; *see Roberts*, 468 U.S. at 633 (O'Connor, J., concurring) ("Protection of the association's right to define its membership derives from the recognition that the formation of an expressive association is the creation of a voice, and the selection of members is the definition of that voice.").

Where Evergreen would speak with one pro-life voice and collectively act in accord with those beliefs, Section 203-E requires it to speak with a forked tongue and act as if beliefs and conduct can be divorced from one another without consequence. Moreover, a counselor who is satisfied with her choice to have an abortion or use abortifacient birth control, or her decision to provide either to a relative or friend, cannot be a truthful and sincere representative of Evergreen's pro-life mission. Section 203-E therefore thwarts Evergreen's right to expressive association, and Evergreen's very reason for being, by compelling Evergreen to employ representatives whose lives contradict the message Evergreen exists to convey. This is incomprehensible under the First Amendment.

> ### 2. The District Court wrongly discredited Evergreen's factual allegations and drew inferences against Plaintiffs.

The District Court nevertheless dismissed Evergreen's expressive association claim at the earliest possible stage, stating that "Plaintiffs overstate[d] the interference with their expressive rights imposed in Section § 203-e." JA31. This conclusion is an explicit abdication of the Court's obligation to credit the factual claims of the Plaintiffs when considering a Motion to Dismiss. Moreover, it is false.

To support its conclusion, the Court first stated that the statute applies only to employees. JA31-32. The District Court's confidence that the definition of the word "employee" is limited is arbitrary and misplaced given the lack of a

26

definition in the statute. *See infra* Section V (discussing the vagueness of Section 203-E). All that is clear from the use of the term "employee" and no others is that, since Evergreen pled that it has employees, the statute burdens Evergreen *at least* in every hiring decision. JA49 ¶ 29.

Next, the District Court states that "the statute cannot regulate ministers," citing *Hosanna-Tabor Evangelical Lutheran Church & Sch*. v. *EEOC*, 565 U.S. 171, 190-191 (2012). Evergreen addresses this more fully in the context of free exercise, *infra* Section IV, but it is unclear how the Court can rely on the ministerial exception as a limiter of Evergreen's burden in the same breath that it points out that whether an "employee is a minister is a question . . . that will surely be the subject of a number of Supreme Court cases in the coming years." JA32 n.4. In any case, the possibility that Evergreen *might have* a colorable claim to a ministerial exemption does not mean that they *do not have* an expressive association claim.

Next, the District Court states that Section 203-E leaves intact Evergreen's ability to fire an employee who *says* anything that contradicts Evergreen's mission. JA32. This interpretation of Section 203-E, like the Court's limited interpretations of "employee" and "reproductive health decision" without definitions, is an inappropriate inference against Evergreen in considering a Motion to Dismiss. In truth, it is far from clear that Evergreen can make demands about their employees'

27

speech (particularly while not "on the clock") about reproductive rights without later answering for those demands in a Section 203-E lawsuit or criminal prosecution following any adverse employment decision. *Accord New Hope*, 966 F.3d at 176 (finding such a conclusion premature on Motion to Dismiss). More fundamentally, as an expressive association dedicated to evangelizing a certain philosophy of life, Evergreen's interests in their employees' expression does not end with their pure speech; expression includes both words and deeds. *Rumsfeld*, 547 U.S. 47 at 65 (expressive *conduct* protected by First Amendment).

In the end, the District Court concedes that "Plaintiffs are somewhat correct to complain that they may be forced to associate with employees or prospective employees whose actions indicate that they do not share their views on abortion and other family planning issues." JA32. However, ignoring its obligation to credit Evergreen's factual allegations, the Court judges it merely "incidental" to Evergreen's expressive association that, if an employee or prospective employee has an abortion or helps someone get an abortion, Evergreen cannot decide not to employ them as a representative for their pro-life message.

One reason the District Court cites for finding the burden incidental is particularly curious:

> Plaintiffs' complaint, then, is that Labor Law § 203-e will alter their appearance and thus undermine their message. People will know that, even though they proclaim a public commitment to a particular message about religion, sexuality, abortion, and contraception, employees may engage in conduct contrary to their

28

> professions of faith. . . . The Court . . . fails to see how a regulation promulgated by the State of New York would cause others to conclude that Plaintiffs are not sincere in their anti-abortion activity.

JA33. The District Court appears to reason that, because any apparent hypocrisy in Evergreen hiring pro-abortion employees would result from compliance with a state statute, the effect of the hypocrisy would be "merely incidental," given the widespread knowledge of Section 203-E and Evergreen's reluctant compliance with it.

Obviously, it is unclear and in fact highly doubtful that the general public knows anything about Section 203-E. More important, this reasoning turns legislators from potential perpetrators of forced expression into universal validators: if "everyone knows the state made you do it" were a defense against an expressive association claim, there would be no expressive association rights at all. The Boy Scouts of America, for instance, would have had no association defense against James Dale because the anti-discrimination law he sued under was simply a mandate from the state. This cannot be.

### 3. Supreme Court and Court of Appeals precedent supports Evergreen's expressive association claim.

Evergreen's refusal to confuse their clients and donors by employing counselors who support or have abortions is squarely in line with the Boy Scouts' claim in *Dale*. There, the Supreme Court recognized that Dale's mere "presence in the Boy Scouts would, at the very least, force the organization to send a message,

29

both to the youth members and the world," of approval of homosexual conduct. *Dale*, 530 U.S. at 692. Therefore, the Court held that forcing "the Boy Scouts [to] retain Dale as an assistant scoutmaster would significantly burden the organization's right to oppose or disfavor homosexual conduct." *Id*. at 659. Similarly, in *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos*., 515 U.S. 557, 574-75 (1995), the Court recognized that the very "presence of the organized marchers" would impermissibly superimpose a message that the parade's organizers did not wish to communicate. 515 U.S. at 574-75.

Especially given the similarity to *Dale*, it was wrong for the District Court to fail to credit Evergreen's allegations regarding the undermining effects of Section 203-E on Evergreen's expressive association. Instead of following the District Court, this Court should embrace its own, more recent decision in *New Hope*, in which it revived an association claim prematurely dismissed by a district court:

> In dismissing New Hope's association claim, the District Court concluded that the adoption agency could show only "slight impairment" to its expressive activity . . . As for the "slight impairment" conclusion, it too is premature. Compelled hiring, like compelled membership, may be a way in which a government mandate can "affect[ ] in a significant way [a] group's ability to advocate public or private viewpoints."

