# 21-911

## United States Court of Appeals
## for the Second Circuit

CHRISTOPHER T. SLATTERY, A NEW YORK RESIDENT, AND THE EVERGREEN ASSOCIATION, INC., A NEW YORK NONPROFIT CORPORATION, DOING BUSINESS AS EXPECTANT MOTHER CARE AND EMC FRONTLINE PREGNANCY CENTERS,

*Plaintiffs-Appellants*,

v.

ANDREW M. CUOMO, IN HIS OFFICIAL CAPACITY AS THE GOVERNOR OF THE STATE OF NEW YORK; ROBERTA REARDON, IN HER OFFICIAL CAPACITY AS THE COMMISSIONER OF THE LABOR DEPARTMENT OF THE STATE OF NEW YORK; AND LETITIA JAMES, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF NEW YORK,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of New York

## BRIEF FOR APPELLEES

BARBARA D. UNDERWOOD
  *Solicitor General*
ANDREA OSER
  *Deputy Solicitor General*
FREDERICK A. BRODIE
  *Assistant Solicitor General*
    *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellees
The Capitol
Albany, New York 12224-0341
(518) 776-2317

Dated: August 18, 2021

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iii

PRELIMINARY STATEMENT ................................................................ 1

QUESTIONS PRESENTED ..................................................................... 3

STATEMENT OF THE CASE .................................................................. 3

    A.   New York Labor Law § 203-e ................................................... 3

    B.   Background and Legislative History ........................................ 5

    C.   Proceedings Below .................................................................. 8

SUMMARY OF ARGUMENT ................................................................ 13

STANDARD OF REVIEW..................................................................... 15

ARGUMENT ....................................................................................... 16

POINT I

    PLAINTIFFS FAILED TO STATE A CLAIM THAT § 203-e
    VIOLATES THEIR RIGHT TO ENGAGE IN EXPRESSIVE
    ASSOCIATION ................................................................................ 16

    A.   Any Burden that § 203-e Imposes on Plaintiffs'
        Expressive-Association Right Is at Most
        Incidental. ............................................................................ 17

        1.   Section 203-e Does Not Force Plaintiffs to
            Employ Personnel Who Do Not Share Their
            Beliefs. .......................................................................... 18

        2.   Section 203-e's Prohibitions Do Not
            Significantly Affect Plaintiffs' Expressive
            Association. ................................................................... 23

i

3. The Precedents on which Plaintiffs Rely Differ Materially from this Case. ........................... 26

B. Section 203-e is Not Overbroad Relative to Its Plainly Legitimate Sweep. ....................................... 30

C. Section 203-e's Incidental Burden Is Justified ...................... 33

1. Section 203-e Has a Rational Basis. ...................................... 33

2. Section 203-e Would Satisfy Any Heightened Scrutiny the Court Finds Applicable. ................................... 35

D. The District Court Did Not Find Facts or Draw Improper Inferences. ................................................. 38

POINT II

PLAINTIFFS FAILED TO STATE A CLAIM THAT § 203-e VIOLATES THEIR RIGHT TO FREE SPEECH ............................................. 41

A. Section 203-e Regulates Conduct, Not Speech. ...................... 41

B. Section 203-e Is Content-Neutral and Viewpoint-Neutral. ................................................................... 45

C. Section 203-e Passes Intermediate Scrutiny. ......................... 49

POINT III

PLAINTIFFS FAILED TO STATE A CLAIM THAT § 203-e INFRINGES ON THEIR FREE EXERCISE OF RELIGION ............................. 50

POINT IV

PLAINTIFFS FAILED TO STATE A CLAIM THAT § 203-e IS UNCONSTITUTIONALLY VAGUE. ............................................... 57

CONCLUSION ................................................................. 64

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE(S)**

*Adams v. Zelotes,*
606 F.3d 34 (2d Cir. 2010) .................................................. 31

*Agosto v. New York City Dep't of Educ.,*
982 F.3d 86 (2d Cir. 2020) ................................................. 62

*Agudath Israel of Am. v. Cuomo,*
983 F.3d 620 (2d Cir. 2020) ............................................... 56

*Americans for Prosperity Foundation v. Bonta,*
141 S. Ct. 2373 (2021) ........................................................ 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................ 15, 16, 40, 56

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................... 24

*Boy Scouts of Am. v. Dale,*
530 U.S. 640 (2000) ........................................ 16, 17, 27, 35

*Broadrick v. Oklahoma,*
413 U.S. 601 (1973) ........................................................... 31

*Buckley v. Valeo,*
424 U.S. 1 (1976) ............................................................... 24

*Central Rabbinical Congress v. New York City Dep't of
Health & Mental Hygiene,*
763 F.3d 183 (2d Cir. 2014) ............................. 52, 53-54, 56

*Christian Legal Soc'y v. Martinez,*
561 U.S. 661 (2010) ........................................................... 47

*Church of Am. Knights of the Ku Klux Klan v. Kerik,*
356 F.3d 197 (2d Cir. 2004) ............................................... 25

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ........................................ 51, 52, 53, 54

*City of New York v. Beretta U.S.A. Corp.*,
   524 F.3d 384 (2d Cir. 2008) ............................................................... 20

*Claybrooks v. Am. Broad. Cos., Inc.*,
   898 F. Supp. 2d 986 (M.D. Tenn. 2012)............................................. 43

*Commack Self-Service Kosher Meats, Inc. v. Hooker*,
   680 F.3d 194 (2d Cir. 2012) ............................................................... 56

*CompassCare v. Cuomo*,
   465 F. Supp. 3d 122 (N.D.N.Y. 2020) .................................... 4n, 21, 38

*Doe v. City of New York*,
   15 F.3d 264 (2d Cir. 1994) ........................................................... 32, 36

*Edmond v. United States*,
   520 U.S. 651 (1997)............................................................................ 22

*Employment Div. v. Smith*,
   494 U.S. 872 (1990)............................................................................ 51

*F.C.C. v. Beach Commc'ns, Inc.*,
   508 U.S. (1993)................................................................................... 34

*Figueroa v. Foster*,
   864 F.3d 222 (2d Cir. 2017) ................................................... 32, 36, 51

*Golb v. Attorney General*,
   870 F.3d 89 (2d Cir. 2017) ................................................................. 33

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972)............................................................................ 58

*Hancock v. Cty. of Rensselaer*,
   882 F.3d 58 (2d Cir. 2018) ................................................................. 36

*Hosanna-Tabor Evangelical Lutheran Church & Sch.*
   *v. EEOC*,
   565 U.S. 171 (2012).................................................................. 37-38, 55

*Hurley v. Irish-Am. Gay, Lesbian and Bisexual Group*,
   515 U.S. 557 (1995) (*see* Br. )................................................. 24-25, 30

iv

*Jacoby & Meyers, LLP v. Presiding Justices,*
    852 F.3d 178 (2d Cir. 2017) ......................................................... 18, 33

*Kaemmerling v. Lappin,*
    553 F.3d 669 (D.C. Cir. 2008) ............................................................ 39

*Kraham v. Lippman,*
    478 F.3d 502 (2d Cir. 2007) .............................................................. 33

*Lawrence v. Texas,*
    539 U.S. 558 (2003) .......................................................................... 35

*Lederman v. New York City Dep't of Parks & Recreation,*
    731 F.3d 199 (2d Cir. 2013) ......................................................... 49, 50

*Libertarian Party of Erie Cty. v. Cuomo,*
    970 F.3d 106 (2d Cir. 2020),
    *cert. denied,* 2021 WL 2519117 (U.S. June 21, 2021) ......................... 57

*Livingston Christian Schools v. Genoa Charter Twp.,*
    858 F.3d 996 (6th Cir. 2017) .............................................................. 39

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,*
    138 S. Ct. 1719 (2018) ....................................................................... 53

*Mastrovincenzo v. City of New York,*
    435 F.3d 78 (2d Cir. 2006) ................................................................. 49

*McDermott Intern., Inc. v. Wilander,*
    498 U.S. 337 (1991) .......................................................................... 39

*McDermott v. Ampersand Publ'g, LLC,*
    593 F.3d 950 (9th Cir. 2010) ......................................................... 42-43

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent,*
    466 U.S. 789 (1984) .......................................................................... 30

*Mordkofsky v. V.C.V. Dev. Corp.,*
    76 N.Y.2d 573 (1990) ........................................................................ 59

*New Hope Family Servs., Inc. v. Poole,*
    966 F.3d 145 (2020) ..................................................................... *passim*

*New York v. Ferber,*
    458 U.S. 747 (1982) .......................................................................... 31

*Nielsen v. AECOM Tech. Corp.,*
    762 F.3d 214 (2d Cir. 2014) ............................................................ 39

*Operating Loc. 649 Annuity Trust Fund v. Smith Barney*
    *Fund Mgmt. LLC,*
    595 F.3d 86 (2d Cir. 2010) .............................................................. 15

*Our Lady's Inn v. City of St. Louis,*
    349 F. Supp.3d 805 (E.D. Mo. 2018) ..................................... 28, 42, 50

*Paroline v. United States,*
    572 U.S. 434 (2014) .......................................................................... 20

*Progressive Credit Union v. City of New York,*
    899 F.3d 40 (2d Cir. 2018) .............................................................. 34

*PruneYard Shopping Ctr. v. Robins,*
    447 U.S. 74 (1980) ............................................................................ 26

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984) ................................................................. *passim*

*Roman Catholic Bishop of Springfield v. City of Springfield,*
    724 F.3d 78 (1st Cir. 2013) ............................................................. 39

*Rose v. City of Waterbury,*
    No. 12-cv-291, 2013 WL 3967649 (D. Conn. July 31, 2013) .............. 40

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,*
    547 U.S. 47 (2006) ................................................................... *passim*

*Rust v Sullivan,*
    500 U.S. 173 (1991) .......................................................................... 22

*Saks v. Franklin Covey Co.,*
    316 F.3d 337 (2d Cir. 2003) ............................................................ 46

*Salman v. United States,*
    137 S. Ct. 420 (2016) .................................................................. 61-62

*Sczepanski v. Saul,*
 946 F.3d 152 (2d Cir. 2020) ............................................................... 52

*Stringer v. Musacchia,*
 11 N.Y.3d 212 (2008) ........................................................................ 59

*Tabbaa v. Chertoff,*
 509 F.3d 89 (2d Cir. 2007) ............................................................... 17

*Tandon v. Newsom,*
 141 S. Ct. 1294 (2021) ....................................................................... 53

*Thibodeau v. Portuondo,*
 486 F.3d 61 (2d Cir. 2007) ............................................................... 57

*United States v. Davis,*
 139 S. Ct. 2319 (2019) ....................................................................... 57

*United States v. Dawkins,*
 999 F.3d 767 (2d Cir. 2021) ............................................................. 57

*United States v. Durham,*
 902 F.3d 1180 (10th Cir. 2018) ........................................................ 34

