# 21-911

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

CHRISTOPHER T. SLATTERY, a New York resident, and THE EVERGREEN ASSOCIATION, INC., a New York nonprofit corporation, doing business as Expectant Mother Care and EMC Frontline Pregnancy Centers,

*Plaintiffs-Appellants,*

v.

ANDREW M. CUOMO, in his official capacity as the Governor of the State of New York; ROBERTA REARDON, in her official capacity as the Commissioner of the Labor Department of the State of New York; and LETITIA JAMES, in her official capacity as the Attorney General of the State of New York.

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of New York
Civil Case No. 1:20-CV-0112 (TJM/DJS) (Hon. Thomas J. McAvoy)

## REPLY BRIEF OF APPELLANTS

Stephen M. Crampton
Mary Catherine Hodes
   *pending admission*
THOMAS MORE SOCIETY
309 West Washington Street, Suite 1250
Chicago, Illinois 60606
Phone: (662) 255-9439
Fax: (312) 782-1887
scrampton@thomasmoresociety.org

Timothy Belz
   *Counsel of Record*
J. Matthew Belz
CLAYTON PLAZA LAW GROUP
112 South Hanley, Second Floor
St. Louis, Missouri 63105-3418
Phone: (314) 726-2800
Fax: (314) 863-3821
tbelz@olblaw.com
jmbelz@olblaw.com

*Counsel for Appellants*

# TABLE OF CONTENTS

Table of Authorities ........................................................................ iv

Introduction ................................................................................. 1

Argument .................................................................................... 4

I.  Evergreen adequately pleaded that Section 203-E unconstitutionally
    burdens its rights as an expressive association. ....................................... 4

    A. Evergreen's preenforcement challenge is a valid *as-applied*
       claim. ......................................................................... 4

        1. The State relies on cases that do not consider or deny the
           validity of as-applied, preenforcement claims. ..................... 4

        2. The Supreme Court and this Court recognize as-applied,
           preenforcement challenges when a plaintiff's expressive
           association is credibly threatened with prosecution. ............. 5

        3. Evergreen adequately pleaded that it faces a "credible
           threat of prosecution" for engaging in constitutionally
           protected expressive activity. ................................... 6

    B. If necessary, Evergreen's expressive association claim should
       survive, as pleaded, as a facial claim. ................................ 9

    C. Section 203-E profoundly impairs Evergreen's freedom to pursue
       its expressive mission. ............................................... 12

        1. The law requires deference to Evergreen's own assessment
           of the burden on its expression. ............................... 13

        2. The State's account of the impact on Evergreen's
           expressive association is counterfactual. ...................... 14

        3. Precedent contradicts the State's thin estimation of the
           burden on Plaintiffs' expressive association. ................. 17

II.    Evergreen adequately pleaded that Section 203-E unconstitutionally
       burdens its speech. ..................................................................  21

       A. Section 203-E burdens Evergreen's speech by regulating
          speech-laden conduct. .....................................................  21

       B. Section 203-E is not neutral. ...........................................  23

       C. Evergreen's speech claim would survive a motion to dismiss
          even if the statute were subject only to intermediate scrutiny. .......  25

III.   Section 203-E impermissibly targets religion. .........................  26

Conclusion ...........................................................................  27

Certificate of Compliance ........................................................  29

Certificate of Service .............................................................  30

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Adams v. Zelotes*,
   606 F.3d 34 (2d Cir. 2010)............................................................... 12

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979)........................................................... 7, 8

*Boy Scouts of America v. Dale*,
   530 U.S. 640 (2000)...................................................... Passim

*Cayuga Nation v. Tanner*,
   824 F.3d 321 (2d Cir. 2016)............................................ 6, 7

*Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of New York*,
   502 F.3d 136 (2d Cir. 2007)............................................... 20

*Christian Legal Soc'y v. Walker*,
   453 F.3d 853 (7th Cir. 2006) ........................................ Passim

*Coronado v. Weill Cornell Med. Coll.*,
   66 Misc. 3d 404, 114 N.Y.S.3d 193 (N.Y. Sup. Ct. 2019) .................................. 23

*Democratic Party of U. S. v. Wisconsin ex rel. La Follette*,
   450 U.S. 107 (1981)........................................................... 13

*Geller v. Cuomo*,
   476 F. Supp. 3d 1 (S.D.N.Y. 2020) ...................................... 6

*Gonzales v. Carhart*,
   550 U.S. 124 (2007)........................................................... 6

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006)........................................................... 25

*Govori v. Goat Fifty, L.L.C.*,
   2011 WL 1197942 (S.D.N.Y. Mar. 30, 2011) ..................................................... 24

*Hall v. Nalco Co*.,
   534 F.3d 644 (7th Cir. 2008) ....................................................................... 24

*Healy v. James*,
   408 U.S. 169 (1972) .................................................................................. 18

*Hedges v. Obama*,
   724 F.3d 170 (2d Cir. 2013) ........................................................................ 7

*Holder v. Humanitarian L. Project*,
   561 U.S. 1 (2010) ................................................................................ 6, 8

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
   565 U.S. 171 (2012) .................................................................................. 9

*Jacoby & Meyers, LLP v. Presiding Justices*,
   852 F.3d 178 (2d Cir. 2017) ..................................................................... 4, 6

*June Med. Servs. L. L. C. v. Russo*,
   140 S. Ct. 2103 (2020) ............................................................................. 11