*New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 179 (2d Cir. 2020).

4. **The Eastern District of Missouri resolved nearly these precise facts in favor of expressive association in the *Our Lady's Inn* case.**

Although it is not precedential, it is significant as a comparison to the District Court's dim view of Evergreen's expressive association rights that a federal district court in St. Louis enjoined a similar ordinance to Section 203-E because it unconstitutionally burdened the expressive association rights of religious plaintiffs. In *Our Lady's Inn v. City of St. Louis,* 349 F. Supp. 3d 805 (E.D. Mo. 2018), the City of St. Louis had adopted an ordinance that prohibited employers from taking "any adverse employment action against an employee based on a reproductive health decision by an employee or employee's dependent." *Id*. at 810. Plaintiff Our Lady's Inn was a nonprofit corporation "provid[ing] housing for pregnant, low-income women seeking an alternative to abortion" that "actively engage[d] in expressive activities aimed at raising awareness of its pro-life mission" and required employment "applicant[s] to support the pro-life mission of the organization." *Id*. at 812. Plaintiff Archdiocesan Elementary Schools of St. Louis was a group of Catholic elementary schools that "instilled Catholic, pro-life values in young people" and required its employees to sign a "Witness Statement" pledging compliance with "the Catholic Church's longstanding and widely known opposition to abortion." *Id*. at 813, 821.

31

On these facts, the United States District Court for the Eastern District of Missouri had no trouble concluding that both Our Lady's Inn and the Archdiocesan Schools were expressive associations. *Id*. at 821 ("Our Lady's Inn squarely fits the description of an expressive association . . . [T]he Archdiocesan Elementary Schools engage in the instruction of the young, which is an expressive activity."). The Court also had no trouble concluding that the ordinance would significantly burden the Plaintiffs' expressive association in the following ways:

- The "forced inclusion of individuals who do not share Our Lady's Inn's commitment against abortion would significantly affect [its] ability . . . to advocate for its services and encourage women to forgo abortion;"

- "Our Lady's Inn['s] ability to organize its staff and circulate expressive materials with their views on controversial reproductive rights issues would be hindered if they were required to employ dissenters from their pro-life message;"

- the Archdiocesan Schools "impose upon their teachers a code of religious moral conduct and expect them to follow, in their personal life and behavior, the recognized moral precepts of the Catholic Church," so "the forced inclusion of teachers or other staff who do not adhere to those values would significantly affect the Archdiocesan

> Elementary Schools' ability to advocate their viewpoints, through its
>
> teachers and staff, to their students."

*Id*. at 821-22.

Finally, the Court had no trouble concluding that the City lacked a compelling interest in the legislation because it proffered only "in general terms" "concern[s] about discrimination on the basis of reproductive health decisions." *Id*. at 822.[9] The Court therefore found that the ordinance violated the First Amendment right to expressive association and enjoined it.

***

On a motion to dismiss, this Court need only assess whether a claim has been stated, not whether Evergreen will ultimately win this case. Evergreen has pled factual allegations comfortably stating an expressive association claim under the principles enunciated in *Dale* and closely followed by this Court in *New Hope* and by the Eastern District of Missouri in *Our Lady's Inn*. This Court should therefore reverse the District Court's decision and reinstate Evergreen's expressive association claim.

---

[9] A demonstrable state interest is equally absent in this case. *See supra* notes 3-5 and accompanying text; *infra* Section VI (discussing strict scrutiny).

## III. Evergreen adequately pled that Section 203-E illegally burdens its First Amendment right to free speech.

### A. The First Amendment protects Evergreen's speech.

The Complaint alleges that Evergreen professes and promotes pro-life messages and other religious beliefs and engages in counseling of pregnant women in distressed conditions. JA49-50 ¶¶ 30-31, 33. Unlike a restaurant or retail store, Evergreen's uniquely expressive nature means that the people Evergreen hires affect its message. Just as a film company must be able to choose its actors and producers and a news company must be able to choose its editors and writers to convey the desired message, Evergreen must also be able to select its staff to convey its desired message. *See, e.g.*, *McDermott v. Ampersand Publ'g., LLC*, 593 F.3d 950, 962 (9th Cir. 2010) ("To the extent the publisher's choice of writers affects the expressive content of its newspaper, the First Amendment protects that choice."); *Claybrooks v. Am. Broad. Cos., Inc.*, 898 F. Supp. 2d 986, 997, 999-1000 (M.D. Tenn. 2012) (dismissing claim of racial discrimination in television casting to protect "the producers' freedom of speech," because "defendants are entitled to select the elements (here, cast members) that support whatever expressive message the Shows convey or are intended to convey"). Without the ability to "cast" its employees, Evergreen's messages and mission would be compromised. JA55-56 ¶¶ 71, 73, 81.

34

Evergreen's speech on the subject of abortion, an issue of public importance, "occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (cleaned up); *see also McCullen v. Coakley*, 573 U.S. 464, 488-89 (2014) (abortion-related leafletting and advocacy are protected); *Rust v. Sullivan*, 500 U.S. 173, 196 (1991) (discussing the "constitutional right . . . to engage in abortion advocacy and counseling"). More generally, the Supreme Court has recognized that nonprofits like Evergreen often engage in the "dissemination of information, discussion, and advocacy of public issues," which it deems "an activity clearly protected by the First Amendment." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 961 (1984).

### B. Section 203-E burdens Evergreen's speech.

Defendants argued before the District Court that, because Section 203-E prevents employers from taking adverse employment *actions* against employees, it only regulates conduct, not speech. JA23. However, in the recent words of this Court, "[a]s the Supreme Court has long recognized, even conduct can claim the protections of Free Speech where '[a]n intent to convey a particularized message [is] present, and . . . the likelihood [is] great that the message would be understood by those who viewed' or learned of the conduct." *New Hope Fam. Servs., Inc. v.*

35

*Poole*, 966 F.3d 145, 176 (2d Cir. 2020) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)).