*United States v. Farhane,*
 634 F.3d 127 (2d Cir. 2011) ............................................................. 18

*United States v. O'Brien,*
 391 U.S. 367 (1968) ........................................................................... 49

*United States v. Stevens,*
 559 U.S. 460 (2010) ........................................................................... 31

*United States v. Thompson,*
 896 F.3d 155 (2d Cir. 2018) ........................................................ 31, 33

*United States v. Williams,*
 553 U.S. 285 (2008) ....................................................................... 18-19

*Velazquez v. Legal Servs. Corp.,*
 164 F.3d 757 (2d Cir. 1999) ............................................................. 22

*Virginia v. Hicks,*
 539 U.S. 113 (2003) ..................................................................... 18, 30

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) .................................................................... 47, 57

*Whalen v. Roe*,
  429 U.S. 589 (1977) ........................................................................ 36

**U.S. CONSTITUTION**

First Amendment ............................................................. *passim*

Fourteenth Amendment ...................................... 9, 41, 50, 57

**FEDERAL STATUTES**

Affordable Care Act .......................................................... 6, 47

18 U.S.C.
  § 248(e)(5) ............................................................................. 46, 60

42 U.S.C.
  § 2000e(b) .................................................................................. 46
  § 2000e *et seq.* ........................................................................ 51
  § 12101 *et seq.* ....................................................................... 51

**STATE STATUTES**

D.C. Code
  § 2-1401.05(a) ............................................................................. 8

Del. Code tit. 19
  § 711(j) ................................................................................ 8, 22n

Haw. Rev. Stat.
  § 378-2(a)(1) ............................................................................... 8
  § 378-2(a)(1)(A) ....................................................................... 22n

N.Y. Executive Law
  § 290 *et seq.* ............................................................................ 51
  § 292(21-e) ................................................................................. 47
  § 292(21-f) ................................................................................. 47
  § 296(1)(a) .......................................................................... 21n, 36

New York Labor Law

§ 2(5) ........................................................................... 59
§ 2(6) ........................................................................... 59
§ 21(1) ......................................................................... 63
§ 201-g ......................................................................... 51
§ 203-e ................................................................... *passim*
§ 203-e(1) ............................................. 4, 37, 58, 61
§ 203-e(2) ................................................................... 52
§ 203-e(2)(a) ...................................................... *passim*
§ 203-e(2)(b) ...................................................... *passim*
§ 203-e(3) ............................................. 4, 37, 58, 63
§ 203-e(3)(b) ............................................................. 62
§ 203-e(5) ................................................... 4, 37, 58
§ 203-e(6) ................................................................... 4n
§ 203-e(7) ........................................................... 5, 38

FEDERAL RULES AND REGULATIONS

45 C.F.R
§ 160.103 ..................................................................... 25
§ 164.502(a) ................................................................ 25

Fed. R. Civ. P.
§ 12(b)(6) ............................................... 10, 15, 38, 40

MISCELLANEOUS AUTHORITIES

Assembly Bill No. 566-A ........................................... 38

Assembly Bill No. 1142-A .............................. 7, 38, 46

Assembly Bill No. 8769-A .............................. 6, 35, 38

Assembly Bill No. A00566-A ................................... 38

Assembly Bill No. A00584 .................................. *passim*

Decision-Making, Black's Law Dictionary (11th ed. 2019) .................... 60

Illinois HB3834 (introduced Feb. 19, 2021) ........................... 8n

Iowa House File 41 (introduced Jan. 12, 2021) ..................... 8n

National Institute of Environmental Health Sciences,
   "Reproductive Health," *available at*
   https://www.niehs.nih.gov/health/topics/conditions/repro-
   health/index.cfm ..................................................................60n

N.Y.C. Admin. Code
   § 8-107(1) ...............................................................................8
   § 8-107(1)(a)(2) ...................................................................22n

N.Y.C. Local Law No. 20 (passed Dec. 20, 2018) ......................8

N.Y. Statutes (McKinney 1971) ...............................................61

"Propose," available at
   https://www.dictionary.com/browse/propose ...................62n

Senate Bill 660 ..........................................................6, 48, 49

St. Louis, Mo. Code of Ordinances
   § 15.175.020(B)(1) .................................................................8

Wikipedia, "Reproductive Health," *available at*
   https://en.wikipedia.org/wiki/Reproductive_health ...........60

# PRELIMINARY STATEMENT

In 2019, the State of New York enacted Labor Law § 203-e to prohibit employers from discriminating against employees for exercising their right to privacy in their personal reproductive health decisions.

Plaintiffs-appellants The Evergreen Association, Inc. (Evergreen) and its founder and president Christopher T. Slattery challenged this statute, claiming they had the right to discriminate and retaliate against their employees based on the employees' reproductive health decisions. Although the law sought to advance fundamental interests in protecting privacy and combating discrimination, plaintiffs claimed that § 203-e violated their constitutional rights to (1) expressive association, (2) free speech, (3) free exercise of religion, and (4) due process (because it was allegedly vague).

The named defendants—Governor Andrew Cuomo, Attorney General Letitia James, and New York State Department of Labor Commissioner Roberta Reardon—moved to dismiss the complaint for failure to state a claim. The United States District Court for the Northern District of New York (McAvoy, D.J.) granted the motion.

The district court's judgment should be affirmed. Plaintiffs' central claim is that requiring them to retain employees who make private

reproductive health decisions with which plaintiffs disagree undermines their expressive-association, speech, and religious rights. But § 203-e does not affect plaintiffs' ability to make employment decisions based on their employees' advocacy or commitment to plaintiffs' cause. And plaintiffs' position that an employee's private health care decision could undermine the employee's ability to advocate in a manner consistent with plaintiffs' intended message is speculative.

At the same time, § 203-e furthers New York's compelling interest in protecting its residents' right to privacy in their reproductive health decisions by narrowly proscribing discrimination and retaliation against employees based on their personal reproductive health decisions or those of their dependents. The statute is also even-handed: decisions to conceive a child are protected to the same extent as decisions to prevent or terminate pregnancy. New York's legislation therefore satisfies not only rational basis, but also heightened and strict scrutiny. As one of the bill's sponsors explained, "New York has a long history of protecting individuals from discrimination in the workplace. Decisions about pregnancy, using contraception and other personal health matters should also be protected under the law." N.Y. Assembly Debate on Assembly Bill No. A00584, January 22, 2019 at 122.

# QUESTIONS PRESENTED

1.      Whether plaintiffs' expressive-association claim fails because any burden on the right to expressive association imposed by Labor Law § 203-e is incidental and the statute is not overbroad relative to its plainly legitimate sweep.

2.      Whether plaintiffs' free-speech claim fails because Labor Law § 203-e regulates conduct, not speech, and any effect on plaintiffs' speech is in any event incidental and justified.

3.      Whether plaintiffs' free-exercise claim fails because Labor Law § 203-e is a valid and neutral law of general application.

4.      Whether plaintiffs' due-process claim based on vagueness fails because the terms of Labor Law § 203-e provide sufficient notice of the discriminatory conduct prohibited.

# STATEMENT OF THE CASE

## A.      New York Labor Law § 203-e

New York protects employees by barring employers from interfering in certain private medical decisions. Under Labor Law § 203-e, which became effective November 1, 2019, employers cannot discriminate or retaliate against an employee based on "the employee's or [a] dependent's reproductive health decision making, including, but

3

not limited to, a decision to use or access a particular drug, device, or medical service." N.Y. Labor Law § 203-e(2)(a).

The statute reinforces that antidiscrimination rule in four ways. First, it bars employers from accessing "personal information regarding [an] employee's or the employee's dependent's reproductive health decision making." *Id.* § 203-e(1). Second, it bars employers from circumventing the statute by requiring employees "to sign a waiver or other document which purports to deny an employee the right to make their own reproductive health care decisions." *Id.* § 203-e(2)(b). Third, § 203-e provides employees with a private right of action to sue for injunctive relief, reinstatement, and damages, with liquidated damages available under certain circumstances. *Id.* § 203-e(3). Fourth, employers may not retaliate against employees who exercise their rights under the statute. *Id.* § 203-e(5). Such retaliation may subject employers to civil penalties. *Id.*[1]

---

[1] Additionally, if an employer provides an employee handbook to its employees, the handbook must include notice of employees' rights and remedies under § 203-e. N.Y. Labor Law §203-e(6). That requirement is not further addressed here, because plaintiffs do not challenge the handbook notice requirement. (*See* Joint Appendix [JA] 109 n.1.) *Cf. CompassCare v. Cuomo,* 465 F. Supp. 3d 122, 156-59, 168 (N.D.N.Y. 2020) (enjoining enforcement of § 203-e's requirement of notice in employee handbook because plaintiffs established a likelihood of success

4

Section 203-e contains a severability clause, providing that if any part of the law is held to be invalid, that judgment "shall not affect, impair, or invalidate the remainder thereof," but instead should be confined to the part "directly involved in the controversy" and "the person or circumstances involved." *Id.* § 203-e(7).

## B.   Background and Legislative History

Section 203-e was enacted in 2019 to "prohibit employers from discriminating against employees based on the employees' or [their] dependent's reproductive health decisions, and to provide remedies for such violations." (JA98, 101.) The Legislature sought to "ensure that employees' decisions about pregnancy, contraception, and reproductive health" would be "protected under state law." (JA99, 102.)

Section 203-e furthered New York's existing policy of protecting its residents' privacy when they make reproductive health choices. As the bill's Senate sponsor, Senator Jennifer Metzger, explained: "Choosing whether, when and how to have children is a decision for individuals and their families. No one should have fear that they will lose their job or be demoted because of their own private reproductive health decisions."

---

on their claim that the requirement violated plaintiffs' right to free speech).

N.Y. Senate Debate on Senate Bill 660, Jan. 22, 2019 at 434. The bill's Assembly sponsor, Representative Ellen Jaffee, stated that "[n]o employee in the State of New York should ever be discriminated or retaliated against by their employer" for "personal and private decisions regarding their reproductive health." N.Y. Assembly Debate on Assembly Bill No. A00584, Jan. 22, 2019 at 132.

Speaking from the Assembly floor, Representative Jaffee observed that discrimination based on reproductive health decisions "happens quite frequently." N.Y. Assembly Debate on Assembly Bill No. A00584, Jan. 22, 2019 at 132. She referred to "a number of incidents where the employers have found information about personal … decisions, about contraception or certain reproductive health care and then they attack and they file or they punish their workers, and it happens in a variety of places." *Id.* at 123. Constituents had reached out to Representative Jaffe personally with such stories. *See* N.Y. Assembly Debate on Assembly Bill No. 8769-A (a predecessor to the bill that became § 203-e), June 18, 2014 at 106-07.

After the federal Affordable Care Act became law in 2010, some employers sought to prevent employees from exercising their right to insurance coverage for FDA-approved birth-control methods. (JA99, 102.)