*Knife Rts., Inc. v. Vance*,
   802 F.3d 377 (2d Cir. 2015) ........................................................................ 8

*Neely-Bey Tarik-El v. Conley*,
   912 F.3d 989 (7th Cir. 2019) ..................................................................... 21

*New Hope Fam. Servs., Inc. v. Poole*,
   966 F.3d 145 (2d Cir. 2020) ................................................................. Passim

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015) ................................................................... 5, 25

*Planned Parenthood of Se. Pennsylvania v. Casey*,
   505 U.S. 833 (1992) ................................................................................ 11

*Richmond Boro Gun Club, Inc. v. City of New York*,
   97 F.3d 681 (2d Cir. 1996) ..................................................................... 5

*Roe v. Wade*,
   410 U.S. 113 ........................................................................................ 24

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
   547 U.S. 47 (2006) ............................................................................... 17

*Saks v. Franklin Covey Co.*,
   316 F.3d 337 (2d Cir. 2003) .................................................................. 23

*Steffel v. Thompson*,
   415 U.S. 452 (1974) ............................................................................... 6

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ............................................................................... 8

*Tabbaa v. Chertoff*,
   509 F.3d 89 (2d Cir. 2007) ............................................................... 17, 18

*United States v. Stevens*,
   559 U.S. 460 (2010) ........................................................................ 10, 12

*Wilmoth v. Sec'y of New Jersey*,
   731 F. App'x 97 (3d Cir. 2018) ............................................................. 25

**Statutes**

42 U.S.C. § 2000e–2 ................................................................................ 24

42 U.S.C. § 2000e(k) ............................................................................... 24

New York Executive Law § 296(1)(a) ...................................................... 23

**Other Authorities**

New York City Administrative Code § 8-107(1)(a) ................................... 23

**INTRODUCTION**

Plaintiffs Slattery and The Evergreen Association, Inc. (collectively, "Evergreen") have long united to communicate a message of love and life to women in difficult situations. They are not bigots who seek to discriminate against anyone, control anyone, or dictate anyone's most personal decisions.[1] Before and after Section 203-E, Evergreen seeks only to eliminate abortion by communicating messages of love and support to women who need those, often along with financial resources, in order to choose to give birth to their unborn children.

To fulfill this mission of communicating love for mothers and their unborn babies, Evergreen employs only five to seven people at a time. Those employees, aided by volunteers who support Evergreen's mission, are Evergreen's only instruments of conveying their message to the women they serve. To the significant extent that love, acceptance, and support cannot be conveyed except by human contact, Evergreen's employees *are* its message.

As a result, hiring and retaining (and, when necessary, firing) employees is itself among the most expressive of Evergreen's activities. It is also an important element in controlling and shaping Evergreen's ultimate expression to its clients.

---

[1] *Contra* State Br. 1 (accusing Evergreen and Slattery of asserting "the right to discriminate and retaliate against their employees"); Amicus Brief of American Atheists (Atheists Br.) at 2, 4 (stating that Evergreen and Slattery "wish to dictate the most private decisions of their employees and . . . their employees' dependents . . . and intrude into sensitive and personal matters . . . .").

1

In choosing who will represent Evergreen to its clients, Evergreen is choosing the forward-facing element of its message, precisely the same way a publisher would choose the cover of a book. Also like the publisher choosing a cover, Evergreen must take care that the employees are in every way good and faithful representatives of what Evergreen offers women: the countercultural message of love for the life of every unborn child, especially theirs.

Insisting on the freedom to hire representatives who will faithfully convey its mission does not make Evergreen a bigot wanting to discriminate against people who have had abortions or control their employees' private decisions, as the State and its *amici* aver.[2] As the State points out, there are many people who have had abortions in the past and, formed by that experience, have become committed, compelling advocates for Evergreen's message. State Br. 24. This may be as or more common than an abortion decision presenting an obstacle to employment at Evergreen. That does not change the fact that in other, more straightforward situations (*e.g.*, choosing to have an abortion or seek an abortion for a family member while employed by Evergreen), an unrepentant decision to have or help procure an abortion may reveal an unbridgeable gap between an employee or potential employee and Evergreen's goal of bringing about an abortion-free culture. Evergreen does not insist on a policy of firing such a person or anyone

---

[2] *See supra* note 1.

with abortion in their past.[3] It merely insists on what the Constitution promises and Section 203-E purports to remove: Evergreen's rights as a religious believer, a communicator, and an expressive association to determine whether and when someone is a good representative of its mission.

The fact that a reproductive decision, like any decision, can affect a person and a potential hiring situation in more than one way simply demonstrates *why* the First Amendment preserves Evergreen's right to hire and fire by its own judgment, free from "intrusion into [its] internal structure or affairs," and uncoerced by the value judgments of the State or the larger culture. *See Boy Scouts of America v. Dale*, 530 U.S. 640, 647-48 (2000) (upholding the right of expressive association as "crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas"). Because reproductive decisions cut so close to the center of Evergreen's mission to bring about an abortion-free culture, Section 203-E's imposition into Evergreen's hiring decisions is particularly profound, and fatal to Evergreen as an expressive association. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 863 (7th Cir. 2006) ("CLS's beliefs about sexual morality are among its defining values; forcing it to accept as

---

[3] Again, contrary to the caricatures presented by the State and *amici*. *See, e.g.*, Atheists Br. 6 ("Evergreen contends that hiring or continuing to employ someone who (or whose dependent) made a health care decision it disagrees with violates its religious beliefs.").

members those who engage in or approve of homosexual conduct would cause the group as it currently identifies itself to cease to exist.").