In *New Hope*, this Court considered the First Amendment claims of a Christian adoption agency suddenly subject to a regulation requiring it to place children for adoption with same sex and cohabiting couples, violating the agency's sincere religious beliefs. This Court found that the adoption agency's conduct, very similar to Evergreen's, was "laden with speech": "all New Hope's adoption services—from counseling birthmothers, to instructing and evaluating prospective adoptive parents, to filing its ultimate reports with the court—are laden with speech." *Id.* at 171. All those "services are provided so that, at their end, New Hope itself can *speak* on the determinative question for any adoption: whether it would be in the best interests of a child to be adopted by particular applicants." *Id*. (emphasis in original).

As with New Hope, everything Evergreen does to support pregnant women is not only "laden with speech," but also designed so that Evergreen "can *speak* on the determinative question for any" abortion: whether the child should be born. Evergreen's ability to train its employees in its mission and to establish expectations as to employee belief and behavior, especially on issues of reproductive decision making, is essential to its remaining a credible pro-life voice in the communities it serves.

36

Moreover, Evergreen has clearly alleged that Section 203-E's "conduct" regulations significantly burden its ability to "convey a particularized message" that will be "understood by those who viewed or learned of [its] conduct." *New Hope*, 966 F.3d at 176; JA59-60 ¶¶ 100-114. In particular, the Complaint cites Section 203-E's no-waiver provision, N.Y. LAB. LAW § 203-E(2)(b), which prevents Evergreen from setting an expectation that employees will act consistently with organizational beliefs on a variety of topics, including abortion, contraceptives, and sexual morality. JA52-53 ¶ 51. Because Evergreen has the constitutionally protected autonomy to choose representatives who support its religious beliefs and mission, it must also be free to explain its employment standards and expect compliance with those standards. That requires both pure speech and conduct conveying a particularized message, and Section 203-E directly interferes with both through its no-waiver provision.

### C.     Section 203-E is a content-based regulation of speech.

Moreover, because it "applies to particular speech because of the topic discussed or the idea or message expressed," Section 203-E is a content-based speech regulation. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163-64 (2015) ("[R]egulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."). To determine whether a regulation is content-based or content-neutral, courts must ask "whether

the government has adopted a regulation of speech because of disagreement with the message it conveys." *Hobbs v. County of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005). Here, the legislative history before the District Court demonstrates that Section 203-E was passed in order to mute employers who would limit an employee's access to birth control or abortions, in retaliation for religious employers' successful lawsuits claiming constitutional protections from the HHS contraceptive mandate. *See supra* notes 3 through 5 and accompanying text. Because Section 203-E was passed "because of disagreement with the message" conveyed by religious employers objecting to participating in abortion and contraception, it is content-based and must survive strict scrutiny. *See infra* Section VI. The District Court was wrong to conclude otherwise.

### D. Section 203-E is a viewpoint-based regulation of speech.

Moreover, because, in effect, Section 203-E does not ban *all* speech about reproductive health decisions, but only the pro-life perspective, it engages in viewpoint discrimination, "an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). As such, even the purest motives could not save these speech restrictions. *Reed*, 576 U.S. at 165 (noting that content-based laws must face "strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech") (internal quotation omitted).

38

The State may claim that Section 203-E is viewpoint-neutral, since it ostensibly applies to all employers and to all reproductive health decisions. However, this neutrality is illusory. Section 203-E restricts the speech of only pro-life employers, because pregnant women who choose *not* to have abortions are already protected by state and federal pregnancy and gender discrimination laws. *See Krause v. Lancer & Loader Grp*., LLC, 965 N.Y.S.2d 312, 319 (Sup. Ct. 2013) (describing state and federal laws barring pregnancy discrimination in employment); *Bailey v. New York State Div. of Hum. Rts.*, 959 N.Y.S.2d 833, 838 (Sup. Ct. 2012) (describing employment discrimination protections for women who have children). A ban on speech such as that imposed by Section 203-E, which burdens only one side of the political spectrum in both effect and intention, constitutes viewpoint discrimination, which is "presumed to be unconstitutional." *Rosenberger*, 515 U.S. at 829; *see also Arizona Life Coal. Inc. v. Stanto*n, 515 F.3d 956, 971-72 (9th Cir. 2008) (finding viewpoint discrimination where a state commission denied an application for a "Choose Life" specialty license plate because it related to abortion).

"There are various situations which will lead a court to conclude that, despite the seemingly neutral justifications offered by the government, nonetheless the decision to exclude speech is a form of impermissible discrimination." *Ridley v. Massachusetts Bay Transp. Auth*., 390 F.3d 65, 87 (1st Cir. 2004). More than

one of those situations is present here: an improper legislative motive (responding to religious employers of the *Hobby Lobby* ilk) and no legitimate legislative aim (no examples of the now-barred discrimination in New York). *See supra* notes 3 through 5 and accompanying text. "[S]uspicion [of impermissible discrimination] arises where the viewpoint-neutral ground is not actually served very well by the specific governmental action at issue; where, in other words, the fit between means and ends is loose or nonexistent." *Ridley*, 390 F.3d at 87. Here, where there is no evidence in the record of the type of "discrimination" the statute ostensibly addresses, the record supports far more than a "suspicion" of non-neutrality based on a "loose . . . fit between means and ends." *Id*. Moreover, the passage of Section 203-E alongside two other pro-abortion bills, along with the Bill sponsors' explicit concern about pro-life employers asserting their constitutional rights, supports the conclusion that Section 203-E effects viewpoint discrimination: where prohibition is of "core political speech that is critical of existing governmental policy, [courts] are especially wary of viewpoint discrimination." *Id.* at 86.

Evergreen's Complaint plausibly alleged that Section 203-E restricts its speech by unconstitutionally regulating it based on content and viewpoint. The District Court erred in dismissing this claim prior to discovery.

40

**IV.    Evergreen adequately pled that Section 203-E illegally burdens its First Amendment right to free exercise of its religion.**

The Complaint alleges that Evergreen and its founder and President, Mr. Slattery, profess and promote the moral and religious belief that all human life is equally valuable and deserving of protection, from fertilization to natural death. JA49 ¶ 30. Evergreen believes that every abortion claims an innocent life. *Id.* The Complaint alleges that Mr. Slattery, in keeping with his sincere religious beliefs, has established and enforces as Evergreen's employment policy—a policy shared by numerous other pro-life organizations—that persons desiring employment must not obtain, assist in obtaining, or condone abortion, and must not be involved in sexual relationships outside of marriage (or associated cohabitation), which the Catholic religion he professes likewise forbids and condemns as an intrinsic evil. JA45 ¶ 5.