6

Employers—including some operating in New York State—filed more than 100 federal lawsuits to deny employees that benefit. (JA99, 102.) New York legislators expressed concern that employers had the means to discover and discriminate against employees who use the contraceptive-coverage benefit. (JA99, 102.)

As reflected in the sponsors' memoranda, legislators believed that employees were "vulnerable to discrimination based on their reproductive health decisions." (JA99, 102.) The measure's sponsors attributed that vulnerability to "loopholes" in existing antidiscrimination statutes. (JA99, 102.) These loopholes included, for example, the facts that the federal pregnancy-discrimination law applies only to employers with 15 or more employees, *see* N.Y. Assembly Debate on Assembly Bill No. 1142-A (another predecessor to the bill that became § 203-e), June 7, 2016 at 58, and that pregnancy-discrimination laws do not protect an employee's choice to undergo medical fertility treatments such as in vitro fertilization, *see* N.Y. Assembly Debate on Assembly Bill No. A00584, Jan. 22, 2019 at 134.

New York is one of several jurisdictions that have enacted similar antidiscrimination rules. In 2018, the City of New York added "sexual and reproductive health decisions" to the list of prohibited bases for

employment discrimination. *See* N.Y.C. Local Law No. 20 (passed Dec. 20, 2018), *amending* N.Y.C. Admin. Code § 8-107(1) and related provisions. Other jurisdictions that ban discrimination based on reproductive health decisions include the District of Columbia, *see* D.C. Code § 2-1401.05(a); Delaware, *see* Del. Code tit. 19, § 711(j); Hawaii, *see* Haw. Rev. Stat. § 378-2(a)(1); and the City of St. Louis, Missouri, *see* St. Louis, Mo. Code of Ordinances § 15.175.020(B)(1). Similar bills have been introduced in other states.[2]

## C.    Proceedings Below

Plaintiff Christopher Slattery is Evergreen's president and founder. (JA44.) Evergreen operates "crisis pregnancy centers" in New York City with "the morally and religiously motivated mission of saving children from abortion." (JA44.) The pregnancy centers "serve primarily poor, low-income and working pregnant women in distressed conditions" and "provide[] counseling, education, ultrasounds and information to these women during their decision-making processes in an untimely pregnancy." (JA49-50.) Slattery practices the Catholic religion, which forbids "performing, aiding, assisting or condoning" abortion. (JA45.)

---

[2] *See, e.g.,* Illinois HB3834 (introduced Feb. 19, 2021); Iowa House File 41 (introduced Jan. 12, 2021).

Slattery has established and enforced as Evergreen's employment policy a requirement that employees "must not obtain, assist in obtaining, or condone abortion, and must not be involved in sexual relationships outside of marriage (such as cohabitation)." (JA45.) Plaintiffs hire only employees who adhere to plaintiffs' "mission and policy of opposition to abortion and sexual relationships outside of marriage." (JA45.) Plaintiffs "expect Evergreen personnel to abide by and agree with their position on abortion and sexual relationships outside of marriage in both their work and private life." (JA50.)

Less than three months after § 203-e became law (*see* JA67), plaintiffs sued New York's Governor, Attorney General, and Labor Commissioner in their official capacities (*see* JA47-48). Plaintiffs sought a declaration that § 203-e was "unconstitutional and void" and an injunction preventing New York from enforcing the statute against them. (JA46, 47, 66.) Plaintiffs alleged that the statute violated their rights under the First Amendment to expressive association (Count I, JA57-59); freedom of speech (Count II, JA59-60); and free exercise of religion (Count III, JA61-64). They also contended that the statute violated their due process rights under the Fourteenth Amendment because the terms

"employee," "employer," and "reproductive health decision making" were unconstitutionally vague (Count IV, JA64-66).

Defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim (JA68-69), and the district court granted the motion (JA9-41).

As to plaintiffs' expressive-association claim, the district court agreed that plaintiffs engage in expressive association by sharing with pregnant women their message concerning abortion, sex outside of marriage, and contraception. (JA30.) Yet plaintiffs still failed to state a claim upon which relief could be granted. "[N]othing in the statute requires Plaintiffs to permit their employees to advocate positions" contrary to Evergreen's mission; rather, plaintiffs were barred from discriminating against employees for particular private health care decisions. (JA32-33.) Plaintiffs remained free to terminate any employee who advised clients in a way that conflicted with plaintiffs' beliefs about abortion, contraception, or other subjects of plaintiffs' expressive message. (JA32.) And § 203-e did not regulate plaintiffs' relationships with volunteers or ministers. (JA31-32.)

While § 203-e did affect plaintiffs' associational rights by preventing them from firing people who have made personal choices of

10

which plaintiffs disapprove, those limitations were incidental. (JA32-33.) They did not "place a restriction on [plaintiffs'] ability to advocate against abortion or contraception, much less a severe one." (JA33.) Plaintiffs' compliance with § 203-e would not reasonably enable others to call plaintiffs hypocritical. (JA34.) "Plaintiffs can certainly draw a distinction for the public between what they believe and what the State requires." (JA34.)

With respect to plaintiffs' free-speech claim, the court observed that § 203-e did not "limit any of Plaintiffs' advocacy." (JA24.) It did not affect the message that plaintiffs communicated to pregnant women. (JA24.) It "simply prohibit[ed] employers from taking employment action based on the reproductive health decisions of an employee or potential employee," which is "conduct, not speech." (JA24.) Plaintiffs could "still refuse to hire or terminate an employee whose speech advocates for positions they disfavor." (JA25.)

The statute's no-waiver provision did not violate plaintiffs' rights because it was content-neutral. (JA26.) The provision did not stop plaintiffs from continuing to speak against abortion, birth control, or contraception. (JA26-27, 28.) Instead, it "simply prevent[ed] employers from requiring employees to sign a waiver of the rights Section 203-e

protects" as a condition of employment. (JA27.) Without the no-waiver provision, "an employer could use a waiver to regulate the very acts the government seeks to protect." (JA27.) The no-waiver provision thus "promote[d] a substantial government interest that would be achieved less effectively absent the regulation." (JA27 [internal quotation marks, emphasis, and citation omitted].)

On plaintiffs' claim that § 203-e infringed on their free-exercise rights, the court concluded that the statute was a neutral law of general applicability. (JA16-20.) It applied to all employers, regardless of type of business. (JA19.) And it prevented employees from being fired because they *refused* to use contraception or have an abortion, just as clearly as it prevented employees from being fired for using contraception or having an abortion. (JA19.) The statute also did not target religion in an impermissible way. Plaintiffs' allegations of targeting were conclusory and merely recited the applicable legal analysis. (JA19.) Plaintiffs did not "offer facts which make plausible that such targeting actually occurred." (JA19-20.)

Because § 203-e was neutral and of general applicability, defendants needed only to demonstrate that the law was rationally related to a legitimate state interest. (JA21.) The district court held that

12

the statute bore a rational relationship to New York's interests in protecting "individuals' right to privacy and personal autonomy as it relates to health-care decisions surrounding reproduction" as well as "protecting against workplace discrimination." (JA21.)

Finally, the court rejected plaintiffs' claim that § 203-e was unconstitutionally vague. (JA34-40.) The terms "employee" and "employer" were defined in the Labor Law itself. (JA39.) And the statute clarified the phrase "reproductive health decision making" by adding the qualification "including, but not limited to, a decision to use or access a particular drug, device or medical service," so that a person of ordinary intelligence would understand it to include "products related to reproduction" such as contraceptives, as well as decisions to continue or end a pregnancy. (JA37-38.) A list of specific drugs and procedures was not required. (JA38.)

The district court entered judgment on March 31, 2021. (JA42.) Plaintiffs appealed. (JA7.)

## SUMMARY OF ARGUMENT

Section 203-e has, at most, an incidental impact on plaintiffs' First Amendment right to engage in expressive association. It does not regulate plaintiffs' expression at all. It does not force plaintiffs to hire or

retain personnel who disagree with the counseling, education and information that plaintiffs provide at their pregnancy crisis centers. Section 203-e serves compelling state interests in protecting residents' right to privacy and protecting employees from discrimination based on their reproductive-health decisions. And because § 203-e governs the conduct of all employers, including New York's vast body of non-religious employers, the statute is not overbroad relative to its plainly legitimate sweep. Plaintiffs therefore fail to state a claim based on a violation of their right to engage in expressive association.

Plaintiffs also fail to state a claim based on a violation of their right to free speech. Section 203-e does not regulate plaintiffs' speech at all; it regulates conduct by prohibiting discrimination and retaliation and, again, at most has an incidental effect on plaintiffs' message. Even if the statute were evaluated as a restriction on speech, plaintiffs' challenge would fail. Any restriction the statute imposes is both content-neutral and viewpoint-neutral because it evenhandedly protects both employees who attempt to become pregnant and employees who seek to prevent or terminate a pregnancy. And the statute satisfies any level of scrutiny the Court finds appropriate.

Nor does § 203-e violate plaintiffs' right to exercise their religion. The statute is both generally applicable and neutral toward religion. The Legislature's enactment did not target religion; the statute covers all employers regardless of religious affiliation, but necessarily incorporates the ministerial exception established by Supreme Court precedent.

Finally, none of the terms on which plaintiffs base their due process challenge is unconstitutionally vague. The terms "employer" and "employee" are defined in the Labor Law itself. And the terms "reproductive health decision making" and "proposes to commit a violation"—the latter of which plaintiffs challenge for the first time on appeal—are phrases with commonly understood meanings.

## STANDARD OF REVIEW

This Court reviews de novo a district court's grant of a motion to dismiss under Rule 12(b)(6). *Operating Loc. 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir. 2010). It "accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Id.*

However, the Court need not credit "naked assertions," "mere conclusory statements," or "legal conclusion[s] couched as … factual allegation[s]." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal

quotation marks and citations omitted). Once the bare assertions and conclusions are stripped away, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and citation omitted).

## ARGUMENT

## POINT I

### PLAINTIFFS FAILED TO STATE A CLAIM THAT § 203-e VIOLATES THEIR RIGHT TO ENGAGE IN EXPRESSIVE ASSOCIATION

The First Amendment has been held to protect "expressive association," namely, "associat[ion] for the purpose of engaging in those activities protected by the First Amendment." *Roberts v. U.S. Jaycees,* 468 U.S. 609, 618 (1984); *accord Boy Scouts of Am. v. Dale,* 530 U.S. 640, 647-48 (2000). To state a violation of that right, plaintiffs must allege not only that they associate to engage in expressive activity but also that section 203-e substantially impairs their ability to advocate. Even assuming, as the district court found (JA30), that plaintiffs associate to engage in expressive activity, plaintiffs still failed to state a viable claim that § 203-e violates their expressive-association right. The statute does not affect plaintiffs' ability to make employment decisions based on their

16

employees' beliefs or advocacy. Any burden that § 203-e imposes on Evergreen's operation is at most incidental. The statute is therefore evaluated under rational-basis review, which it readily satisfies. Indeed, plaintiffs' claim would fail even if subjected to heightened scrutiny.