## ARGUMENT

### I.     Evergreen adequately pleaded that Section 203-E unconstitutionally burdens its rights as an expressive association.

#### A.     Evergreen's preenforcement challenge is a valid *as-applied* claim.

The State attempts to deny Plaintiffs their claim that Section 203-E is an unconstitutional burden on Evergreen's right to expressive association, arguing that Plaintiffs must instead argue that the statute is facially overbroad. State Br. 18. The State's new argument relies on unsupportive cases and is flatly contradicted by Supreme Court and Second Circuit precedent. Plaintiffs adequately pleaded that Section 203-E is an unconstitutional burden on expressive association as applied to Evergreen.

#### 1.     The State relies on cases that do not consider or deny the validity of as-applied, preenforcement claims.

The State relies on a seemingly categorical statement from *Jacoby & Meyers, LLP v. Presiding Justices*, 852 F.3d 178, 184 (2d Cir. 2017), to the effect that "where plaintiffs had not been charged with violating any law, their challenge to statute's constitutionality was facial rather than as-applied." State Br. 18 (quoting the brief, not the case). The plaintiffs in *Jacoby v. Meyers* did not effectively plead an as-applied challenge, however, and the Court seems to have

4

been simply setting forth a default rule for distinguishing as-applied challenges from facial ones. *Id.* It did not discuss this rule or the possibility of a threat of enforcement. *Id. Jacoby & Meyers* relied on another vagueness case in which a threat of enforcement to the particular parties, and thus an as-applied claim, was not raised or considered. *Id.* (quoting *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) (describing the facial claim at hand)). That case in turn relied solely on a decision that considers and rejects a preenforcement, as-applied challenge because the threat of enforcement was only speculative. *See Richmond Boro Gun Club, Inc. v. City of New York*, 97 F.3d 681, 686 (2d Cir. 1996). In other words, the State relies on authority that does not deny that an as-applied preenforcement constitutional claim may be validly raised where, as here, a plaintiff is credibly threatened with enforcement that would trample its constitutional rights.

> **2.      The Supreme Court and this Court recognize as-applied, preenforcement challenges when a plaintiff's expressive association is credibly threatened with prosecution.**

Moreover, the State's position, raised for the first time on appeal, that, in essence, "pre-enforcement challenge equals facial challenge" is contradicted by decades of precedent from the Supreme Court, the Second Circuit, and other courts. For instance, the Supreme Court has stated clearly:

> [F]ederal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of

5

a disputed state criminal statute, **whether an attack is made on the constitutionality of the statute on its face or as applied**.

*Steffel v. Thompson*, 415 U.S. 452, 475 (1974) (emphasis added). Subsequent cases confirm the viability of preenforcement, as-applied challenges when plaintiffs face a credible threat of prosecution under a statute that burdens constitutional rights. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 15 (2010) (analyzing preenforcement, as-applied freedom of association challenge);[4] *Gonzales v. Carhart,* 550 U.S. 124, 167 (2007) (approving "preenforcement, as-applied challenges" in constitutional cases); *Cayuga Nation v. Tanner*, 824 F.3d 321, 331-32 (2d Cir. 2016) ("The injury . . . —threat of criminal prosecution—could be redressed by a . . . finding that the Ordinance is preempted **as applied to gaming at Lakeside**.") (emphasis added).

### 3. Evergreen adequately pleaded that it faces a "credible threat of prosecution" for engaging in constitutionally protected expressive activity.

There is no question that Evergreen faces a "credible threat of prosecution." When a plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and

---

[4] At least one district court in New York has recognized the apparent "tension between *Jacoby* and *Steffel* and *Holder*" but declined to "resolve that tension." *Geller v. Cuomo*, 476 F. Supp. 3d 1, 17 (S.D.N.Y. 2020). Plaintiffs suggest the resolution is simply that the *Jacoby* panel intended only to describe the facial claim before it, rather than create a sweeping new legal standard that contradicts Supreme Court precedent. *See Jacoby*, 852 F.3d at 184.

there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (internal quotation marks omitted). "Put differently, the Court held that a plaintiff has standing to make a preenforcement challenge 'when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative.'" *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013) (quoting *Babbitt*, 442 U.S. at 302). The standard established in *Babbitt* "sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review," as courts are generally "willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Id.* at 197 (internal quotation marks omitted); *see also Cayuga Nation,* 824 F.3d at 331-32.

The legislative history of Section 203-E establishes that the purpose of the statute is to prevent religious employers, like Evergreen, from imposing their religious beliefs about reproductive rights on their employees. JA62 ¶ 128-29; *see* Opening Br. 49; JA123-24. As a religious employer with an explicitly pro-life mission, Evergreen is therefore the direct target of this statute.

Moreover, the statute provides an array of easily executed enforcement mechanisms, including private rights of action for damages and equitable relief, criminal prosecution, and enforcement action by the Department of Labor. JA53-

54. Despite this variety of enforcement measures, Plaintiffs have alleged that they will continue to make employment decisions in line with their religious and moral beliefs:

> 76.    Plaintiffs have no choice but to continue to operate in a manner consistent with their mission and religious and moral beliefs, because complying with the Boss Bill would compel them to violate their moral and religious core principles, which they cannot do.