Evergreen's exercise of religion includes employing and advertising open positions to individuals who share and live out Evergreen's organizational beliefs regarding reproductive health decisions. JA62 ¶ 125. Evergreen alleges that the challenged law unconstitutionally seeks to compel Slattery and Evergreen to violate their consciences by acting against the dictates of their religion in matters of employment. JA46 ¶ 7.

### A. Forcing Evergreen to hire those who have, promote, or support abortions violates the Free Exercise Clause.

The District Court dismissed Evergreen's free exercise claim because it erroneously found that Section 203-E was a neutral law of general applicability. JA20-21. The Supreme Court has stated as a "general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (describing "the *Smith* requirements" for identifying a neutral law of general applicability). However, this standard, first articulated in *Employment Division v. Smith*, 494 U.S. 872 (1990), does not fully address the limits on the State's power to intrude on the rights of its citizens to freely exercise their religion.

As the Supreme Court recently emphasized, it is *not* the case "that any application of a valid and neutral law of general applicability is necessarily constitutional under the Free Exercise Clause." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021 n.2 (2017). Instead, the Court has distinguished between cases like *Smith*, which "involved government regulation of only outward physical acts," and cases involving government interference with a religious organization's operations in a manner "affect[ing] the faith and mission of the church itself," *Hosanna-Tabor Evangelical Lutheran Church & Sch. v.*

42

*E.E.O.C.*, 565 U.S. 171, 190 (2012), or intruding on activities that play "an important role in transmitting the . . . faith to the next generation," *id.* at 192. In the latter cases, where regulations impact the internal operations of a religious organization, the Supreme Court has carved out an area of significant deference to religious organizations in the form of the "ministerial exception."

Applying the ministerial exception, the Supreme Court concluded—without applying *Smith*—that the Free Exercise Clause prohibits using employment antidiscrimination laws to second-guess a religious school's decision to terminate a teacher responsible for the spiritual instruction of children. *Hosanna-Tabor*, 565 U.S. at 190, 196. Similarly, no *Smith* analysis was needed for the Court to state as obvious that the Free Exercise Clause prohibits even a "neutral law of general applicability" from requiring a ministry to ordain women, *id.* at 190, or members of the clergy to perform same-sex weddings, *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n,* 138 S. Ct. 1719, 1727 (2018); *see also Lukumi*, 508 U.S. at 533 ("a law targeting religious beliefs as such is never permissible"). These decisions exemplify "a spirit of freedom for religious organizations, an independence from secular control or manipulation" that is more foundational than *Smith*. *Hosanna-Tabor*, 565 U.S. at 186.

Evergreen's decision to hire and fire employees in accordance with their beliefs about abortion is more akin to "an internal church decision that affects the

faith and mission of the church itself" than to the "individual's . . . outward physical acts" in *Smith*. *See Hosanna-Tabor*, 565 U.S. at 190. Indeed, Assemblywoman Jaffee acknowledged that there would be employers who qualified for the "ministerial exception" to the Boss Bill, but stated that Section 203-E's terms nonetheless applied to every employer in the state, leaving parties to raise the exception as a defense to suit.[10] The District Court similarly stated that "the statute cannot regulate ministers," citing *Hosanna-Tabor,* 565 U.S. at 190-191. JA32.

Evergreen adequately pled facts demonstrating that it qualifies for the ministerial exception to enforcement of Section 203-E. JA44-46 ¶¶1-11. If religious groups "must be free to choose" the men and women "who will preach their beliefs, teach their faith, and carry out their mission," *Hosanna-Tabor*, 565 U.S. at 196, then the State must respect Evergreen's personnel decisions. If religious groups cannot be forced to violate their beliefs by facilitating same-sex weddings, *see Masterpiece Cakeshop*, 138 S. Ct. at 1727, they also cannot be forced to violate their beliefs by hiring or retaining employees that betray their mission and entire reason for existence.

---

[10] Assembly Transcript at 124-127, available at
https://www2.assembly.state.ny.us/write/upload/transcripts/2019/1-22-19.html

**B.** **Evergreen adequately alleged that the regulation is not generally applicable.**

Moreover, even if Evergreen were determined not to qualify for the ministerial exemption to enforcement of Section 203-E, Evergreen adequately alleged in its Complaint that Section 203-E is not generally applicable. JA62-63 ¶¶127-129. Under *Lukumi*, a regulation like Section 203-E is "not generally applicable if it is substantially underinclusive such that it regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it." *Cent. Rabbinical Cong. of U.S. & Canada v. New York City Dep't of Health*, 763 F.3d 183, 197 (2d Cir. 2014). A generally applicable regulation must "prohibit nonreligious conduct that endangers these interests in a similar or greater degree than" the regulated religious conduct. *Lukumi*, 508 U.S. at 543.

Whenever "the government makes a value judgment in favor of secular motivations, but not religious motivations, the government's actions must survive heightened scrutiny." *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999) (Alito, J.). As Professors Laycock and Collis have summarized, "[t]he constitutional right to free exercise of religion is a right to be treated like the most favored analogous secular conduct." Douglas Laycock & Steven T. Collis, *Generally Applicable Law and the Free Exercise of Religion*, 95 Neb. L. Rev. 1, 22-23 (2016).