## A.    Any Burden that § 203-e Imposes on Plaintiffs' Expressive-Association Right Is at Most Incidental.

"The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects *in a significant way* the group's ability to advocate public or private viewpoints." *Dale,* 530 U.S. at 648 (emphasis added).

Plaintiffs failed to allege significant interference with their right of expressive association. Section 203-e does not purport to govern the content of the expression that plaintiffs undertake. Plaintiffs remain "free to associate to voice their disapproval" of abortion and contraception without violating § 203-e. *See Rumsfeld v. Forum for Academic and Institutional Rights*, *Inc.,* 547 U.S. 47, 69-70 (2006) (measure that required law schools to allow military recruiters on campus did not violate law schools' right to expressive association). At most, they identified "[m]ere incidental burdens on the right to associate," which do not violate the First Amendment. *Tabbaa v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007) (internal quotation and alteration from original omitted).

17

### 1. Section 203-e Does Not Force Plaintiffs to Employ Personnel Who Do Not Share Their Beliefs.

Plaintiffs have brought what is in effect a pre-enforcement facial challenge to § 203-e. *See Jacoby & Meyers, LLP v. Presiding Justices*, 852 F.3d 178, 184 (2d Cir. 2017) (where plaintiffs had not been charged with violating any law, their challenge to statute's constitutionality was facial rather than as-applied). Yet they do not suggest that there is no set of circumstances in which the statute can validly be enforced, as is usually required to sustain a facial challenge. *See Americans for Prosperity Foundation v. Bonta,* 141 S. Ct. 2373, 2387 (2021). Therefore, they can prevail only by showing that the statute is overbroad under the First Amendment; that is, that the statute "punishes a substantial amount" of protected expression, "judged in relation to the statute's plainly legitimate sweep." *Virginia v. Hicks,* 539 U.S. 113, 118-19 (2003) (internal quotation marks and citation omitted); *see also United States v. Farhane,* 634 F.3d 127, 136 (2d Cir. 2011).

Plaintiffs' expressive-association claim is analyzed under the overbreadth standard in Point I(B), *infra* at 30-33. As a "first step in overbreadth analysis," however, the Court must "construe the challenged statute," because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v.*

*Williams,* 553 U.S. 285, 293 (2008). Here, plaintiffs contend that § 203-e would "force[] Evergreen to associate with and employ those who oppose [its] pro-life beliefs and mission," *i.e.*, the very message they seek to convey at their pregnancy crisis centers (Br. at 25). Plaintiffs' contention is not plausible.

Section 203-e's mandate is limited: it prohibits discrimination or retaliation based on an employee's or dependent's "reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device or medical service." N.Y. Labor Law § 203-e(2)(a). Section 203-e thus does not affect plaintiffs' ability to associate with and employ only those who support their mission. (*See* JA32.)

Plaintiffs nonetheless urge that § 203-e protects employees who advocate for abortion rights because "[i]t is clearly a 'decision' about 'reproductive health' to support or oppose abortion" (Br. at 53). But there is no reason to think that the statute addresses discrimination based on an employee's opinion or advocacy about abortion, as opposed to an employee's decision to use or access reproductive health care.

More particularly, § 203-e does not prohibit plaintiffs from firing an employee who communicates the wrong message or advice to clients, who publicly advocates in a manner contrary to plaintiffs' mission, or who

19

disagrees with plaintiffs on a point of ideology or social policy. To the contrary, the guidance provided by the text of § 203-e itself makes clear that the phrase "reproductive health decision making" does not include holding or advocating political or social opinions.

In the statute, the phrase "reproductive health decision making" is followed immediately by the qualifier "including, but not limited to a decision to use or access a particular drug, device or medical service." N.Y. Labor Law § 203-e(2)(a). Under the canon of *ejusdem generis*, "where general words are accompanied by a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 401 (2d Cir. 2008) (internal quotation marks and citation omitted). Thus, "[catchall] clauses are to be read as bringing within a statute categories similar in type to those specifically enumerated." *Paroline v. United States,* 572 U.S. 434, 447 (2014) (brackets in original; internal quotation marks and citation omitted). Because holding and advocating opinions on political and social issues are not similar in type to decisions to use or access drugs, devices, or medical services, § 203-e cannot fairly be construed to cover the formation or advocacy of opinions for or against abortion.

20

Consistent with this understanding, defendants have stated that they do not interpret § 203-e in the manner plaintiffs suggest, and thus would not enforce the statute against employers who discriminate based on an employee's speech. Defendants represented to the district court that "the employee conduct protected by the statute is an employee's personal health care decisions; not one's political beliefs about health care decisions." (JA96.) For example, defendants explained, "[n]othing in the statute requires the plaintiffs to continue to employ someone who 'recommends or suggests an abortion'" to an Evergreen client. (JA144.) Instead, the statute "merely prohibits plaintiffs from terminating an employee for a private medical decision." (JA144.) And the district court concurred in defendants' reading of the statute. (JA32.) *See also CompassCare*, 465 F. Supp. 3d at 148 (recognizing that "nothing in [§ 203-e] requires Plaintiffs to permit their employees to advocate positions contrary to their anti-abortion, pro-marriage, religious agenda").[3]

Further, embracing plaintiffs' reading of § 203-e as requiring Evergreen to retain employees who disagree with plaintiffs' ideology

---

[3] While plaintiffs also state that they oppose "sexual relationships outside of marriage" (Br. at 7, 22, 41), employment discrimination based on marital or familial status is separately prohibited by the New York Human Rights Law, N.Y. Executive Law § 296(1)(a), which is not challenged here.

would unnecessarily create constitutional issues. "[A]s between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid," the Court's "plain duty is to adopt that [interpretation] which will save the Act." *Rust v Sullivan,* 500 U.S. 173, 190 (1991) (internal quotation marks and citation omitted); *accord Edmond v. United States,* 520 U.S. 651, 658 (1997); *Velazquez v. Legal Servs. Corp.*, 164 F.3d 757, 764, 769 (2d Cir. 1999).[4]

And for the same reasons that § 203-e does not require plaintiffs to retain employees who advocate in a manner contrary to plaintiffs' mission, the statute does not, contrary to plaintiffs' assumption (*e.g.* Br. at 5, 20, 27-29, 43) require plaintiffs to hire such dissenting employees in the first place.[5]

---

[4] If the Court (a) concludes that the case turns on the proper construction of the statute, and (b) has doubts about whether defendants' construction is correct, the Court should certify such questions to the New York Court of Appeals.

[5] It is unclear whether the statute covers hiring at all. Unlike employment discrimination statutes addressing similar subject matter adopted in New York City and elsewhere, *see, e.g.,* N.Y.C. Admin. Code § 8-107(1)(a)(2) (making it illegal "to refuse to hire" any "person" based on sexual and reproductive health decisions); Del. Code tit. 19, § 711(j) (similar); Haw. Rev. Stat. § 378-2(a)(1)(A) (similar), section 203-e makes no express reference to hiring. The Court need not resolve that issue here, however, because, regardless of the adverse action at issue, the statute protects only employees' private reproductive-health decision making,

## 2. Section 203-e's Prohibitions Do Not Significantly Affect Plaintiffs' Expressive Association.

Plaintiffs contend that an employee who has had an abortion or used certain contraceptives "cannot be a truthful and sincere representative of Evergreen's pro-life mission" (Br. at 26). Their argument is speculative and confuses the private act of obtaining medical services with the public act of advocating that others seek such services.

Section 203-e comes into play if plaintiffs discriminate or retaliate against an employee because the employee "use[d] or access[ed] a particular drug, device or medical service" or made some other personal reproductive-health decision. *See* N.Y. Labor Law § 203-e(2)(a). Plaintiffs ordinarily would not even be aware that an employee made such a decision. Plaintiffs might learn of an employee's private decision if the employee disclosed it publicly—for instance, by writing an op-ed piece titled "I Had an Abortion and I'm Glad I Did." But writing that sort of article would be speech, which § 203-e does not protect. If an employee speaks publicly in a way that undermines plaintiffs' message, plaintiffs could fire the employee for that reason without violating § 203-e. *See* Point I(A)(1), *supra* at 19-22.

---

not their public advocacy or their inability to communicate plaintiffs' message.

Plaintiffs could also learn about the employee's decision through an inadvertent disclosure—for example, if the employee accidentally leaves medical records in the office or if someone with knowledge informs management of the decision. In those circumstances, § 203-e would forbid plaintiffs from firing the employee based on the reproductive health decision inadvertently communicated. But plaintiffs point to no support for their speculation that retaining such an employee would undermine their message. Indeed, an individual who had an abortion and later regretted the action could prove to be an especially ardent proponent of plaintiffs' message. New York's statute cannot be struck down based on the unsupported speculation that one result rather than the other might occur. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (complaint's factual allegations must "raise a right to relief above the speculative level"); *see also Buckley v. Valeo,* 424 U.S. 1, 69-70 (1976) (finding statute's alleged infringement on First Amendment right to associational privacy "highly speculative").

Similarly speculative is the suggestion that retaining an employee who inadvertently discloses reproductive health information would adversely affect public perception of plaintiffs' commitment to their mission (*see* Br. at 5, 26, 29). Unlike the "organized marchers" in *Hurley*

24

*v. Irish-Am. Gay, Lesbian and Bisexual Group,* 515 U.S. 557, 574-75 (1995) (*see* Br. at 30), an employee who inadvertently discloses medical information is not communicating reproductive health decisions to clients or the public. And firing the employee under those circumstances would not constitute expressive conduct protected by the First Amendment; it would not "convey a particularized message" that was likely to "be understood by those who viewed it," *Church of Am. Knights of the Ku Klux Klan v. Kerik,* 356 F.3d 197, 205 (2d Cir. 2004) (internal quotation marks and citation omitted), because the public would not know the employee's medical status or why the employee was fired. Indeed, federal law would likely prohibit Evergreen from publicizing that information. *See* 45 C.F.R § 164.502(a); *see also id.* § 160.103 (defining "business associate").

Further, an employee who inadvertently disclosed health information to plaintiffs would not necessarily be unable to communicate plaintiffs' message to clients as required. If, however, the employee's personal experience prevented the employee from conveying plaintiffs' message fully and accurately—for instance, if the employee were to decide, based on personal experience, that portions of plaintiffs' message

25

were wrong and should be suppressed—then plaintiffs could terminate the employee for that independent reason, without violating § 203-e.