> 77.    Plaintiffs intend to take adverse employment action against personnel who choose to procure abortions or otherwise violate their organizational policies regarding abortion and sexual morality.

JA56; *see Babbitt*, 442 U.S. at 298 (credible threat of enforcement exists when plaintiff has "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute"); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 162 (2014) (same).

It is also legally significant that the State has not disavowed enforcement against Plaintiffs. *Susan B. Anthony List*, 573 U.S. at 165 (citing absence of disavowal as further support of credible threat); *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 385 (2d Cir. 2015); *Holder*, 561 U.S. at 16 ("The Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do."); *Babbitt*, 442 U.S. at 302. Nor could the State disavow enforcement, given that Section 203-E provides a private right of action.

As a logical matter, it is hard to imagine the statute being enforced against any type of employer other than Plaintiffs, since most employers would have no

reason to dismiss people on the basis of common reproductive decisions. Only religious mission commitments like Plaintiffs' are threatened by the activity protected by this statute. Since many religious employers are not subject to the law by virtue of the ministerial exception to discrimination laws recognized in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 190-191 (2012), Plaintiffs are among the only available targets for enforcement. *See also* Section I.B, *infra*.

Finally, Section 203-E(3)(b) affords relief against anyone who merely "proposes to commit a violation of the [law]," so Evergreen could be currently in violation just by expressing its intention "to take adverse employment action against personnel who choose to procure abortions or otherwise violate their organizational policies regarding abortion and sexual morality." JA56.

For all of these reasons, Evergreen faces a credible threat of prosecution or private enforcement under Section 203-E and is entitled to raise its preenforcement challenge to application of Section 203-E to Evergreen.

### B. If necessary, Evergreen's expressive association claim should survive, as pleaded, as a facial claim.

Even if the State could establish that Plaintiffs do not face a credible threat of enforcement, Plaintiffs' well pleaded expressive association claim should survive a Motion to Dismiss as a facial challenge to Section 203-E.

In the First Amendment context, the Supreme Court has recognized a "type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotation marks omitted). Section 203-E is overbroad by this standard, because (1) it has a very limited "sweep," and (2) its few actual applications are likely to be largely unconstitutional.

The trouble with defining the "sweep" of Section 203-E is that the State has provided no indication that the specific type of discrimination targeted by Section 203-E *actually exists*. Given that the trial court proceedings are only at the pleading stage, the only "record" regarding this issue is from the Plaintiffs:

> 63.    The legislative history of the Boss Bill, as well as the text of the bill itself, offer no examples of adverse employment consequences caused by any employer decisions in light of employee reproductive health choices.

> 64.    When directly questioned as to whether discrimination on the basis of reproductive health decisions was actually occurring in New York State, Assemblywoman Ellen Jaffee, the main sponsor of the Boss Bill, cited no examples of discrimination on the basis of the vague concept of "reproductive health decision making."

JA54. This is significant because, if there is no discrimination actually occurring that will be prevented by Section 203-E, then it has *no* plainly legitimate sweep.

Naturally, the State urges the Court to consider Section 203-E to have a broad sweep because it applies to "all non-religious employers, as well as many

religious employers . . . ." State Br. 31. It is not helpful, however, in defining a law's sweep, to point out that it technically applies to everyone in a jurisdiction; that is true of most laws. Instead, "[l]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects." *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 894 (1992).

It is evident from the legislative history of Section 203-E and from simple statutory interpretation that, upon the vast majority of employers, Section 203-E has no meaningful effect. The Senate's own statements confirm that no one expects or intends for Section 203-E to impact non-religious employers; instead, the legislation targets religious employers ("the Boss Bill that passed will prevent an employer's religious beliefs from infringing on women's health care decisions"[5]). The State's effort now to claim that the law actually applies to all employers is therefore "[t]rue, but beside the point." *June Med. Servs. L. L. C. v. Russo*, 140 S. Ct. 2103, 2132–33 (2020) (citing *Casey* to reject Louisiana's suggestion that its abortion-access restriction impacts "every woman in Louisiana who seeks an abortion" rather than just those to whom it is "relevant").

---

[5] "Standing Up For Women's Rights: Senate Majority Passes Historic Pro-Women Legislation," The New York State Senate, Jan. 22, 2019, https://www.nysenate.gov/newsroom/press-releases/standing-womens-rights-senate-majority-passes-historic-pro-women-legislation; *see also* Complaint, JA62-63.

Also explicitly acknowledged by the legislature was the fact that Section
203-E actually cannot apply to *all* religious employers. Legislators were expressly
aware that the ministerial exception outlined in *Hosanna-Tabor* would shield
religious employers hiring employees who act as ministers. State Br. 55. The
legislature's own words therefore confirm that the intended "sweep" of the statute
is only *religious employers hiring employees who do not qualify as ministers*.
Because, as the District Court noted, the scope of the ministerial exception to anti-
discrimination laws is in flux, JA32, it is not entirely clear what this population
(religious employers not hiring ministers) amounts to. What *is* clear is that this
group, the total "sweep" of the legislation, is tiny.

Within the subset of religious employers' employment decisions governed
by Section 203-E, the application of Section 203-E to Plaintiffs and others
similarly situated (religious entities having an expressive, pro-life mission) is
unconstitutional. Thus, a "substantial number of [the law's] applications" are
unconstitutional, especially "judged in relation to the statute's plainly legitimate
sweep." *Stevens*, 559 U.S. at 473 (internal quotation marks and citation omitted);
*Adams v. Zelotes,* 606 F.3d 34, 38 (2d Cir. 2010).