New York employment law falls far short of this standard: it creates an anti-discrimination regime with a host of exceptions, allowing discrimination—the primary interest the State asserts here—when the legislature sees fit. For example, the New York Human Rights Law prohibits employment practices that discriminate on the basis of race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status. N.Y. EXEC. LAW § 296(1)(a). However, the law also specifically allows employers to carry out a plan to increase the employment of members of a minority group that has a disproportionately high statewide unemployment rate. N.Y. EXEC. LAW § 296(12). Other aspects of New York's law allow for discrimination, such as Executive Law Article 15-A, which promotes employment and business opportunities on state contracts for minorities and women. N.Y. EXEC. LAW §§ 310-18. In 2011, Governor Cuomo issued "Executive Order No. 8: Removing Barriers to Minority and Women Business Enterprises Participation in State Contracting," which also prioritized the participation of minority- and women-owned business enterprises in state contracting.[11]

Despite these secular justifications for exceptions to New York's general law against making employment decisions based on race or gender, the State insists

---

[11] https://www.governor.ny.gov/news/no-8-removing-barriers-minority-and-women-business-enterprises-participation-state-contracting

that employers hire and retain those who have abortions with no exception for sincerely held religious beliefs. The State thus "regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests [here, anti-discrimination] purportedly justifying it." *Cent. Rabbinical Cong*., 763 F.3d at 197. Accordingly, the challenged regulation is "substantially underinclusive," and "not generally applicable," and therefore subject to strict scrutiny. *Id.*

The State has made a "value judgment in favor of secular motivations, but not religious motivations" as justifying various forms of discrimination. *Fraternal Order of Police*, 170 F.3d at 366 (Alito, J.). "This precise evil is what the requirement of general applicability is designed to prevent." *Lukumi*, 508 U.S. at 545-46. Evergreen's allegations support a reasonable inference that the ban on Evergreen's faith-based practice is not "generally applicable."

## C. Evergreen also adequately alleged that the regulation is not neutral toward religion.

"Official action that targets religious conduct for distinctive treatment cannot be shielded by . . . facial neutrality." *Lukumi,* 508 U.S. at 534. "[U]pon even *slight suspicion* that proposals for state intervention stem from animosity to religion or distrust of its practices, all officials must pause to remember their own high duty to the Constitution and to the rights it secures." *Id.* at 547 (emphasis added). Mindful that government hostility to religion can be "masked, as well as overt," the

Supreme Court noted that even "subtle departures from neutrality" and "covert suppression of particular religious beliefs" are prohibited. *Id*. at 534 (cleaned up).

Considering whether a law is truly or only superficially neutral, a court must "survey meticulously" the totality of the evidence, "both direct and circumstantial." *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 163 (2d Cir. 2020). It must consider "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Lukumi*, 508 U.S. at 534, 540 (internal quotation marks omitted); *accord Masterpiece Cakeshop*, 138 S. Ct. at 1731. It must carefully consider "the effect of a law in its real operation," which "is strong evidence of its object." *Lukumi*, 508 U.S. at 535. Finally, the First Amendment also "guarantee[s] that our laws be *applied* in a manner that is neutral toward religion." *Masterpiece Cakeshop,* 138 S. Ct. at 1732 (emphasis added).

The Complaint alleges that in passing Section 203-E the legislature targeted Evergreen and other religious employers in order to suppress their ability to run their ministries in accord with their religious beliefs. JA62-63 ¶¶ 127-130. Evergreen also alleges that when directly questioned as to whether discrimination on the basis of reproductive health decisions was actually occurring in New York State, Assemblywoman Ellen Jaffee, the main sponsor of the Boss Bill, could offer

no examples of discrimination on the basis of "reproductive health decision making." JA54 ¶ 64.

Section 203-E's main sponsor in the State Senate, Senator Jennifer Metzger, expressed the view on the Senate floor that lawsuits filed by employers to protect themselves from having to provide abortifacient drugs under the federal Affordable Care Act's (ACA) contraceptive mandate were tantamount to a denial of reproductive health services. JA123-24.[12] Metzger lamented these lawsuits, and characterized them, along with the United States Supreme Court's decision in *Burwell v. Hobby Lobby Stores*, *Inc.*, 573 U.S. 682 (2014) (which recognized that the ACA's contraceptive coverage requirement violated the Religious Freedom Restoration Act for certain religious employers) as a "dangerous, slippery slope." JA123-24.[13] Metzger declared that the Boss Bill was in response to employers "exercising religion" in *Hobby Lobby* and to keep employers' "personal and political beliefs" from "encroach[ing]" on the decisions of employees as to reproductive health services. JA123-24.[14] This is religious targeting.

As described *supra*, Assemblywoman Jaffee acknowledged the existence of a "ministerial exception" to the Boss Bill but stated that the Bill would nonetheless

---

[12] *See* Senate Transcript at 433, *supra* note 3.

[13] *See id.*

[14] Senate Transcript at 433-434.

apply to every employer in the state, explaining that religious employers who may merit the exception would have to raise it as a defense to any suit brought against them. The State's decision to afflict religious entities with this "process as punishment" is another clear marker of religious targeting.

Finally, the New York State Legislature placed the Boss Bill in the Labor Law and chose not to include a religious exemption like the one contained in the Human Rights Law, N.Y. EXEC. LAW § 296 (11), even though it knew the law would unconstitutionally impinge on the autonomy of religious organizations. The State's considered decision to so burden even those religious employers they knew would be exempt from the law should dispel any doubt that it intended to burden religious employers.

The impact of the law on primarily religious organizations bolsters the conclusion of religious targeting. *Lukumi*, 508 U.S. at 535 ("[T]he effect of a law in its real operation is strong evidence of its object."). The District Court found Section 203-E to be neutral "on its face," JA19, but it is a fiction to imagine that Section 203-E protects employees who have abortions *and also* protects those who choose not to have abortions, and is therefore neutral. As explained *supra* in Section III with respect to viewpoint discrimination, Section 203-E masquerades as neutral, but it is only in place to enshrine one side of the abortion debate.

50

Finally, although Evergreen has already done enough to show that Section 203-E is far from neutral toward religion, it was premature for the District Court to cut Evergreen's efforts off at the pleadings stage. *See New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 163 (2d Cir. 2020) (even a "suspicion" of religious animosity warrants a "pause" for discovery before dismissal). The Supreme Court has recognized that "[p]roving the motivation behind official action is often a problematic undertaking." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985). "[D]iscriminatory intent," in particular, "is rarely susceptible to direct proof." *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010).

The District Court should have asked whether the facts alleged could support a reasonable inference that the regulation is *not* neutral, or that it has not been neutrally applied. *Iqbal*, 556 U.S. at 678. The alleged facts support at least that inference.