Even if, despite the employee's best efforts to maintain privacy, the public somehow learned that an Evergreen employee or dependent had made a personal decision to use a reproductive drug, device, or service, that personal health decision could not plausibly be regarded as Evergreen's speech. As the district court recognized (JA34), by retaining the employee, Evergreen would be doing no more than required by New York's generally applicable antidiscrimination law. *See Rumsfeld,* 547 U.S. at 65 (distinguishing between "speech a school sponsors and speech the school permits because legally required to do so"). By complying with § 203-e under those circumstances, plaintiffs would not be "compelled to affirm their belief in any governmentally prescribed position or view"; rather, they would remain "free to publicly dissociate themselves" from views they find objectionable. *PruneYard Shopping Ctr. v. Robins,* 447 U.S. 74, 88 (1980); *accord Rumsfeld,* 547 U.S. at 65.

### 3. The Precedents on which Plaintiffs Rely Differ Materially from this Case.

The judicial decisions on which plaintiffs base their expressive-association claim do not support plaintiffs' argument that § 203-e infringes on their associational rights.

Initially, plaintiffs receive no assistance from *Boy Scouts of Am. v. Dale,* which presented a very different expressive-association claim. The plaintiff in *Dale* was at the same time an assistant scoutmaster for the Boy Scouts of America and a public activist for gay rights. 530 U.S. at 644-45, 653. The Boy Scouts, a group that opposed homosexual conduct, revoked his membership and his eligibility to serve as an assistant scoutmaster after a newspaper published an interview with him "about his advocacy of homosexual teenagers' need for gay role models." *Id.* at 645. The Supreme Court held that, by requiring the Boy Scouts to reinstate Dale as an assistant scoutmaster, New Jersey's public accommodations statute violated the Boy Scouts' First Amendment right to expressive association. *Id.* at 650, 653, 656.

The Supreme Court held that Dale's "presence in the Boy Scouts would, at the very least, force the organization to send a message, both to the youth members and the world, that the Boy Scouts accepts homosexual conduct as a legitimate form of behavior." *Id.* at 653. Thus, the Boy Scouts' expressive-association claim rested on Dale's public stance as "an avowed homosexual and gay rights activist in an assistant scoutmaster's uniform," which would have undermined the group's "official position" on homosexual conduct. *Id.* at 655-56.

27

Section 203-e does not run afoul of *Dale*. Nothing in the statute prevents plaintiffs from dismissing an employee for publicly advocating abortion or contraception. All § 203-e protects is an employee's or dependent's personal "reproductive health decision making." It does not shield speech or advocacy, and "imposes no restrictions on [plaintiffs'] ability to exclude individuals with ideologies or philosophies different from" theirs. *Roberts,* 468 U.S. at 627.

The expressive-association analysis in this case differs from that in *Our Lady's Inn v. City of St. Louis*, 349 F. Supp.3d 805 (E.D. Mo. 2018), for a similar reason. In *Our Lady's Inn*, the court held that the St. Louis ordinance violated the plaintiffs' right to expressive association by "requir[ing]" and "forc[ing]" the plaintiffs "to employ dissenters from their pro-life message." *Id.* at 821. Section 203-e's reach is more limited. As discussed above, § 203-e does not prevent plaintiffs from firing workers for expressing support for reproductive rights.

Plaintiffs' reliance on *New Hope Family Servs., Inc. v. Poole,* 966 F.3d 145 (2020), is unavailing as well. In *New Hope,* the New York State Office of Children and Family Services (OCFS) threatened to close a religiously-based adoption agency (New Hope) unless New Hope served unmarried and same-sex couples. Consistent with its religious ministry,

New Hope could not recommend adoption by unmarried or same-sex couples because it did not think such placements would be in a child's best interest. *Id.* at 148-49, 157.

Accepting the complaint's allegations as true and viewing them in the light most favorable to New Hope, this Court observed that New Hope had alleged OCFS could require it to "correct[] or disciplin[e]" employees who, "sharing New Hope's religious beliefs, act on, or even express, those beliefs in interacting with birthparents or prospective adoptive parents." *Id.* at 179 (brackets in original; internal quotation marks and citation omitted). Thus, New Hope complained that OCFS was "not only directly limiting [New Hope's] own ability to promote its beliefs and values through its adoption services," but was also "requiring New Hope to use discipline to enforce those same expressive limitations as to its employees." *Id.*

This case presents no such situation. Section 203-e does not affect plaintiffs' "free[dom] to voice their religious beliefs" through their work. *New Hope,* 966 F.3d at 179. The statute does not authorize New York to alter the message that plaintiffs convey to their clients. It does not bar plaintiffs from firing workers who disagree with their message. And it does not affect the way plaintiffs perform their mission.

29

Finally, this case differs materially from *Hurley,* where the organizers of a parade were permitted to exclude a gay-pride group. The parade was itself a form of protected expression. 515 U.S. at 568-69. Requiring the parade sponsors to include a group spreading a message to which the sponsors objected would have infringed on the sponsors' First Amendment rights. *Id.* at 572-73. Here, § 203-e does not reach plaintiffs' expressive conduct and employees' personal reproductive health decisions are not a form of expression.

## B. Section 203-e is Not Overbroad Relative to Its Plainly Legitimate Sweep.

"[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 800 (1984). On a facial challenge under the First Amendment, a party claiming that a statute is unconstitutionally overbroad "bears the burden of demonstrating, from the text of [the law] and from actual fact, that substantial overbreadth exists." *Hicks,* 539 U.S. at 122 (internal quotation marks and citation omitted; brackets in original).

For a statute to be stricken as facially unconstitutional based on such a challenge, the challenging party must establish that the statute is

"overbroad not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *United States v. Thompson,* 896 F.3d 155, 163 (2d Cir. 2018) (internal quotation marks and citation omitted). A "substantial number of its applications" must be shown to be unconstitutional, "judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotation marks and citation omitted); *Adams v. Zelotes,* 606 F.3d 34, 38 (2d Cir. 2010). A statute's "plainly legitimate sweep" encompasses conduct that is "within [the State's] power to proscribe." *Broadrick v. Oklahoma,* 413 U.S. 601, 615 (1973). *See, e.g., New York v. Ferber,* 458 U.S. 747, 773 (1982) (statute's "legitimate reach" included "the hard core of child pornography").

We have previously demonstrated that plaintiffs' broad interpretation of § 203-e is implausible and thus an insufficient basis to invalidate the statute on its face. *See* Point I(A)(1)-(2), *supra* at 19-22. Even accepting that implausible interpretation, however, the statute has a plainly legitimate sweep that prevents all non-religious employers, as well as many religious employers, from discriminating or retaliating against their employees based on the employees' reproductive health decisions. "A state's passage and enforcement of laws that prohibit

31

discrimination is an exercise of a state's historic police powers." *Figueroa v. Foster,* 864 F.3d 222, 232 (2d Cir. 2017). New York also may legitimately prevent both religious and non-religious employers from accessing an employee's or dependent's personal information regarding reproductive health decision making. *See Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir. 1994) (holding that constitutional right to privacy includes right to avoid disclosure of personal health information).

Compared to the vast number of employers in the State, both secular and religious, there are few organizations like Evergreen "that exist to oppose abortion" (Br. at 62). Plaintiffs' expressive-association claim depends not only on plaintiffs' religious objections to certain reproductive health decisions, but on the fact that its crisis pregnancy centers exist to provide counseling, education and information that plaintiffs argue would be undermined if provided by employees who have made such reproductive health decisions. That concern is not implicated by religious employers who provide different services, or even by those of plaintiffs' employees whose duties do not include the provision of counseling, education and information—administrative assistants, for example, or employees who provide computer support. And as discussed in Point I(A)(2), *supra* at 24-26, there are not likely to be many instances

in which the employee of a religious employer inadvertently discloses private health information that causes the employer to discriminate or retaliate against the employee.

Therefore, like the unsuccessful challengers in *Thompson*, 896 F.3d at 167-68, and *Golb v. Attorney General*, 870 F.3d 89, 101-02 (2d Cir. 2017), plaintiffs have failed to demonstrate that § 203-e is overbroad in an absolute sense, *i.e.,* that a substantial number of instances exist in which § 203-e cannot be applied constitutionally, or that their First Amendment rights would be substantially burdened in relation to § 203-e's plainly legitimate sweep.

## C. Section 203-e's Incidental Burden Is Justified.

### 1. Section 203-e Has a Rational Basis.

Where, as here, a challenged law does not impose "severe burdens" on associational rights, but only incidental ones, rational-basis review applies. *Jacoby & Meyers,* 852 F.3d at 191; *Kraham v. Lippman*, 478 F.3d 502, 506 (2d Cir. 2007). To survive rational-basis review, § 203-e need only be "rationally related to a legitimate government interest." *Jacoby & Meyers,* 852 F.3d at 191.

Section 203-e easily passes rational-basis review. The legislation was enacted to serve a governmental interest that is unquestionably

legitimate: protecting employees from "discrimination based on the reproductive health care decisions they make." (Sponsors' Memoranda in Support of Legislation, JA99, 102.) Plaintiffs do not, and cannot, claim the goal is not a valid one for the Legislature to pursue.

Instead, plaintiffs suggest that there is no evidence that such discrimination is a problem, and that elimination of such discrimination was not the true purpose of the legislation (Br. at 3-4, 12, 40, 48-49, 59-60). But the Legislature was not required to create a documentary record of discrimination in order to invoke such discrimination as its legislative purpose. Legislative findings "are neither necessary nor determinative in a court's rational-basis decision." *United States v. Durham*, 902 F.3d 1180, 1198 (10th Cir. 2018). "[L]egislatures are not required to articulate their reasons for enacting statutes"; a legislative choice "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Progressive Credit Union v. City of New York*, 899 F.3d 40, 49 (2d Cir. 2018) (internal quotation marks and citation omitted). Indeed, for rational-basis review, the Court need not determine the actual legislative purpose. *Id.* at 50; *see also F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S., 307, 315 (1993).

Moreover, the bill's Assembly sponsor, Representative Jaffee, stated that discrimination based on reproductive health decisions occurs "quite frequently," N.Y. Assembly Debate on Assembly Bill No. A00584, Jan. 22, 2019 at 132, including to her own constituents, N.Y. Assembly Debate on Assembly Bill No. 8769-A, June 18, 2014 at 106-07. Representative Jaffee did not identify those constituents by name because they asked her not to disclose their personal information. *Id.*

### 2. Section 203-e Would Satisfy Any Heightened Scrutiny the Court Finds Applicable.

Even if § 203-e were found to impose a burden on plaintiffs' right to expressive association that triggered a heightened level of scrutiny, § 203-e would satisfy such scrutiny. Infringements on the right to associate for expressive purposes "could be overridden by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Dale,* 530 U.S. at 648 (internal quotation marks and citation omitted); *accord Roberts,* 468 U.S. at 623.