## C. Section 203-E profoundly impairs Evergreen's freedom to pursue its expressive mission.

The State's primary defense to Plaintiffs' expressive association claim is to
try mightily to minimize the certainty, scope and significance of Section 203-E's

impact on Plaintiffs' expressive association. State Br. 23-26. Per the State,

"plaintiffs' position that an employee's private health care decision could

undermine the employee's ability to advocate in a manner consistent with

plaintiffs' intended message is speculative." State Br. 2; *see also id. at* 23, 24, 45.

The Court should reject *the State's speculation* about its statute's impact on

Evergreen for several reasons.

> ### 1. The law requires deference to Evergreen's own assessment of the burden on its expression.

As a preliminary consideration, the Supreme Court has made clear that courts

must defer to an expressive association's judgment about "what would impair its

expression." *Boy Scouts of America v. Dale*, 530 U.S. 640, 653 (2000) (citing

*Democratic Party of U. S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 123-24

(1981) ("But it is not for the courts to mediate the merits of th[e] dispute" as to the

impact of a law on plaintiffs' associational rights. "For even if the State were

correct, a State, or a court, may not constitutionally substitute its own judgment for

that of the Party.")). The State's entire discussion of its opinions on the magnitude

of Section 203-E's impact on Plaintiffs' expression is an invitation for the Court to

ignore the humility the Constitution requires of courts when identifying the scope

of First Amendment freedoms. *La Follette*, 450 U.S. at 124 ("And as is true of all

expressions of First Amendment freedoms, the courts may not interfere on the

ground that they view a particular expression as unwise or irrational."). The Court should refuse to be drawn in.

Instead, the Court should defer to Evergreen's assessment in its Complaint that Section 203-E significantly affects Plaintiffs' ability to advocate their viewpoint by "denying them the right to organize their staff, to communicate to the staff, [and] to correct, discipline or terminate staff who reject Plaintiffs' moral and religious position" about abortion. JA58; *see also* JA46 ("the challenged law is an existential threat to Plaintiff Evergreen . . ."); JA56 ("The Boss Bill coerces Plaintiffs to betray their moral and religious beliefs . . ."); JA56 ("Forcing Plaintiffs to hire, retain, refrain from disciplining or terminating, or even to refrain from disagreeing with personnel who do not share Plaintiffs' beliefs . . . would fatally compromise Plaintiffs' pro-life message and mission).[6]

> ### 2. The State's account of the impact on Evergreen's expressive association is counterfactual.

If the Court should choose to entertain the State's characterization of Section 203-E's likely effect on Evergreen, it would quickly notice that the State's scenarios are strikingly limited and polar. Between the State's two scenarios (employee publication of an essay supporting abortion, which is not protected by

---

[6] Evergreen believes these allegations are legally sufficient, but in any case the district court's dismissal after finding only "incidental limitations on the Plaintiffs' associational rights" was premature. *See New Hope*, 966 F.3d at 179 ("As for the 'slight impairment' conclusion, it too is premature.").

14

Section 203-E, and employee accidentally leaving records of otherwise-private medical decisions at work, which, alone, would not likely warrant any particular employment action), there is the world that 98% of people live in: one in which people make medical and other decisions (some of which have immediate effects on a person's appearance), in plain view (a domain much enhanced in scope by social media), discuss them publicly (around the water cooler or on Facebook) or privately (say, within a counseling relationship or with co-employees) as they are relevant to a conversation, and even post evidence of their actions and positions on social media (a public domain in which many behave as if they are in private).

These are all scenarios that occur every single day to every single person; they are also all settings in which an Evergreen employee's revelation of his or her views and actions related to abortion and contraception would significantly affect Evergreen's mission by diluting or obscuring Evergreen's pro-life message. *See Dale*, 530 U.S. at 641. Nothing in the State's supposedly narrow interpretation of Section 203-E leaves open a way for Evergreen to discipline or fire an employee whose dissent from Evergreen's mission becomes evident to Evergreen or its clients in any of these everyday, normal, completely inevitable ways, all of which are likely to undermine Evergreen's communicative relationship with its clients.

The State's position is also counterfactual in another way: it appears to completely discount the importance of integrity in an employee, particularly one

who has been hired to promote an evangelical mission. Evergreen employees do not hold signs outside of abortion clinics and then go home. Instead, their job is to convince, evangelize, persuade, or "sell" the countercultural pro-life message through a personal relationship with clients. JA49-50 ¶¶ 32-33; JA59 ¶ 104; JA61 ¶ 118; JA62 ¶ 124. Every aspect of their lives must show a commitment to that message, because hypocrisy is completely undermining of respect, credibility, and persuasive authority. Therefore, to effect its mission, Evergreen must strive to hire and retain individuals who live their mission consistently and completely. Absent the State's imposition of Section 203-E, Evergreen will avoid particularly, even more than someone who with integrity disagrees with their mission, the sort of person who would agree to pretend to support their mission while at work. *Compare* State Br. 25 ("[A]n employee who inadvertently disclosed health information [presumably revealing lack of commitment to Evergreen's pro-life message] would not necessarily be unable to communicate plaintiffs' message to clients as required.").