Because Evergreen plausibly alleged that the regulation is not generally applicable or neutral toward religion, instead of dismissing Evergreen's free exercise claim, the District Court should have proceeded to discovery and ultimately required the State to prove that the statute satisfies strict scrutiny. *Lukumi*, 508 U.S. at 546 (holding that the challenged ordinances failed strict scrutiny because the city had "not demonstrated" that its "governmental interests are compelling").

**V.     Evergreen adequately pled that Section 203-E is so vague that it violates its Fourteenth Amendment rights to due process of law.**

The Due Process Clause proscribes impermissibly vague statutes. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."). When a vague statute like Section 203-E implicates First Amendment rights, "a heightened vagueness standard" applies. *Brown v. Entm't Merch. Ass'n*, 564 U.S. 786, 793 (2011).

The Complaint alleges that Section 203-E is impermissibly vague, and such vagueness is an invitation for Defendants to enforce it arbitrarily and discriminatorily. *See* JA64-66 ¶¶ 142-152. The Complaint alleges that Evergreen and others similarly situated have no way to know whether and to what extent their speech or conduct actually violates the law. *Id*. For example, Section 203-E does not define its central term, "reproductive health decision making," and it does not define "employee" or "employer." JA65-66 ¶¶ 147-49. Section 203-E also fails to define the phrase "proposes to commit a violation of the provisions of this section," even though punishment flows from such "proposals." These allegations plausibly make out a due process violation and an allegation that Section 203-E does not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned*, 408 U.S. at 108.

The District Court found that Section 203-E states that "reproductive health decision making" was not vague because it includes the phrase "including, but not limited to, a decision to use or access a particular drug, device or medical service." JA37. According to the District Court, "[t]his qualification helps to explain the acts the statute prohibits. An employer cannot take action against an employee who uses a drug, device, or medical service in relation to reproductive health." *Id.*

But, by the law's own language, the term is "not limited to" those decisions, making it broad enough to encompass not only the dimly intimated medical decisions, which are few in number and not themselves specifically rendered, but also political speech and abortion advocacy. It is clearly a "decision" about "reproductive health" to support or oppose abortion. And "reproductive health decision making" could certainly include "in vitro fertilization, human cloning, sterilization, sex reassignment surgery, surrogacy, and other highly controversial procedures." JA53 ¶ 55.

Defendants below wrongly suggested that the term "reproductive health decision making" is "clear and unambiguous," and that the term has "an accepted meaning 'long recognized in law and life.'" JA95. As far as Evergreen and their counsel know, "reproductive health decision making" has only become a feature of anti-discrimination laws in very recent years and in very few jurisdictions. At least one of those jurisdictions, the City of St. Louis, felt the need to define

"reproductive health decision." *Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805, 809 n.1 (E.D. Mo. 2018) (defined as "any decision related to the use or intended use of a particular drug, device, or medical service related to reproductive health, including the use or intended use of contraception or fertility control or the planned or intended initiation or termination of pregnancy").

"Employee" is also vague. Does it apply to interns and volunteers, both of which cooperate in Evergreen's mission? Evergreen has had to assume for purposes of this action that they are "employers" and those who work for them are "employees." The District Court found that "'Employee' has a clear meaning in New York law," but when it provided that meaning, it cited not New York law, but a dictionary "example" definition: "A dictionary definition provides an example: 'a person working for another person or a business firm for pay.'" JA39 (citing Random House Dictionary). The District Court then provided a less clear definition from New York Labor Law § 2(5) ("a mechanic, workingman or laborer working for another for hire"). It is unclear that anyone working at Evergreen would fit that description, which appears to address manual labor.

The State's failure to define the phrase "proposes to commit a violation" in Section 203-E only compounds the problems faced by Evergreen and other like employers. Does this term encompass employers contemplating aloud whether they can comply with Section 203-E, even if they eventually decide to do so? Does

54

it apply to those who seek legal protection from having to comply with Section 203-E, like Evergreen? Does it expose to liability those who merely discuss with prospective or current employees their views on "reproductive health decision making"?

All of this uncertainty leaves Evergreen "unsure what conduct [Section 203-E] prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). This is particularly troublesome because, as the Complaint alleges, Section 203-E contemplates criminal penalties for noncompliance. *See* JA48 ¶¶ 20, 22; JA53-54 ¶¶ 59, 61; JA55 ¶ 69; *Morales*, 527 U.S. at 55 (concluding that where "vagueness permeates" a criminal law which "infringes on constitutionally protected rights," a facial challenge is appropriate). What is more, Section 203-E leaves Evergreen at the mercy of both private actors, who may disagree with them and choose to use Section 203-E as a political cudgel, and the State, which has not disavowed enforcement in any way and whose enforcement mechanisms are not clearly spelled out. *See* JA53 ¶ 57 (private cause of action created by Section 203-E); *see Morales*, 527 U.S. at 56 (stating that a law may be invalidated where it "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement").

Finally, because Evergreen will have no way of knowing what "decisions" will trigger liability and how any perceived "violations" may be alleged by private parties or handled by state officials, it will be forced to "steer far wider of the

unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109. The vagueness doctrine is designed to prevent these very harms.

Evergreen's well-pled factual allegations regarding vagueness barred dismissal of this claim. Those allegations are to be taken as true here. Thus, the District Court erred in dismissing Evergreen's vagueness count.

## VI. Particularly at the motion-to-dismiss stage, the State cannot meet its burden to establish that the regulation survives strict scrutiny.

Should the Court of Appeals appropriately credit any or all of Evergreen's First Amendment claims, Section 203-E must return to the District Court to face strict scrutiny. *Roberts*, 468 U.S. at 623. Strict scrutiny is the "most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). For the State to meet its burden, it must show that Section 203-E serves interests "of the highest order," *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993), and is "narrowly tailored" to serve those paramount interests, *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). Evergreen argues that Section 203-E will fail to meet these parameters at any stage, but there is no question that Defendants have not established that dismissal on the pleadings would be appropriate on the basis of the Boss Bill satisfying strict scrutiny.

56

First of all, burdens of this type are "rarely carried at the pleadings stage." *Finch v. Peterson*, 622 F.3d 725, 728 (7th Cir. 2010). And even on a complete evidentiary record, "[a] law that targets religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases." *Lukumi*, 508 U.S. at 546 (discussed *supra* at Section IV).