New York has a compelling interest in protecting its residents' right to privacy in "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Lawrence v. Texas,* 539 U.S. 558, 573-74 (2003). The constitutionally

35

protected right to privacy encompasses an "individual interest in avoiding disclosure of personal matters," as well as an "interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977). It protects "privacy in one's personal information, including information about one's body," *Hancock v. Cty. of Rensselaer,* 882 F.3d 58, 65 (2d Cir. 2018), and extends to the disclosure of personal medical information, *Doe,* 15 F.3d at 267. As this Court has observed, "there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over." *Id.*

Eradicating discrimination is also "a compelling interest of the highest order." *Figueroa,* 864 F.3d at 232 (internal quotation marks and citation omitted). *See, e.g.,* N.Y. Executive Law § 296(1)(a) (prohibiting discrimination in employment based on listed protected characteristics). Combating discrimination is a goal "unrelated to the suppression of expression." *Roberts,* 468 U.S. at 624. Thus, in *Roberts,* a state's compelling interest in combating discrimination against women justified requiring the United States Jaycees, an all-male organization, to admit women. Here, the Legislature was concerned that employees remained

"vulnerable to discrimination based on their reproductive health decisions." (JA99, 102.)

Section 203-e is narrowly tailored to the goal of advancing New York's interests in protecting privacy and combating discrimination. Section 203-e's provisions do not extend beyond measures that combat such discrimination. Specifically, § 203-e(2)(a) prohibits discrimination; § 203-e(1) bars employers from accessing personal information that would enable them to discriminate; § 203-e(2)(b) prevents employers from circumventing the statute by requiring employees to waive the right to make their own reproductive health decisions; § 203-e(5) prevents employers from retaliating against employees who exercise their rights under the statute; and § 203-e(3) affords employees a private cause of action to enforce the statute's prohibition.

Moreover, § 203-e necessarily accommodates a religious organization's need for autonomy in regulating even the private behavior of employees who act as ministers. Although the statute does not include an express exception for employees performing ministerial functions, the Legislature understood that the statute would be construed to include such an exception based on the Supreme Court's decision in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188-

90 (2012). *See* N.Y. Assembly Debate on Assembly Bill No. A00584, Jan. 22, 2019 at 125, 127; N.Y. Assembly Debate on Assembly Bill No. A00566-A, March 13, 2018 at 100; N.Y. Assembly Debate on Assembly Bill No. 566-A, June 12, 2017 at 24-25, 31-32; N.Y. Assembly Debate on Assembly Bill No. 1142-A, June 7, 2016 at 58; N.Y. Assembly Debate on Assembly Bill No. 8769-A, June 18, 2014 at 97. And the district court in another case has already expressly held that the constitutionally-mandated ministerial exception applies to § 203-e. *CompassCare,* 465 F. Supp. 3d at 164.

In short, § 203-e is narrowly directed toward its object of ending discrimination based on reproductive health decisions. If this Court were to find the statute's effect is too broad in some respect (and it should not), § 203-e's severability clause directs that the statute should be saved in all other respects. *See* N.Y. Labor Law § 203-e(7).

## D. The District Court Did Not Find Facts or Draw Improper Inferences.

The district court did not err in dismissing plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6). Plaintiffs' attacks on the court's analysis of their pleading (Br. at 26-29) do not support reversal.

To begin, the district court did not make an "inappropriate inference" (Br. at 27) when it concluded that § 203-e left intact

Evergreen's ability to fire an employee based on speech that contradicts Evergreen's mission (*see* JA32). The district court based its reasoning on § 203-e's plain language, which has only a limited reach. The interpretation of statutory terms is neither an inference nor a factual finding; instead, it is a question of law for the court. *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 356 (1991); *accord Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (review of district court's interpretation of statute is "a pure question of law").

Nor did the district court improperly find facts when it recognized that any burden on plaintiffs' expressive association would at most be incidental rather than severe. (JA33; *see* Br. at 28.) When the underlying facts are not in dispute, the question whether a statute substantially burdens religious exercise is likewise a conclusion of law. *See Roman Catholic Bishop of Springfield v. City of Springfield,* 724 F.3d 78, 93-94 (1st Cir. 2013); *accord Livingston Christian Schools v. Genoa Charter Twp.,* 858 F.3d 996, 1001 (6th Cir. 2017); *Kaemmerling v. Lappin,* 553 F.3d 669, 679 (D.C. Cir. 2008). And the district court's application of the law was correct for the reasons set forth in Point I(A)(2), *supra* at 23-26.

Plaintiffs' assertion that § 203-e requires them to retain an employee who "helps someone get an abortion" (Br. at 28) lacks a basis

in the statute. Section 203-e's bar against discrimination applies to "the employee's or [a] dependent's reproductive health decision making," *see* N.Y. Labor Law § 203-e(2)(a), which does not encompass reproductive health decisions by anyone other than the employee or dependent. That plain-language understanding is consistent with § 203-e's no-waiver clause, which prevents an employer from requiring an employee to sign a waiver that "purports to deny an employee the right to make *their own* reproductive health care decisions." N.Y. Labor Law § 203-e(2)(b).

Finally, the district court did not exceed the restrictions of Fed. R. Civ. P. 12(b)(6) when it observed that plaintiffs "overstate[d] the interference with their expressive rights imposed" by § 203-e (Br. at 26; *see* JA31). Under Rule 12(b)(6), courts need not credit overstatements in a complaint because such allegations are not "plausible." *See Iqbal,* 556 U.S. at 678; *see, e.g., Rose v. City of Waterbury,* No. 12-cv-291, 2013 WL 3967649, *1 (D. Conn. July 31, 2013) ("hyperbolic generalities" did not meet plausibility standard); *see also Rumsfeld,* 547 U.S. at 70 (observing that plaintiffs had "plainly overstate[d] the expressive nature of their activity and the impact of the [challenged statute] on it, while exaggerating the reach of our First Amendment precedents").

## POINT II

### PLAINTIFFS FAILED TO STATE A CLAIM THAT § 203-e VIOLATES THEIR RIGHT TO FREE SPEECH

The First Amendment, applied to the States by incorporation into the Fourteenth Amendment, bars the government from "abridging the freedom of speech." U.S. Const., amend. I. Section 203-e does not restrict plaintiffs' speech; it regulates conduct by prohibiting employers from discriminating or retaliating against employees for exercising their right to privacy in their personal reproductive health decisions. And even if any incidental burden that the statute imposes on plaintiffs' speech were sufficient to require analyzing the statute as a restriction on speech, the statute would survive applicable scrutiny.

### A.   Section 203-e Regulates Conduct, Not Speech.

Anti-discrimination laws like § 203-e regulate conduct, not speech. Such statutes "affect[] what [employers] must *do*" rather than "what they may or may not *say*." *Rumsfeld*, 547 U.S. at 60. As in *Rumsfeld,* which involved a statute requiring law schools to grant equal access to military recruiters, employers "remain free under the statute to express whatever views they may have." *Id.* To the extent § 203-e affects speech, that effect is incidental to its regulation of conduct and legally inconsequential. As the Supreme Court explained in *Rumsfeld*, Congress "can prohibit

41

employers from discriminating in hiring on the basis of race," and "[t]he fact that this will require an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." *Id.*, 547 U.S. at 62.

The Missouri district court in *Our Lady's Inn* drew that same conclusion. Rejecting a free-speech challenge to a St. Louis ordinance that, among other things, forbade the sort of discrimination § 203-e also prohibits, the court held that the law "restrict[ed] conduct, namely, discrimination in housing and employment on the basis of reproductive health decisions." 349 F. Supp. 3d at 819. To the extent it affected speech, the challenged ordinance "d[id] so only incidentally to regulating conduct and therefore does not implicate the First Amendment." *Id.* at 820.

Plaintiffs can find no support for their position in the cases they cite about newspapers and movie companies (Br. at 34.) Those cases uphold the right of employers to fire employees who seek to alter the employers' message, and Evergreen has that right as well. But the cited cases do not uphold the right of employers to fire employees based on their private health care decisions, and thus provide no support for Evergreen's challenge to § 203-e. The employees in *McDermott v.*

42

*Ampersand Publ'g, LLC,* 593 F.3d 950 (9th Cir. 2010), were reporters who attempted to "seize control over the newspaper's content" and report the news in a way contrary to the publisher's preference. *Id.* at 961-62. In *Claybrooks v. Am. Broad. Cos., Inc.,* 898 F. Supp. 2d 986 (M.D. Tenn. 2012), the district court held that the First Amendment protected the casting decisions of a TV reality show because "casting decisions are part and parcel of the creative process behind a television program." *Id.* at 993. Evergreen cannot plausibly claim reliance on a creative process.

The Court's decision in *New Hope* does not save plaintiffs' free-speech claim either, because plaintiffs' discrimination and retaliation against Evergreen's employees do not constitute speech. New Hope provided adoption services "so that, at their end, New Hope itself can *speak* on the determinative question for any adoption: whether it would be in the best interests of a child to be adopted by particular applicants." *New Hope,* 966 F.3d at 171. The adoption agency asserted that it could "only place a child with an adoptive couple if it approve[d] the placement as in the best interests of the child." *New Hope,* 966 F.3d at 176-77. New Hope thus had "a plausible claim that by compelling it to place children with unmarried and same-sex couples," the State was "necessarily

43

compelling New Hope to engage in the speech required for that conduct—speech with which New Hope does not agree." *Id.* at 177.

Here, in contrast, § 203-e does not purport to govern plaintiffs' expression of their views. Requiring plaintiffs not to discriminate based on employees' private health choices does not affect what plaintiffs say to the public, what Evergreen's employees say to their clients, or what plaintiffs require those employees to say when they perform their jobs. Conversely, as the district court observed, plaintiffs retain the ability terminate an employee who, for example, "advise[s] a patient to have an abortion," "declare[s] that God did not exist," or "advocate[s]" for "abortion rights, same-sex marriage, or access to contraception." (JA32.)

Contrary to plaintiffs' argument (Br. at 37), § 203-e's no-waiver provision does not burden plaintiffs' speech either. Requiring employees to waive their rights is conduct, not speech.[6] To the extent plaintiffs argue that § 203-e burdens their speech by potentially requiring them to deliver their message through less effective speakers, the claim is duplicative of plaintiffs' expressive-association claim and fails for the

---

[6] Section 203-e does not prevent employees from voluntarily agreeing to live in accordance with plaintiffs' religious beliefs. (JA88 n.11.) The law says only that an employer may not "*require* an employee to sign a waiver"; employees may still waive their rights voluntarily. *See* N.Y. Labor Law § 203-e(2)(b).

same reasons that claim fails. Plaintiffs' claim rests on the speculative premise that a person who has made a personal reproductive health decision of which plaintiffs disapprove cannot effectively deliver Evergreen's message. *See* Point I(A)(2), *supra* at 24. Should such an employee prove an ineffective advocate for Evergreen's message, however, § 203-e would not prevent the employee's termination.

In short, the complaint yields no plausible inference that plaintiffs "cannot both comply with" § 203-e "*and* express [their] view" that contraception and abortion are wrong. *New Hope,* 966 F.3d at 176.