Evergreen is entitled to act in lawful ways to ensure that its employees are sincerely pro-life and show the integrity in their beliefs that would inspire trust. That may require terminating the employment of someone who has chosen to have an abortion or use abortifacient birth control while representing Evergreen and occupying a position of trust toward Evergreen's clients. It is therefore cold

16

comfort that Section 203-E does not prohibit Evergreen from firing any employee who publishes an article about her abortion in the newspaper. State Br. 23. Nor does it help even a little that Evergreen is "free to publicly dissociate themselves" from its own employees, like law schools could do from military recruiters in *Rumsfeld v. Forum for Academic and Institutional Rights, Inc*., 547 U.S. 47, 69-70 (2006) (cited in State Br. 26), presumably by handing its vulnerable clients disclaimers stating "the personal decisions of this counselor we have assigned to you do not represent the views of EMC." Since employees are themselves the conveyors of Evergreen's countercultural pro-life message, introducing distance between them and that message would not protect Plaintiffs' mission; it would effectively eliminate it. *See, e.g.*, *Walker*, 453 F.3d at 863 ("CLS's beliefs about sexual morality are among its defining values; forcing it to accept as members those who engage in or approve of homosexual conduct would cause the group as it currently identifies itself to cease to exist.").

### 3. Precedent contradicts the State's thin estimation of the burden on Plaintiffs' expressive association.

A third reason to reject the State's judgment that Section 203-E does not significantly impair Plaintiffs' expressive association rights is that the State's position is not reflective of this Court's precedent or other cases in this area.

The State cites *Tabbaa v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007), for the proposition that "[m]ere incidental burdens on the right to associate" do not violate

the First Amendment. State Br. 17. That case is indeed illustrative, but mainly of the type of conduct that this Court will find to be a "significant burden" on association. In *Tabbaa*, it was a "significant burden" on the plaintiffs' association to detain them for four to six hours at the American border following their participation in an Islamic conference at the Skydome in Toronto. *Id*. at 94. *Tabbaa*, in turn, cites *Healy v. James*, 408 U.S. 169 (1972), in which the Supreme Court held that it was an unconstitutional burden on association for a college to deny official recognition to a student group, even though the group was free to associate anywhere off campus. *Id*. at 181-83. If a one-time, after-the-fact search and being forced to meet off campus are significant burdens on association, Section 203-E's requirement that Plaintiffs hire and/or permanently retain unwanted representatives is not merely incidental.

In *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145 (2d Cir. 2020), this Court reversed a premature dismissal of an expressive association challenge to a law forcing adoption agencies to associate with same-sex couples, even just as foster parents (rather than, as here, employees who communicate with clients). *Id.* at 179. In *New Hope*, the district court had used compelled hiring as an example of something that clearly *would* significantly impair the expression of a Christian agency. *Id.* (citing the district court's erroneous conclusion that New Hope had only "slight impairment" to its expressive activity because it was "not being

required to hire employees that do not share [its] same religious values"). In *Walker*, the Seventh Circuit upheld the expressive association rights of a Christian group in its ordinary membership decisions: "It would be difficult for CLS to sincerely and effectively convey a message of disapproval of certain types of conduct if, at the same time, it must accept members who engage in that conduct." 453 F.3d at 863.

These decisions found that a plaintiff's association rights could be significantly burdened simply by being forced to include (1) as members or clients, (2) those who disagree, (3) even silently, with an organization's expressive mission. Here, Section 203-E forces Plaintiffs to include (1) by hiring or retaining *as employee representatives* of its mission, (2) parties who disagree, (3) even *publicly*, with that mission. The Court should have no trouble holding that, as pleaded, the effect on Plaintiffs' expression is more significant.

The close link between the protected "reproductive health decisions" and Evergreen's mission further makes the impairment to the Plaintiffs' expressive association even more significant than the burden in *Dale*. It was by no means the center of the Boy Scouts' mission to oppose homosexuality. *Dale*, 530 U.S. at 650-51. So tacit was the organization's rejection of homosexuality that the Supreme Court of New Jersey actually interpreted the Boy Scouts' beliefs as embracing homosexuality. *Id.* Nevertheless, the Supreme Court held that the Scouts were

19

responsible for interpreting their own statement of beliefs and, despite their mission's silence as to the issue of homosexuality *per se*, the Supreme Court found that it was unconstitutional to force the Boy Scouts to associate with a position they claimed to reject. *Id*. at 651.

In this case, opposing abortion and cohabitation are not just central to Evergreen's mission; they *are* Evergreen's mission. *See Walker*, 453 F.3d at 863 ("CLS's beliefs about sexual morality are among its defining values . . . ."). If it violated the expressive association rights of the Boy Scouts to force them to retain as one of their thousands of leaders a person whose personal life was inconsistent with unspoken elements of their belief statement, Evergreen simply cannot be expected to hire or retain as one of their five to seven employees[7] anyone whose major life decisions demonstrate opposition to their core mission.

Nor is it essential to the impairment of Evergreen's rights that the dissenters they are forced to retain as employees be leaders or actively promote an agenda contrary to Evergreen's mission, as the State suggests to distinguish *Dale*. State Br. 27-28. As the Seventh Circuit held in *Walker*, forced inclusion even as ordinary members (rather than as employees or leaders) of those simply "engaged in or approving of" a position that contradicts an organization's mission would cause

---

[7] This Court has considered the size and selectivity of an expressive community as relevant to its protected "associational interest." *See, e.g.*, *Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of New York*, 502 F.3d 136, 145 (2d Cir. 2007).

that organization to "cease to exist." 453 F.3d at 863; *see also Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1000 (7th Cir. 2019) (rejecting theory that *Dale* applies only to leaders, noting that "the Court spoke in terms of 'membership' as well as leadership").