In cases where, as here, First Amendment claims come up for review after being dismissed at the motion-to-dismiss stage, the reviewing court's "ability to assess whether [the State's] asserted interests are compelling is constrained by the fact that, at this stage of litigation," the reviewing court has before it "only the allegations in the complaint, orders issued in the action, and other matters of public record." *Wilmoth v. Sec'y of New Jersey*, 731 F. App'x 97, 104 (3d Cir. 2018) (cleaned up).[15] "[B]ecause the District Court granted [the State's] motion to dismiss prior to discovery taking place, the parties were not afforded an opportunity to develop an evidentiary record, and thus [the reviewing court has] no basis upon which to gauge the validity of the competing interests at stake." *Id*. at 104.

"Similarly, [the reviewing court] also [has] no basis upon which to

---

[15] *Accord Agran v. City of New York*, No. 95 Civ. 2170 (JFK), 1997 WL 354705, at *4 (S.D.N.Y. June 25, 1997) (denying motion to dismiss because, "[a]t this early stage of the proceedings, the Court [could not] state beyond doubt that [the defendant's] instruction would pass constitutional muster if tested under the strict scrutiny standard").

determine whether the [challenged law] is narrowly tailored to protect the State's interests." *Id*. Answering that "question is particularly difficult [when] reviewing a motion to dismiss" on appeal given the absence of an evidentiary record. *Free Speech Coal., Inc. v. Attorney Gen. of U.S*., 677 F.3d 519, 536 (3d Cir. 2012).

Once Evergreen has plausibly alleged facts triggering strict scrutiny, it is difficult to identify a situation in which dismissal prior to discovery could be appropriate. It was not appropriate here.[16] This Court should remand the case to the District Court to allow Evergreen and Defendants to develop a record to determine whether the challenged regulation is justified by a compelling government interest and narrowly tailored to further that interest. *Free Speech Coal.*, 677 F.3d at 536; *Wilmoth*, 731 F. App'x at 105. However, even if the Court were to delve into the actual strict scrutiny test, "it is the rare case in which . . . a law survives strict scrutiny," *Burson v. Freeman*, 504 U.S. 191, 211 (1992), and this is not such a rare case.

### A. The State can show no compelling interest.

To establish a compelling interest, a state "must do more than simply posit the existence of the disease sought to be cured": it "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact

---

[16] *Accord Free Speech Coalition*, 677 F.3d at 536 (remanding to give plaintiffs "the opportunity to conduct discovery and develop the record regarding whether the Statutes are narrowly tailored").

alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994) (internal quotations and citations omitted). The State, that is, must "present more than anecdote and supposition," and must show an "actual problem" to be solved. *Playboy Entm't Grp., Inc.*, 529 U.S. at 822. "Mere speculation of harm does not constitute a compelling state interest," *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 543 (1980), and "[c]onclusory statements [by] proponents of" a law also will not do, *Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 129-30 (1989).

Section 203-E's legislative history reveals no actual problem to be addressed, much less a compelling interest to justify its First Amendment violations. The main Assembly sponsor, upon direct questioning, could not cite a single instance of employment discrimination based on reproductive health decision-making that ever took place in the State. JA54 ¶ 63-64. And the Assembly's and the Senate's official justifications for the statute could only muster a generic interest in fairness and combatting discrimination. JA52 ¶ 49; *see* Assembly News Release ("New York has a long history in protecting individuals from discrimination in the workplace")[17]; Assembly Summary Memo ("Employees

---

[17] Assembly Speaker Carl E. Heastie, "Assembly Announces Passage of Legislation to Protect Women's Reproductive Rights and Ensure Access to Options for Family Planning," March 13, 2018, https://nyassembly.gov/Press/files/20180313d.php.

must be protected from discrimination based on the reproductive health care decisions they make.")[18].

Contrary to what the Supreme Court requires, conjecture and supposition are all the State has offered—it has imagined a harm in order to create an unnecessary but politically popular "cure." *See Turner Broad. Sys., Inc.*, 512 U.S. at 664; *Playboy Entm't Grp., Inc.*, 529 U.S. at 822.

The law's further failure to universally require that all employers give notice to their employees of the law's provisions (only "[a]n employer that provides an employee handbook to its employees must include in the handbook notice of employee rights and remedies under this section," Section 203-E(6)), cements the conclusion that it serves no compelling interest. JA53 ¶ 53; *Reed v. Town of Gilbert, Ariz.,* 576 U.S. 155, 172 (2015) (a "law cannot be regarded as protecting an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprohibited").

Further, the State must look "beyond broadly formulated interests" to justify the application of the challenged law to "particular religious claimants." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006). The State cannot, under any scenario, explain that it has an interest of the highest order

---

[18] Bill Summary,
https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=A00566&term=2017&Summary=Y&Actions=Y&Committee%2526nbspVotes=Y&Memo=Y

in enforcing Section 203-E against the particular religious claimants in this case—a pro-life agency and its founder.

The State thus lacks a compelling interest in passing Section 203-E.[19]

## B. Section 203-E is not narrowly tailored.

To be narrowly tailored, Section 203-E must "target[ ] and eliminate[ ] no more than the exact source of the evil it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (internal citations omitted). It is *the State* that bears the burden of demonstrating that there are no less restrictive alternatives that would further its alleged interests. *Playboy Entm't Grp., Inc.*, 529 U.S. at 813. "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Id.*

Since there was never any "evil" crying out for remedy to begin with, even the most precise tailoring would not be remedial. In addition, in the free-speech context, "[b]road prophylactic rules . . . are suspect," and "[p]recision of regulation must be the touchstone." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.,* 487

_____

[19] The court also erred in crediting the State's claim that it "had a compelling interest in passing the legislation: protecting individual citizens' right to privacy and autonomy." JA21. "[I]t is axiomatic that the District Court [should] not consider the defendant['s] statements of fact in assessing the sufficiency of the complaint." *MacFarlane v. Grasso*, 696 F.2d 217, 225 (2d Cir. 1982). "By assuming that the [statements] are true where they contradict the allegations in the complaint, the [District Court] turn[ed] the Rule 12(b)(6) standard on its head." *Nielsen*, 746 F.3d at 63 n.4.