## B.    Section 203-e Is Content-Neutral and Viewpoint-Neutral.

The argument that § 203-e regulates conduct rather than speech disposes of plaintiffs' free-speech claim. But even if the Court viewed the statute's potential incidental effect on plaintiffs' message as sufficient to render it a restriction on speech (and it should not), plaintiffs' free-speech claim would fail because the statute would survive applicable scrutiny.

First, the requirements in § 203-e are content- and viewpoint-neutral. On its face, § 203-e protects all "reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device or medical service." N.Y. Labor Law § 203-e(2)(a). That covers abortions and contraception. It also covers decisions to access

45

drugs, devices and medical services that promote pregnancy. *See* 18 U.S.C. § 248(e)(5) (defining "reproductive health services"). The statute thereby protects employees who decide *not* to have an abortion or *not* to use contraception. Plaintiffs are thus wrong to assert that § 203-e "ban[s] … only the pro-life perspective" and "burdens only one side of the political spectrum" (Br. at 38-39).

Plaintiffs argue that pregnancy-discrimination laws already protected "women who choose not to have abortions." (Br. at 39.) As Representative Jaffee observed on the Assembly floor, however, the federal law contained a "loophole[]" that allowed employers with under 15 employees to discriminate based on pregnancy. N.Y. Assembly Debate on Assembly Bill No. 1142-A, June 7, 2016 at 58; *see* 42 U.S.C. § 2000e(b). By applying § 203-e to all employers, the Legislature closed that loophole. *See* Letter from Christopher J. Black to Elizabeth Garvey, Esq. at 1 (Oct. 29, 2019), reprinted in Bill Jacket for S.660/A.584 at 11. Further, discrimination against someone for undergoing medical fertility treatments may not otherwise be actionable under federal law, *see Saks v. Franklin Covey Co.,* 316 F.3d 337, 345-49 (2d Cir. 2003), or New York law, which covers "pregnancy-related conditions" as a disability that

must be accommodated, *see* N.Y. Exec. L. §§ 292(21-e), (21-f). Section 203-e removed any doubt on that issue.

In short, § 203-e even-handedly protects people who use drugs, devices, or medical services to become pregnant, as well as those who to use them to avoid or end pregnancy. A regulation that "serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Christian Legal Soc'y v. Martinez,* 561 U.S. 661, 695 (2010) (internal quotation marks and citation omitted); *accord Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).

Plaintiffs' further assertion that § 203-e was passed "to mute employers who would limit an employee's access to birth control or abortions" (Br. at 38) mischaracterizes the legislative history. Plaintiffs base their argument solely on the following comments by Senator Metzger (*see* Br. at 38; *id.* at 13 nn.3-5), who introduced the bill in the Senate:

> We are on a dangerous, slippery slope in this country when it comes to protecting an individual's right to privacy and autonomy in decision-making about family planning and reproductive health. Since enactment of the Affordable Care Act, over 100 lawsuits have been filed by employers determined to deny workers coverage of reproductive health services and products based on the employer's own personal and political beliefs.

47

> In its 2014 decision in the Hobby Lobby case, the Supreme Court for the first time recognized a qualification for a religious exemption by a corporation.
>
> As Justice Ruth Bader Ginsburg argued: "The court has essentially treated for-profit corporations as people capable of exercising religion, putting us on a dangerous path with regard to employees' privacy and personal freedoms."
>
> The Boss Bill [§ 203-e] seeks to prevent this further encroachment by employers into the private decisions of employees on matters that have nothing to do with the performance of their job.
>
> Choosing whether, when and how to have children is a decision for individuals and their families. No one should have fear that they will lose their job or be demoted because of their own private reproductive health decisions.

N.Y. Senate Debate on Senate Bill 660, Jan. 22, 2019 at 433-34.

Senator Metzger said nothing about preventing religious employers from advocating against contraception and thereby "muting" such employers. Rather, she was talking about preventing them from firing and demoting workers because of the workers' private reproductive health decisions, which "have nothing to do with the performance of their job." *Id.* at 434. While Senator Metzger expressed disapproval of employers' efforts to deny contraceptive coverage, her sponsor's memorandum made clear that "[t]his bill is not about insurance coverage and is not intended to require coverage for any health care service, drug or device." (JA102.) Moreover, even her criticism of employers' efforts to

restrict insurance coverage was aimed at "for-profit" employers. N.Y. Senate Debate on Senate Bill 660, Jan. 22, 2019 at 433-34. (JA102.) Evergreen, like most other religious employers, is a not-for-profit entity. (JA47.)

In any event, courts should hesitate to invalidate a statute "on the basis of what fewer than a handful of [legislators] said about it." *United States v. O'Brien*, 391 U.S. 367, 383-84 (1968). Here, the enacted law's title and provisions set forth the entire Legislature's intent: to combat "discrimination based on an employee's or a dependent's reproductive health decision making." *See* Bill Jacket for S660/A584 at 1, 58.

## C.  Section 203-e Passes Intermediate Scrutiny.

If § 203-e imposed any restriction on speech (which it does not), such a restriction would be subject to intermediate scrutiny because the statute is content-neutral and viewpoint-neutral. *See Rumsfeld,* 547 U.S. at 67; *Lederman v. New York City Dep't of Parks & Recreation,* 731 F.3d 199, 202 (2d Cir. 2013); *Mastrovincenzo v. City of New York*, 435 F.3d 78, 98 (2d Cir. 2006). And for the same reasons that it satisfies strict scrutiny, *see* Point I(C)(2), *supra* at 36-38, it passes intermediate scrutiny.

49

Specifically, § 203-e is "narrowly tailored to serve a significant government interest, while leaving open ample alternative channels for communication." *Lederman,* 731 F.3d at 202. New York's compelling interests in protecting privacy and eliminating discrimination are discussed in Point I(C)(2), *supra* at 36-37. Plaintiffs' available means of communication include all the media by which plaintiffs ordinarily promulgate their religious message and speak out against abortion and contraception. Section 203-e cuts off no channel of communication.

Finally, because § 203-e bans discrimination based on reproductive health decisions, the goal of eliminating such discrimination "would be achieved less effectively" absent the law. *See Our Lady's Inn*, 349 F. Supp. 3d at 820.

## POINT III

### PLAINTIFFS FAILED TO STATE A CLAIM THAT § 203-e INFRINGES ON THEIR FREE EXERCISE OF RELIGION

Under the First Amendment, made applicable to the States by the Fourteenth Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

The right to exercise one's religion freely, however, "does not relieve an individual of the obligation to comply with a valid and neutral law of

general applicability." *Employment Div. v. Smith,* 494 U.S. 872, 879 (1990) (internal quotation marks and citations omitted). A burden on religion is permissible when it is "merely the incidental effect of a generally applicable and otherwise valid provision" that "prohibit[s] conduct that the State is free to regulate." *Id.,* 494 U.S. at 878-79; *accord Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531 (1993).

Thus, to meet the Supreme Court's test under *Smith,* a law must be (1) validly enacted to prohibit conduct the State may regulate; (2) generally applicable; and (3) neutral regarding religion. Section 203-e satisfies all three requirements.

First, § 203-e was validly enacted. New York may properly legislate against employment discrimination, *see Figueroa,* 864 F.3d at 232, and § 203-e falls within a long tradition of such laws. *See, e.g.*, N.Y. Exec Law § 290 *et seq.* (N.Y. Human Rights Law); N.Y. Labor Law § 201-g (prevention of sexual harassment in the workplace); *see also* 42 U.S.C. § 2000e *et seq.* (Title VII of the 1964 Civil Rights Act); 42 U.S.C. § 12101 *et seq.* (Americans with Disabilities Act).

Second, § 203-e is generally applicable. "The general applicability requirement prohibits the government" from selectively "impos[ing]

burdens only on conduct motivated by religious belief." *Central Rabbinical Congress v. New York City Dep't of Health & Mental Hygiene,* 763 F.3d 183, 197 (2d Cir. 2014) (brackets in original; internal quotation marks and citation omitted). Section 203-e, in contrast, applies to every "employer," regardless of religion. N.Y. Labor Law § 203-e(2). The statute's prohibitions do not distinguish between religious and secular conduct. *See* Point II(B), *supra* at 46-48. (*See* JA19.) Religious beliefs and practices are not "being singled out for discriminatory treatment." *Lukumi Babalu*, 508 U.S. at 538.

Plaintiffs argue that "New York employment law" as a whole contains "a host of exceptions" that defeat § 203-e's general applicability (Br. at 46), but that argument is not properly before the Court. Plaintiffs' complaint raised no free-exercise challenge to § 203-e based on purported exceptions elsewhere in New York law. (*See* JA61-64.) Nor did plaintiffs' supporting memorandum of law. Because this new argument was available to plaintiffs in the district court and they proffer no reason for failing to raise it below, the Court should not consider it now. *See Sczepanski v. Saul*, 946 F.3d 152, 161 (2d Cir. 2020).

Plaintiffs' belated argument lacks merit in any event. The proper unit of analysis cannot be "New York employment law" as a whole, which

consists of multifarious statutes, regulations, and judicial and administrative decisions. The State's enactment of government contracting laws that benefit women and minority business owners (Br. at 46) does not even address employment law, let alone affect separate and independent statutes such as § 203-e. None of the purported exceptions plaintiffs cite would allow a secular employer to discriminate or retaliate based on an employee's reproductive health decision. The referenced exceptions thus do not undermine New York's compelling interest in protecting privacy in reproductive health decisions, or in prohibiting employment discrimination more generally, the way that allowing plaintiffs to take adverse actions against their employees would. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

Third, § 203-e is neutral regarding religion. A law's neutrality is determined by examining the statute on its face, surveying relevant evidence including the measure's historical background and legislative history, and examining the law's operation. *New Hope,* 966 F.3d at 163; *see Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018); *Lukumi Babalu*, 508 U.S. at 540. A law is not neutral if "the suppression of religion" is its "object," *Lukumi Babalu*, 508 U.S. at 542, or if it "targets religious conduct for distinctive treatment," *Central*

*Rabbinical Congress,* 763 F.3d at 194 (internal quotation marks and citation omitted). Thus, a law violates the Free Exercise clause if it "discriminates against some or all religious beliefs or regulates or prohibits conduct *because* it is undertaken for religious reasons." *Lukumi Babalu,* 508 U.S. at 532-33 (emphasis added); *see also Central Rabbinical Congress*, 763 F.3d at 196 (law is not neutral "where the object of the law is itself the regulation of religious conduct").

Section 203-e's prohibitions on discrimination, retaliation, and accessing confidential medical information are neutral on their face: they apply regardless of whether the offenses were religiously motivated. The statute neutrally "encompass[es] both secular and religious conduct" rather than "regulat[ing] particular religious conduct and nothing else." *Central Rabbinical Congress,* 763 F.3d at 195.

The legislative record for § 203-e reveals no animosity toward religion. The Legislature's concern that employers could obtain and misuse private employee health information was religiously neutral. Indeed, the measure's sponsors expressed concern specifically over actions to deny insurance coverage by "for-profit employers." (JA99, 102.) While the sponsors correctly recognized that some employers had opposed use of the birth-control benefit based on their "personal beliefs"

54

(JA99, 102), acknowledging that historical fact did not amount to targeting religion.