Crediting Plaintiffs' factual claims as warranted upon a Motion to Dismiss, precedent and related cases demonstrate that Plaintiffs' claim to be significantly impaired in its ability to communicate its mission far exceeds what is sufficient to survive a Motion to Dismiss.

## II. Evergreen adequately pleaded that Section 203-E unconstitutionally burdens its speech.

### A. Section 203-E burdens Evergreen's speech by regulating speech-laden conduct.

The State argues that "[a]nti-discrimination laws like § 203-e regulate conduct, not speech." State. Br. 41. According to the State, under Section 203-E, Evergreen can *say* whatever it wants—it just cannot fire someone for having had an abortion or for otherwise engaging in *conduct* that Evergreen believes undermines its mission. *Id*. at 44.

The State's position is reductive and unrealistic. Section 203-E regulates Evergreen's speech in several ways. Most directly, Evergreen is no longer free, without fear of civil or criminal enforcement action under Section 203-E, to ask prospective or current employees about their personal history and practice of

abortion or contraception, or about their living situation. *See, e.g.*, Section 203-E(2)(a) ("An employer shall be prohibited from accessing an employee's personal information regarding the employee's . . . reproductive health decision making"). This inability to know an employee's personal commitments in turn handicaps Evergreen in the speech-laden exercises of hiring, training and deploying suitable representatives to speak to clients and the public on its behalf. *See New Hope*, 966 F.3d at 171 (finding that all of the activities of a religious adoption agency were "laden with speech").

Evergreen's speech is further limited to the extent it cannot act to protect its own speech following the decision of an employee that undermines its pro-life message. If it becomes known, through her own actions or others', that an employee has had an abortion or is living with her boyfriend at the same time she is counseling clients to reject those very choices, that undermines Evergreen's pro-life message to its clients. Section 203-E burdens Evergreen's message both by preventing it from separating from such an employee and by preventing it from replacing such an employee with a more suitable advocate for its message.

Most fundamentally, as recognized by this Court in *New Hope*, removing Evergreen's control over whom it hires or fires (in that case, whom New Hope certified as an adoptive parent) undermines its ability to engage in the speech that is its sole purpose: delivering with integrity the pro-life message of love and

support for life to expectant mothers. *See id.* (holding that religious adoption agency's services all contribute to final end of agency's own speech regarding who is an appropriate adoptive parent).

**B.    Section 203-E is not neutral.**

Evergreen has pleaded and argued that Section 203-E is not content- or viewpoint neutral because it favors abortion. JA60; JA62-63. The State has responded that Section 203-E "protects employees who decide *not* to have an abortion or *not* to use contraception." State Br. 46 (emphasis in original). Unable to dispute that pregnancy discrimination was already barred before Section 203-E, the State points to a "loophole" in federal discrimination laws for employers with fewer than 15 employees. *Id*. This argument ignores multiple state laws that also prohibit pregnancy discrimination and fill in any such "loophole." *Coronado v. Weill Cornell Med. Coll.*, 66 Misc. 3d 404, 407, 114 N.Y.S.3d 193, 197 (N.Y. Sup. Ct. 2019) ("Both the NYSHRL, New York Executive Law § 296(1)(a), and the NYCHRL, New York City Administrative Code § 8-107(1)(a), prohibit defendants from discriminating against plaintiff based on her gender and thus based on her pregnancy.").

The State further cites *Saks v. Franklin Covey Co*., 316 F.3d 337, 345-49 (2d Cir. 2003) for the proposition that "discrimination against someone for undergoing medical fertility treatments may not otherwise be actionable under federal law."

State Br. 46. *Saks* involved insurance coverage, not employment discrimination, and it has been distinguished in a federal district court case in New York specifically finding that being fired for undergoing fertility treatment is cognizable employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 *et seq*., as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k). *Govori v. Goat Fifty, L.L.C.*, No. 10 CIV. 8982 DLC, 2011 WL 1197942, at *3 (S.D.N.Y. Mar. 30, 2011) (citing *Hall v. Nalco Co*., 534 F.3d 644 (7th Cir. 2008)).

The State's own words upon passing Section 203-E, as well as the law's actual impact, show that the State's "neutral" justification for Section 203-E is pretextual. The Senate made crystal clear that Section 203-E takes one side of the abortion debate by (1) intentionally passing the law "on the 46th anniversary of the *Roe v. Wade*[, 410 U.S. 113, 1973] Supreme Court decision;" (2) passing it in conjunction with two other expressly pro-choice bills, the Reproductive Health Act and Comprehensive Contraception Coverage Act; and (3) making various statements indicating that the laws were passed to codify and support the decision in *Roe v. Wade*.[8] Section 203-E is a strongly pro-choice measure.