U.S. 781, 801 (1988). Yet Section 203-E attacks First Amendment rights as a first resort and intentionally avoids safe harbors or exemptions for even those organizations, like Evergreen, who cannot both pursue their mission and comply with the statute's requirements. The Constitution does not permit this clumsiness. Finally, where a state has other means "at its disposal" that are "less restrictive" but fails to take them, it will not pass the "exceptionally demanding" least restrictive means test. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728-730 (2014). Here, the State could have exempted, at the very least, organizations like those of Evergreen that *exist to oppose abortion*. Certainly, the State's anti-discrimination interests are still served by allowing the handful of pro-life agencies in New York to refuse to hire those who have abortions.

As laid out above with respect to inappropriate targeting of religious employers, the State consciously avoided including exemptions or tailoring language in the Boss Bill. *See supra* Section IV.C. Instead, where "[p]recision of regulation" was required, the legislature opted for "[b]road prophylactic rules," *Riley*, 487 U.S. at 801, deliberately leaving Evergreen a casualty. *See supra* note 6 (citing bill sponsor acknowledging that the text intentionally does not provide an exception for ministers, despite knowing that they are exempt).

It is extremely unlikely that Defendants could satisfy their burden to demonstrate that Section 203-E furthers any compelling interest of New York

State, or their further burden to demonstrate that New York is using the least restrictive means to effect any such compelling interest. For all the reasons set forth herein, the District Court's dismissal of Evergreen's claims cannot be supported by any argument that the Boss Bill satisfies strict scrutiny.

## CONCLUSION

For the reasons set forth above, this Court should reverse the District Court's order and reinstate Evergreen's First and Fourteenth Amendment claims against enforcement of Section 203-E, allowing Evergreen to move forward with legal and factual development of their claims.

Respectfully submitted this 14th day of June 2021.

/s/ Timothy Belz

Stephen M. Crampton, Esq.
    *Counsel of Record*
Mary Catherine Hodes, Esq., *pending admission*
THOMAS MORE SOCIETY
309 West Washington Street, Suite 1250
Chicago, IL 60606
Phone: (662) 255-9439
Fax: (312) 782-1887
scrampton@thomasmoresociety.org

Timothy Belz, Esq.
J. Matthew Belz, Esq.
CLAYTON PLAZA LAW GROUP
112 South Hanley, Second Floor
St. Louis, MO 63105
Phone: (314) 726-2800
Fax: (314) 863-3821
tbelz@olblaw.com
jmbelz@olblaw.com

*Counsel for Appellants Christopher Slattery*
*and The Evergreen Association, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Local Rule 32.1(a)(4)(A) because, excluding the portions exempted by Fed. R. App. P. 32(f), this brief contains 13,892 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


June 14, 2021                          */s/ Timothy Belz*_____
                                       Timothy Belz, Esq.
                                       *Counsel for Appellants Christopher Slattery*
                                       *and The Evergreen Association, Inc.*

64

# CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2021, this brief and the accompanying joint appendix were filed electronically with the Clerk of the United States Court of Appeals for the Second Circuit through the Court's electronic filing system, which will accomplish service on the following counsel:

Laura Etlinger, Esq.
Assistant Solicitor General
OFFICE OF THE ATTORNEY GENERAL
The Capitol
Albany, New York 12224
(518) 776-2028
laura.etlinger@ag.ny.gov
Counsel for Appellees

June 14, 2021                    */s/ Timothy Belz*
                                Timothy Belz, Esq.
                                *Counsel for Appellants Christopher Slattery*
                                *and The Evergreen Association, Inc.*

65

# ADDENDUM

## TABLE OF CONTENTS

N.Y. Labor Law § 203-E ...................................................................................... 68

# Section 203-E

Prohibition of discrimination based on an employee's or a dependent's reproductive health decision making

Prohibition of discrimination based on an employee's or a dependent's reproductive health decision making. 1. An employer shall be prohibited from accessing an employee's personal information regarding the employee's or the employee's dependent's reproductive health decision making, including but not limited to, the decision to use or access a particular drug, device or medical service without the employee's prior informed affirmative written consent.

2. An employer shall not:

  (a) discriminate nor take any retaliatory personnel action against an employee with respect to compensation, terms, conditions, or privileges of employment because of or on the basis of the employee's or dependent's reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device or medical service; or

  (b) require an employee to sign a waiver or other document which purports to deny an employee the right to make their own reproductive health care decisions, including use of a particular drug, device, or medical service.

3. An employee may bring a civil action in any court of competent jurisdiction against an employer alleged to have violated the provisions of this section. In any civil action alleging a violation of this section, the court may:

  (a) award damages, including, but not limited to, back pay, benefits and reasonable attorneys' fees and costs incurred to a prevailing plaintiff;

  (b) afford injunctive relief against any employer that commits or proposes to commit a violation of the provisions of this section;

  (c) order reinstatement; and/or

  (d) award liquidated damages equal to one hundred percent of the award for damages pursuant to paragraph (a) of this subdivision unless an employer proves a good faith basis to believe that its actions in violation of this section were in

compliance with the law.

4. Nothing in this section shall be construed to limit any rights of an employee provided through any other provision of law, common law or collective bargaining unit.

5. Any act of retaliation for an employee exercising any rights granted under this section shall subject an employer to separate civil penalties under this section. For the purposes of this section, retaliation or retaliatory personnel action shall mean discharging, suspending, demoting, or otherwise penalizing an employee for:

 (a) making or threatening to make, a complaint to an employer, co-worker, or to a public body, that rights guaranteed under this section have been violated;

 (b) causing to be instituted any proceeding under or related to this section; or

 (c) providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry into any such violation of a law, rule, or regulation by such employer.

6. An employer that provides an employee handbook to its employees must include in the handbook notice of employee rights and remedies under this section.

7. If any word, phrase, clause, sentence, paragraph, subdivision, or part of this section or the application thereof to any person or circumstances shall, for any reason, be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof, and the application thereof to other persons or circumstances, but shall be confined in its operation to the word, phrase, clause, sentence, paragraph, subdivision, or part thereof directly involved in the controversy in which such judgment shall have been rendered and to the person or circumstances involved. It is hereby declared to be the intent of the legislature that this section would have been enacted even if such invalid provisions had not been included herein.