With respect to the law's "real operation," *New Hope,* 966 F.3d at 163 (internal quotation marks and citation omitted), the complaint does not plead facts showing that § 203-e has been applied at all, let alone applied to inhibit the exercise of religion. To the contrary, the Legislature understood that § 203-e would accommodate religion because religious employers would be protected by the constitutionally mandated ministerial exception. *See* Point I(C)(2), *supra* at 38. However, plaintiffs' claim that their personnel fall within the ministerial exception (Br. at 43-44) is unripe. The ministerial exception "operates as an affirmative defense to an otherwise cognizable claim." *Hosanna-Tabor,* 565 U.S. at 195 n.4. Therefore, deciding whether the exception covers Evergreen's employees must await a private action by an employee or an enforcement action by the State. Indeed, the complaint's prayer for relief did not include a request for a declaratory judgment that the ministerial exception applied to Evergreen. (*See* JA66.)

Against that background, plaintiffs plead no facts to support the complaint's broad allegations that § 203-e was "intended to target religious organizations" and was "passed specifically to prevent religious

55

employers" from making employment decisions based on religious principles. (*See* JA62-63.) This case thus differs from *New Hope*, where the complaint contained detailed factual allegations that, when viewed in the light most favorable to plaintiffs, could demonstrate animus toward plaintiffs' religious beliefs. *See id.,* 966 F.3d at 163-64, 167-70. Here, plaintiffs failed to meet the federal pleading standard that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

As a neutral, generally applicable law, § 203-e need only be supported by a rational basis to be sustained. *Central Rabbinical Cong.,* 763 F.3d at 193; *see also Agudath Israel of Am. v. Cuomo¸* 983 F.3d 620, 631 (2d Cir. 2020); *Commack Self-Service Kosher Meats, Inc. v. Hooker,* 680 F.3d 194, 212 (2d Cir. 2012). As shown in Point I(C)(1)-(2), *supra* at 34-37, § 203-e is rationally related to protecting the privacy rights of New York employees and combating workplace discrimination.

Finally, if § 203-e were found not to be neutral or generally applicable and burdened religious conduct, strict scrutiny would apply. *Central Rabbinical Congress,* 763 F.3d at 193. As shown in Point I(C)(2), *supra* at 36-38, § 203-e passes strict scrutiny because it is justified by

compelling interests and was narrowly tailored to advance those interests.

## POINT IV

### PLAINTIFFS FAILED TO STATE A CLAIM THAT § 203-e IS UNCONSTITUTIONALLY VAGUE

To ensure the due process of law required by the Fourteenth Amendment, statutes "must give people of common intelligence fair notice of what the law demands of them." *United States v. Davis,* 139 S. Ct. 2319, 2325 (2019) (internal quotation marks and citation omitted).

But statutory language need not achieve "meticulous specificity, which would come at the cost of flexibility and reasonable breadth." *United States v. Dawkins*, 999 F.3d 767, 787 (2d Cir. 2021) (internal quotation marks and citation omitted); *see also Thibodeau v. Portuondo,* 486 F.3d 61, 66 (2d Cir. 2007). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward,* 491 U.S. at 794. This Court has recognized that "language is necessarily marked by a degree of imprecision." *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 126 (2d Cir. 2020) (internal quotation marks and citation omitted), *cert. denied,* 2021 WL 2519117 (U.S. June 21, 2021). Thus, a statute meets the constitutional standard

for specificity when "it is clear what the [statute] as a whole prohibits." *Grayned v. City of Rockford,* 408 U.S. 104, 110 (1972).

Section 203-e amply satisfies the constitutional obligation to avoid vagueness. As a whole, § 203-e clearly prohibits employers from discriminating or retaliating against employees based on the employees' reproductive health decision making or that of their dependents. N.Y. Labor Law § 203-e(2)(a). The statute reinforces that prohibition by restricting employers' access to personal records regarding reproductive health, *id.* § 203-e(1); preventing employers from circumventing the statute through waivers, *id.* § 203-e(2)(b); creating a private right of action to enforce the statute, *id.* § 203-e(3); and subjecting violators to civil penalties for retaliation, *id.* § 203-e(5).

Plaintiffs nonetheless claim that four terms in § 203-e are unconstitutionally vague: "employee," "employer," "reproductive health decision making," and "proposes to commit a violation" (Br. at 52-56). None of those terms is "so vague that [persons] of common intelligence must necessarily guess at its meaning." *Roberts,* 468 U.S. at 629 (brackets in original; internal quotation marks and citation omitted).

The term "employee" has a readily ascertainable meaning. While plaintiffs contend that the statute leaves unclear whether the term

includes "interns and volunteers" (Br. at 54), the New York Labor Law answers that question by defining an "employee" as "a mechanic, workingman or laborer working for another *for hire*." N.Y. Labor Law § 2(5) (emphasis added). Thus, as used in the Labor Law, the term "employee" "does not apply to a volunteer who performs a service gratuitously." *Stringer v. Musacchia,* 11 N.Y.3d 212, 215 (2008); *see also Mordkofsky v. V.C.V. Dev. Corp.,* 76 N.Y.2d 573, 577 (1990) (recovery under Labor Law sections protecting employee health and safety "has been barred in actions where the plaintiff was a volunteer").

Plaintiffs do not articulate a basis for their claim that the term "employer" is vague. To the extent they seek to rely on the same question they raise regarding the term "employee"—whether the statute covers unpaid relationships—the vagueness claim fails for the same reason: the statute does not extend to those relationships. New York Labor Law § 2(6) defines an "employer" as "the person employing any *such* mechanic, workingman or laborer," that is, one who works "for hire" under New York Labor Law § 2(5) (emphasis added).

The term "reproductive health decision making" is clarified by the statutory text itself, *see* Point I(A)(1), *supra* at 20-21, and in any event has a commonly understood meaning and thus requires no clarification.

Statutory terms that are undefined should be interpreted in accordance with their "ordinary or natural meaning." *Smith v. United States,* 508 U.S. 223, 228 (1993). The phrase "reproductive health" commonly refers to "the condition of male and female reproductive systems during all life stages."[7] The term is used in federal law with a similar meaning. *See* 18 U.S.C. § 248(e)(5) (defining "reproductive health services" as including "medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy"). And the term "decision making" ordinarily means "[t]he process or practice of making important choices or judgments, esp. after a period of discussion or thought." Decision-Making, Black's Law Dictionary (11th ed. 2019). Accordingly, "reproductive health decision making" refers to the process or practice of making important choices or judgments about one's reproductive system.

---

[7] National Institute of Environmental Health Sciences, "Reproductive Health," *available at* https://www.niehs.nih.gov/health/topics/conditions/repro-health/index.cfm (last visited August 17, 2021); *see also* Wikipedia, "Reproductive Health," *available at* https://en.wikipedia.org/wiki/Reproductive_health (last visited August 17, 2021) ("reproductive health" addresses "the reproductive processes, functions and system at all stages of life").

Even if that common understanding were insufficient, however, § 203-e clarifies the term's meaning by qualifying it with illustrative examples, explaining that the term includes decisions "to use or access a particular drug, device or medical service." N.Y. Labor Law §§ 203-e(1), (2)(a). Those illustrative terms give meaning to the phrase "including, but not limited to," which under accepted canons of statutory construction must be understood to refer to similar reproductive treatments. *See* N.Y. Statutes § 239 (McKinney 1971) (explaining principles of *noscitur a sociis* and *ejusdem generis*); *see* Point I(A)(1), *supra* at 20-21.[8]

Plaintiffs argue that the scope of the term "reproductive health decision making" is unclear because it could include not only contraception and abortion, but also "other highly controversial procedures" like "human cloning" (Br. at 53; internal quotation marks omitted). But even if deciding whether § 203-e applies could be difficult in some hypothetical situations, that would not make the statute unconstitutionally vague. "[E]ven clear rules produce close cases."

---

[8] Plaintiffs' claim that the phrase "reproductive decision making" is unconstitutionally vague because it may extend to public advocacy for abortion (Br. at 53) should be rejected for the reasons set forth in Point I(A)(1), *supra* at 19-22.

*Salman v. United States,* 137 S. Ct. 420, 428-29 (2016) (internal quotation marks and citations omitted).

As for the fourth allegedly vague term—"proposes to commit a violation"—plaintiffs did not allege in their complaint that the term was unduly vague (*see* JA64-66), nor did they seek to amend the complaint to include such a claim. Consequently, this Court should not entertain the claim on appeal. *See Agosto v. New York City Dep't of Educ.,* 982 F.3d 86, 97 n.3 (2d Cir. 2020). Alternatively, the Court should reject plaintiffs' claim on the merits. The term "propose" commonly means "to offer or suggest (a matter, subject, case, etc.) for consideration, acceptance, or action."[9] That meaning is further limited by the context in which the term is used: the phrase "proposes to commit a violation" is contained only in § 203-e's provision authorizing injunctive relief. *See* N.Y. Labor Law § 203-e(3)(b). Thus, to be enjoined under § 203-e, a "proposal" must satisfy any applicable criteria for an injunction.[10]

---

[9] "Propose," available at https://www.dictionary.com/browse/propose (last visited August 17, 2021).

[10] Because an injunction is a form of equitable relief, plaintiffs are wrong to assert that the statute imposes "punishment" for violating this provision (Br. at 52).

Finally, the Court should reject plaintiffs' additional argument that the statute's enforcement mechanisms are not clear. (*See* Br. at 55.) Section 203-e affords employees a private right of action. *See* N.Y. Labor Law § 203-e(3). Plaintiffs' suggestion that the private right leaves them "at the mercy" of employees who would use lawsuits "as a political cudgel" (Br. at 55) is speculative. If accepted at face value, that argument would invalidate many statutory rights of action. Nor is the mechanism for State enforcement unclear. As Commissioner of the New York State Department of Labor, defendant Reardon is empowered to enforce the entire Labor Law, including section 203-e. *See* N.Y. Labor Law § 21(1).

## CONCLUSION

The district court's judgment should be affirmed.

Dated:   Albany, New York
             August 18, 2021

                                    Respectfully submitted,

                                    LETITIA JAMES
                                      *Attorney General*
                                      *State of New York*
                                    Attorney for Appellees

                          By:   /s/ *Frederick A. Brodie*
                                    FREDERICK A. BRODIE
                                    Assistant Solicitor General

BARBARA D. UNDERWOOD                 Office of the Attorney General
  *Solicitor General*                The Capitol
ANDREA OSER                          Albany, New York 12224-0341
  *Deputy Solicitor General*         (518) 776-2317
FREDERICK A. BRODIE
  *Assistant Solicitor General*
        *of Counsel*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Frederick A. Brodie, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains **12,704** words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7).

*/s/ Frederick A. Brodie*