---

[8] "Standing Up For Women's Rights," The New York State Senate, Jan. 22, 2019, *supra* note 6. For instance, Senator Brad Hoylman stated:

As Trump and his crony colleagues in Washington continue to erode the constitutional protections under *Roe v. Wade*, after today New York women can have confidence that safe and comprehensive reproductive care will be

**C. Evergreen's speech claim would survive a motion to dismiss even if the statute were subject only to intermediate scrutiny.**

The State argues that the Court of Appeals should dismiss Evergreen's speech claim on the pleadings because the Court can already determine that the statute passes intermediate scrutiny. State Br. 49-50.[9] However, even intermediate scrutiny bars the State from trying to "get away with shoddy data or reasoning" and requires "*reasonable* inferences based on *substantial* evidence that the statutes are substantially related to the governmental interest." *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 264 (2d Cir. 2015) (internal quotations omitted) (emphasis in original). At this stage, the record includes *no* evidence supporting the need for Section 203-E, much less *substantial* evidence.[10]

---

protected.

*Id.*

[9] Of course, Evergreen's position remains that it has pleaded a sufficient burden on its speech (and other First Amendment rights) to warrant strict scrutiny. *See, e.g.*, *supra* § II A,B; Opening Br. § III. Applying strict scrutiny, the State would have to establish a compelling governmental interest not just in Section 203-E generally, but specifically in not granting Evergreen an exemption to Section 203-E. *See* JA22 (district court noting this holding in religious freedom, including Free Exercise context in *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)); *see also O Centro*, 546 U.S. at 431-32 ("Outside the Free Exercise area as well," however, application of the law to the particular claimant is important because "context matters," and "'relevant differences' must be taken into account.").

[10] For this same reason, at this stage, after dismissal on the pleadings prior to discovery, any scrutiny analysis is premature. Opening Br. 57-58 (quoting *Wilmoth v. Sec'y of New Jersey*, 731 F. App'x 97, 104 (3d Cir. 2018)).

Therefore, dismissal on the pleadings would not be appropriate even if the State were to convince the Court to apply intermediate scrutiny.

## III. Section 203-E impermissibly targets religion.

The same evidence that establishes that Section 203-E is not content- or viewpoint-neutral as to speech also demonstrates that Section 203-E violates the Free Exercise clause by targeting Evergreen's religious beliefs. This Court looks for "subtle departures from neutrality" and will "pause" the case for discovery "upon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices." *New Hope*, 966 F.3d at 161-163. Such suspicions can arise from the historical background of a statute or the "specific series of events leading to [its] enactment," including legislative history and "contemporaneous statements made by members of the decisionmaking body." *Id.*

These are precisely the types of evidence of targeting religion that Plaintiffs have put forth. As the Complaint states, "legislative history reveals that [Section 203-E] is intended to target religious organizations." JA62-63. And the New York Senate essentially admitted it was targeting religion: "the Boss Bill that passed will prevent an employer's religious beliefs from infringing on women's health care decisions."[11] *See supra* § I.B; *see also* Opening Br. at 49 ("[Senator] Metzger

---

[11] "Standing Up For Women's Rights," The New York State Senate, Jan. 22, 2019, *supra* note 6.

declared that the Boss Bill was in response to employers 'exercising religion' in *Hobby Lobby* and to keep employers' 'personal and political beliefs' from 'encroach[ing]' on the decisions of employees as to reproductive health services. JA123-24.").

This Court should reverse the District Court's dismissal of Plaintiffs' free exercise claim and order the trial court to allow discovery so that it can "survey meticulously the totality of the evidence" concerning the State's motives toward religion. *New Hope*, 966 F.3d at 163; *see also id.* at 165 ("Where, as here, the parties have not yet commenced discovery, New Hope can hardly be required to plead facts as specific and detailed as those referenced in *Masterpiece Cakeshop* and *Lukumi* to avoid dismissal.").

## CONCLUSION

For the reasons set forth above, this Court should reverse the District Court's order and reinstate Evergreen's First and Fourteenth Amendment claims against enforcement of Section 203-E, allowing Evergreen to move forward with legal and factual development of their claims.

September 1, 2021

Respectfully submitted,

*/s/ Timothy Belz*
Timothy Belz, Esq.
J. Matthew Belz, Esq.
CLAYTON PLAZA LAW GROUP, L.C.
112 South Hanley, Second Floor
St. Louis, Missouri 63105-3418
Phone: (314) 726-2800
Fax: (314) 863-3821
tbelz@olblaw.com
jmbelz@olblaw.com

Stephen M. Crampton, Esq.
Mary Catherine Hodes, Esq.
THOMAS MORE SOCIETY
309 West Washington Street,
Suite 1250
Chicago, Illinois 60606
Phone: (662) 255-9439
Fax: (312) 782-1887
scrampton@thomasmoresociety.org

*Counsel for Appellants*
*Christopher Slattery and The*
*Evergreen Association, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Local Rule 32.1(a)(4)(A) because, excluding the portions exempted by Fed. R. App. P. 32(f), this brief contains 6,482 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

September 1, 2021                    */s/ Timothy Belz*
                                     Timothy Belz, Esq.
                                     *Counsel for Appellants Christopher Slattery*
                                     *and The Evergreen Association, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2021, this brief was filed electronically with the Clerk of the United States Court of Appeals for the Second Circuit through the Court's electronic filing system, which will accomplish service on the following counsel:

    Frederick A. Brodie, Esq.
    Assistant Solicitor General
    Office of the Attorney General
    The Capitol
    Albany, New York 12224
    (518) 776-2317
    Counsel for Appellees


September 1, 2021          */s/ Timothy Belz*
                          Timothy Belz, Esq.
                          *Counsel for Appellants Christopher Slattery and The Evergreen Association, Inc.*